**CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. § 1983**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE ~~*_____*~~ DISTRICT OF GEORGIA**
SOUTHERN

5. TIMOTHY WARD
6. RANDY TILLMAN
7. RICH JACOBS
8. ROBERT E. JONES
9. CARL HUMPHREY
10. DR. SHARON LEWIS
11. SHEVONDAH FIELDS
12. LISA FOUNTAIN
13. TORIS MCLESSIA ROLTER
14. JAMES DEMETATUS SMITH
15. GEORGIA DEPARTMENT OF CORRECTIONS

16. ROBERT TOOLE
17. WENDELL FOWLER
18. JOHN PAUL
19. MS. (FNV) KILGORE
20. MR. (FNV) DELOACH
21. MILTON SMITH
22. MURIEL JACKSON
23. JOHN/JANE DOE
24. DR. JOHN/JANE DOE
25. DR. JOHN/JANE DOE
26. MS. (FNV) KING
27. M. MURPHY
28. OF. HENRY
29. MS. (FNV) BROWN
30. THREE JOHN DOES
31. BRUCE CHATMAN
32. JUNE BISHOP

WASEEM DAKER, #901373

(Enter above the full name of the plaintiff, GDC identification number of the plaintiff, GDC number if a state prisoner.)

-vs-

1. PATRICK HEAD
2. JESSE D. EVANS
3. MARY E. STALEY
4. BRIAN OWENS

(Enter above the full name of the defendant(s).)

**I.**    **Previous Lawsuits**

  A.    Have you filed other lawsuits in federal court while incarcerated in any institution?

Yes ( ✓ )    No ( )     **CV 6 14   047**

  B.    If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.) I HAVE FILED OTHER FEDERAL LAWSUITS, BUT I DON'T HAVE ALL THE INFORMATION ON ALL OF THEM. BUT THE INFORMATION ON THEM CAN BE FOUND ON PACER. PLEASE SEE PACER FOR INFORMATION ON MY OTHER CASES.

  1.    Parties to this previous lawsuit:

      Plaintiff(s):    WASEEM DAKER

      Defendant(s):    NEIL WARREN
                       COBB COUNTY

  2.    Court (name the district):    NORTHERN DISTRICT OF GEORGIA

  3.    Docket Number:    1:10-CV-2084-AT

**I.    Previous Lawsuits (Cont'd)**

4.   Name of judge to whom case was assigned: AMY TOTENBERG

5.   Did the previous case involve the same facts?

Yes ( )    No (✓)

6.   Disposition (Was the case dismissed?  Was it appealed?  Is it still pending?):
SUMMARY JUDGMENT FOR DEFENDANTS
APPEAL PENDING IN APPEALS NOS. 13-14446, 14-10096

7.   Approximate date of filing lawsuit: 7/2/10

8.   Approximate date of disposition: 8/23/13, APPEAL PENDING

**II.   Exhaustion of Administrative Remedies**
Pursuant to 28 U.S.C. § 1997e(a), no prisoner civil rights action shall be brought in federal court until all available administrative remedies are exhausted.  Exhaustion of administrative remedies is a precondition to suit, and the prisoner plaintiff must establish that he has exhausted the entire institutional grievance procedure in order to state a claim for relief.

A.   Place of Present Confinement: GEORGIA STATE PRISON

B.   Is there a prisoner grievance procedure in this institution?

Yes (✓)    No ( )

C.   Did you present the facts relating to your complaint under the institution's grievance procedure?    SOME, BUT NOT ALL, SEE BELOW.

Yes (✓)    No ( )

D.   If your answer is YES:
1.   What steps did you take and what were the results?
I FILED THE FOLLOWING GRIEVANCES WHICH WERE DENIED OR IGNORED:
134639, 134932, 140844, 143350, 147741, 146742, 148154,
148796, 149890, 151378, 152588, 158537, 159955, 160762,
162171, 164202, 164581, 163174, 163887, AND OTHERS

2.   If your answer is NO, explain why not: I FILED THREE GRIEVANCES ON 4/8/14.
THEY WERE REJECTED UNPROCESSED ON 5/6/14. I TRIED TO FILE A FOURTH
ON 5/6/14 AND 5/9/14, BUT COUNSELOR NURSE JACKSON REFUSED TO TAKE IT.
I HAVE ASKED MY COUNSELOR FOR GRIEVANCE FORMS ON OTHER ISSUES
ON 4/8/14, 4/18/14, 5/6/14, 5/9/14, BUT HE REFUSED TO PROVIDE
ME ANY.

(2)

**III.**   **Parties**
(In item A below, place your name in the first blank and place your present address in the second blank.)

A.   Name of Plaintiff:   WASEEM DAKER #901373
GSP
700-1

Address(es):   #901373
GSP
700 1st AVE S
REIDSVILLE GA 30453

(In item B below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Do the same for each additional defendant, if any.)

B.   Defendant(s):   PLEASE SEE ATTACHED SHEETS, (PAGES 6-33).

Employed as

at

**IV.**   **Statement of Claim**
State here as briefly as possible the facts of your case.  Describe how each defendant is involved.  Include also the names of other persons involved, dates, and places.  **Do not give any legal arguments or cite any cases or statutes.**  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets if necessary.)  (PAGES 6-33).
PLEASE SEE ATTACHED SHEETS. (PAGES 6-33).

## IV.    Statement of Claim (Cont'd)

## V.    Relief

State briefly exactly what you want the Court to do for you.  Make no legal arguments.  Cite no cases or statutes.

PLEASE SEE ATTACHED SHEETS ( PAGES 6-33)

Rev. 12/3/07

**V.      Relief (Cont'd)**

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Singed this ___11___ day of _____MAY_____, 20_14_.


_____
Signature of Plaintiff

**STATE OF** ___GEORGIA___
**COUNTY (CITY) OF** _REIDSVILLE  TATTNALL COUNTY_

I declare under penalty of perjury that the foregoing is true and correct.

**EXECUTED ON** ___5/11/14___
                    (Date)


_____
Signature of Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

WASEEM DAKER,                                      ⚹     CASE NO.

    Plaintiff                              ⚹

                      ⚹

    v.                                          ⚹

                      ⚹

PATRICK H. HEAD, District Attorney,                ⚹

JESSE D. EVANS, Assistant District Attorney,       ⚹

    Cobb County District Attorney's Office,   ⚹

MARY E. STALEY, Judge,                             ⚹

    Cobb County Superior Court,              ⚹

BRIAN OWENS, Commissioner,                         ⚹

TIMOTHY WARD, Assistant Commissioner,              ⚹

RANDY TILLMAN, Facilities Director,                ⚹

RICK JACOBS, Facilities Director,                  ⚹

ROBERT E. JONES, General Counsel,                  ⚹

CARL HUMPHREY, Facilities Manager,                 ⚹

DR. SHARON LEWIS, Medical Director,                ⚹

SHEVONDAH FIELDS, Grievance Manager,               ⚹

LISA FOUNTAIN, Grievance Manager,                  ⚹

TORIS MCLESSIA ROZIER, Grievance Investigator,     ⚹

JAMES DEMETRIUS SMITH, Grievance Investigator,     ⚹

    Georgia Department of Corrections,        ⚹

GEORGIA DEPARTMENT OF CORRECTIONS,                 ⚹

(6)

ROBERT TOOLE, Warden,                                    ✗

WENDELL FOWLER, Deputy Warden, Security,                ✗

JOHN PAUL, Deputy Warden, Care & Treatment,             ✗

MS. [FNU] KILGORE, Deputy Warden, Administration,       ✗

MR. [FNU] DELOACH, Unit Manager,                        ✗

MILTON SMITH, Chief Counselor                           ✗

MURIEL JACKSON, Counselor,                              ✗

MR. [FNU] JOHN/JANE DOE, Medical Director,              ✗

DR. JOHN/JANE DOE, Doctor,                              ✗

DR. JOHN/JANE DOE, Dentist,                             ✗

MS. [FNU] KING, Medical Supervisor,                     ✗

P. MURPHY, Dental Hygienist,                            ✗

OFC. HENRY, Mailroom Officer,                           ✗

MS. BROWN, Mailroom Secretary,                          ✗

THREE JOHN DOES, CERT Officers,                         ✗

        Georgia State Prison,                           ✗

BRUCE CHATMAN, Warden,                                  ✗

JUNE BISHOP, Deputy Warden,                             ✗

        Georgia Diagnostic & Classification Prison,     ✗
        Defendants                                      ✗

## I. INTRODUCTION

1. COMES NOW WASEEM DAKER, PLAINTIFF ABOVE-STYLED, AND BRINGS THIS ACTION PURSUANT TO 42 U.S.C. § 1983 AND THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT (RLUIPA), 42 U.S.C. §§ 2000cc-1 ET SEQ., FOR VIOLATIONS OF HIS RIGHTS UNDER THE CONSTITUTION AND RLUIPA.

## II. JURISDICTION AND VENUE

2. THIS COURT HAS ORIGINAL JURISDICTION PURSUANT TO 28 U.S.C. §§ 1331 AND 1343.

3. PLAINTIFF'S CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF ARE AUTHORIZED PURSUANT TO 28 USC §§ ~~2201~~ 2201 AND ~~2202~~ 2202.

4. VENUE IS PROPER IN THE SOUTHERN DISTRICT OF GEORGIA BECAUSE PLAINTIFF IS LOCATED IN IT; DEFENDANTS TOOLE, PAUL, FOWLER, KILGORE, SMITH, JACKSON, DELOACH, KING, MURPHY, HENRY, BROWN, AND ALL DOE'S ARE LOCATED IN IT; AND MANY OF THE CONSTITUTIONAL VIOLATIONS ~~COMPLAINED~~ HEREIN HAVE OCCURRED OR ARE CURRENTLY ~~OC~~ OCCURRED IN IT.

## III. PARTIES

5. PLAINTIFF WASEEM DAKER IS CURRENTLY A PRISONER INCARCERATED IN THE CUSTODY OF THE GEORGIA DEPARTMENT OF CORRECTIONS ("GDC"). HE MAY BE SERVED AT: WASEEM DAKER, #901373, GEORGIA STATE PRISON, 300 1ST AVE S, REIDSVILLE GA 30453.

6. DEFENDANT PATRICK HEAD IS FORMER COBB COUNTY DISTRICT ATTORNEY ("CCDA"), DEFENDANT JESSE D. EVANS IS COBB COUNTY ASSISTANT DISTRICT ATTORNEY, DEFENDANTS HEAD AND EVANS ARE SUED IN THEIR INDIVIDUAL CAPACITIES FOR DAMAGES AND IN THEIR OFFICIAL CAPACITIES FOR DAMAGES AND DECLARATORY, INJUNCTIVE, PROSPECTIVE AND EQUITABLE RELIEF.

7. DEFENDANT MARY E. STALEY, IS JUDGE OF COBB COUNTY SUPERIOR COURT, AND IS SUED IN HER INDIVIDUAL CAPACITY FOR DAMAGES AND IN HER OFFICIAL CAPACITY FOR DECLARATORY, INJUNCTIVE, PROSPECTIVE AND EQUITABLE RELIEF.

8. ~~BRIAN OWENS~~ DEFENDANT BRIAN OWENS IS GDC COMMISSIONER, DEFENDANT TIMOTHY WARD IS GDC ASSISTANT COMMISSIONER, DEFENDANT RANDY TILLMAN IS GDC FACILITIES DIRECTOR, DEFENDANT RICH JACOBS

IS GDC FACILITIES DIRECTOR. DEFENDANT ROBERT E. JONES IS GDC GENERAL COUNSEL. DEFENDANT SHARON LEWIS IS GDC MEDICAL DIRECTOR. DEFENDANTS SHEVONDAH FIELDS AND LISA FOUNTAIN ARE GDC GRIEVANCE MANAGERS. DEFENDANTS TORES MCCLESSIA ROLTER AND JAMES DEMETREVS SMITH ARE GDC GRIEVANCE INVESTIGATORS. DEFENDANT CARL HUMPHREY IS GDC FACILITIES OPERATIONS MANAGER. THESE DEFENDANTS SHALL COLLECTIVELY BE REFERRED TO AS "GDC DEFENDANTS," AND ARE SUED IN THEIR INDIVIDUAL CAPACITIES FOR DAMAGES AND IN THEIR OFFICIAL CAPACITIES FOR DAMAGES, DECLARATORY, INJUNCTIVE, AND PROSPECTIVE, AND EQUITABLE RELIEF.

9. DEFENDANT GEORGIA DEPARTMENT OF CORRECTIONS ("GDC") SHALL BE INCLUDED IN "GDC DEFENDANTS" AND IS SUED FOR DECLARATORY, INJUNCTIVE, PROSPECTIVE AND EQUITABLE RELIEF.

10. DEFENDANT ROBERT TOOLE IS WARDEN AT GEORGIA STATE PRISON ("G.S.P.") DEFENDANT WENDELL FOWLER IS DEPUTY WARDEN OF SECURITY AT G.S.P. DEFENDANT JOHN PAUL IS G.S.P. DEPUTY WARDEN ("D.W.") OF CARE & TREATMENT. DEFENDANT [FIRST NAME UNKNOWN] IS G.S.P. D.W. OF ADMINISTRATION. DEFENDANT [FIRST NAME UNKNOWN] DELOACH IS G.S.P. UNIT MANAGER OF THE SPECIAL MANAGEMENT UNIT ("SMU"). DEFENDANT MILTON SMITH IS G.S.P. CHIEF COUNSELOR. DEFENDANT MURIEL JACKSON IS COUNSELOR AT G.S.P. DEFENDANTS JOHN/JANE DOES ARE THE MEDICAL DIRECTOR, DOCTOR, AND DENTIST AT G.S.P. DEFENDANT [FIRST NAME UNKNOWN] ACTS AS A G.S.P. MEDICAL SUPERVISOR. DEFENDANT P. MURPHY IS DENTAL HYGIENIST AT G.S.P. DEFENDANT OFC. [FIRST NAME UNKNOWN] KENNY IS G.S.P. MAILROOM OFFICER. DEFENDANT MS. [FIRST NAME UNKNOWN] BROWN IS G.S.P. MAILROOM SECRETARY. DEFENDANTS JOHN DOES ARE THREE CERT. OFFICERS AT G.S.P. THESE DEFENDANTS SHALL COLLECTIVELY BE REFERRED TO AS "G.S.P. DEFENDANTS" AND SHALL ALSO

BE INCLUDED IN "GDC DEFENDANTS." GCP DEFENDANTS ARE SUED IN THEIR INDIVIDUAL CAPACITIES FOR DAMAGES AND IN THEIR OFFICIAL CAPACITIES FOR DAMAGES, AND DECLARATORY, INJUNCTIVE, PROSPECTIVE, AND EQUITABLE RELIEF.

11. DEFENDANT CARL HUMPHEY IS FORMER WARDEN AT GEORGIA DIAGNOSTIC & CLASSIFICATION PRISON ("GDCP"). DEFENDANT BRUCE CHATMAN IS CURRENT GDCP WARDEN. DEFENDANT JUNE BISHOP IS DEPUTY WARDEN OF GDCP SPECIAL MANAGEMENT UNIT ("SMU"). THESE DEFENDANTS SHALL BE REFERRED TO AS "GDCP DEFENDANTS," AND SHALL BE INCLUDED IN "GDC DEFENDANTS." DEFENDANTS AND ARE SUED IN THEIR INDIVIDUAL CAPACITIES FOR DAMAGES AND IN THEIR OFFICIAL CAPACITIES FOR DECLARATORY, INJUNCTIVE, PROSPECTIVE, AND EQUITABLE RELIEF.

## IV. STATEMENTS OF FACTS

### A. B. C. D: ACCESS TO COURTS, RETALIATION, AND DUE PROCESS, AND EIGHTH AMENDMENT

12. IN SEPTEMBER 2012, PLAINTOFF REPRESENTED HIMSELF AT A HIGH PROFILE MURDER TRIAL IN COBB COUNTY GEORGIA, THAT WAS PROSECUTED BY DEFENDANTS HEAD AND EVANS AND TRIED BEFORE DEFENDANT STALEY. DEFENDANT WAS CONVICTED ON SEPTEMBER 28, 2012 AND SENTENCED ON OCTOBER 1, 2012, AND FILED A MOTION FOR NEW TRIAL THAT SAME DAY.

13. AFTER HIS CONVICTION, DEFENDANTS HEAD, WEATHERS, AND STALEY, CONTACTED THE GEORGIA DEPARTMENTS OF CORRECTIONS ("GDC") TO REQUEST THAT PLAINTIFF BE PLACED IN SOLITARY CONFINEMENT AND DENIED LAW LIBRARY ACCESS SO AS TO HINDER HIS ABILITY TO APPEAL OR OTHERWISE CHALLENGE HIS CONVICTION AND SENTENCE.

14. THE GDC DEFENDANTS READILY COMPLIED WITH THIS REQUEST TO RETALIATED AGAINST PLAINTIFF FOR HIS PREVIOUS LITIGATION AGAINST THE GDC DURING HIS PREVIOUS INCARCERATION FROM 1996-2005. FOR EXAMPLE, DEFENDANT CHATMAN HIMSELF WAS A DEFENDANT IN DAKER v. FERRERO, NO. 1:03-CV-2481-RWS WHICH WAS TRIED IN OCTOBER 2007, AND DEFENDANT JACOBS WAS A WITNESS WHO TESTIFIED AT SAID TRIAL, IN WHICH OTHER HIGH-RANKING GDC OFFICIALS WERE EITHER DEFENDANT OR WITNESSES.

15. ON OCTOBER 3, 2012, PLAINTIFF WAS TRANSFERRED FROM COBB COUNTY TO GDC CUSTODY, AT GDCP, AND WAS IMMEDIATELY PLACED IN SMU PURSUANT TO GDC STANDARD OPERATING PROCEDURES (SOP'S). SMU IS SUPPOSED TO BE A HIGH-MAXIMUM, LOCK-DOWN UNIT FOR PRISONERS WHO ARE HIGH-MAX SECURITY OR COMMIT SERIOUS DISCIPLINARY INFRACTIONS SUCH AS ESCAPES, ESCAPE ATTEMPTS, ASSAULTS ON OFFICERS, OR MURDERS IN PRISON.

16. PLAINTIFF IS CLOSE SECURITY, NOT MAXIMUM OR HIGH-MAXIMUM. HE ALSO HAS NO DISCIPLINARY INFRACTIONS OR REPORTS (D.R.'S), NO ESCAPES OR ESCAPE ATTEMPTS, NO ASSAULTS ON OFFICERS, OR ON OTHER PRISONERS. PLAINTIFF ALSO DOES NOT REQUEST PROTECTIVE CUSTODY.

17. PURSUANT TO GDC SOP, PRISONERS ~~ARE~~ ASSIGNED TO SMU ARE ENTITLED TO A CLASSIFICATION HEARING WITHIN ~~72~~ 96 HOURS OF SUCH PLACEMENT TO DETERMINE IF SUCH PLACEMENT OR ASSIGNMENT IS APPROPRIATE. HOWEVER, PLAINTIFF NEVER HAD SUCH A HEARING EITHER UPON HIS ARRIVAL AT SMU, OR WITHIN MONTHS THEREOF.

18. PLAINTIFF'S ASSIGNMENT TO SMU IMPOSES ON HIM AN ATYPICAL AND SIGNIFICANT HARDSHIP ON HIM IN RELATION TO THE ORDINARY EVENTS OF PRISON LIFE AND CONTRARY TO GDC SOP. GENERAL POPULATION ("GP") PRISONERS HAVE REGULAR ACCESS TO PRISON ACTIVITIES, INCLUDING, BUT NOT LIMITED TO:

REGULAR MOVEMENT IN PRISON, PRISON LIBRARY, LAW LIBRARY, RELIGIOUS SERVICES, EDUCATIONAL AND REHABILITATION PROGRAMS, CONTACT VISITS, PHONE CALLS, OUTDOOR RECREATION AND SPORTS, AND MEDICAL CARE, AMONG OTHERS. ON THE OTHER HAND, PRISONERS ASSIGNED TO SMU/SEGREGATION/ SOLITARY CONFINEMENT, AND PLAINTIFF IN PARTICULAR, ARE LOCKED DOWN SOLITARY CONFINEMENT, 24 HOURS A DAY, SEVEN(7) DAYS A WEEK, AND ARE DENIED ACCESS TO LIBRARY, LAW LIBRARY, RELIGIOUS SERVICES, EDUCATIONAL PROGRAMS, CONTACT VISITS, TELEVISION, OUTDOOR RECREATION, AND ARE LIMITED TO TWO(2) 15-MINUTE, COLLECT PHONE CALLS ONCE EVERY 30 DAYS. IN PARTICULAR, HE IS DENIED ADEQUATE LAW LIBRARY ACCESS, RELIGIOUS SERVICES, CONTACT VISITS, PHONE ACCESS, TELEVISION, AMONG OTHER ACCESS TO ACTIVITIES.

19. ON OCTOBER 4, 2012, PLAINTIFF SAW DEFENDANTS HUMPHREY AND BISHOP, ASKING WHY HE WAS IN SMU. DEFENDANT HUMPHREY FIRST STATED THAT PLAINTIFF'S CASE WAS A HIGH-PROFILE CASE, HE THEN STATED, "YOU REPRESENTED YOURSELF AT TRIAL, DIDN'T YOU? WE'LL MAKE SURE YOU CAN'T DO THAT AGAIN," OR SOMETHING SIMILAR (NOT VERBATIM). HE ALSO ADDED THAT HE WAS FAMILIAR WITH PLAINTIFF'S PRIOR ~~INCARCERATION~~ INCARCERATION IN THE GDC (FROM 1996-2005), THE PRISONS IN WHICH HE WAS PREVIOUSLY INCARCERATED, AND HIS LITIGATION HISTORY FROM SAID PRIOR INCARCERATION. DEFENDANT HUMPHREY STATED SOMETHING LIKE "YOU LIKE TO SUE US, WE'LL MAKE SURE YOU CAN'T DO THAT EITHER." DEFENDANT HUMPHREY STATED THAT PLAINTIFF WILL BE ON SMU, AT LEAST A YEAR, YEAR AND A HALF, POSSIBLY 3-5 YEARS.

20. NO GDC OR GDCP DEFENDANTS PROVIDED PLAINTIFF WITH AN SMU/ CLASSIFICATION HEARING WITHIN ~~72~~ 96 HOURS AS REQUIRED BY SOP. THEN, ON SEPTEMBER 16, 2012, DEFENDANTS CLASSIFIED PLAINTIFF TO SMU WITHOUT A HEARING.

21. On October 18, 2012, plaintiff filed a classification appeal to defendant Humphrey, which he denied on October 22, 2012, exhausting the classification appeal.

22. Plaintiff wrote to defendants Owens on October 17, 2012 regarding the constitutional violations alleged HEREIN, but defendant Owens ignored plaintiff's letter.

23. On October 22, 2012, plaintiff wrote to the Director of GDC legal office (Robert Jones) regarding the constitutional violations alleged herein, but he also ignored plaintiff's letter.

24. The allegation that plaintiff's case is a "high-profile" case is also a pretext for retaliation shown not only by defendant Humphrey's statement, but also by the fact that other "high-profile" defendants are not assigned to SMU.

25. At GDCP/SMU, plaintiff was denied all access to a law library and to legal research materials, whereas GDC general population prisoners have access to the law library, law books, United States Code (U.S.C.) official code of Georgia (OCGA), federal and state case law reporters, and computers with Lexis or Westlaw on them, for up to six (6) hours per week. Plaintiff was denied all such access to all such materials.

26. ~~As~~ Plaintiff is currently proceeding pro se on a direct appeal from his current conviction and sentence, habeas corpus petition challenging his prior 1996 conviction, and this civil rights action, as well as other cases related to his conviction, sentence, or conditions of confinement.

27. As a result of plaintiff's lack of access to legal materials, he has been unable to file a brief regarding his current conviction, or to rebut authorities cited by the state in responsive pleadings.

28. At an August 8, 2013 hearing on defendants' motion for new trial (Amft). The trial court ordered him to submit a witness along with authorities for allowing each subpoenaed witness or document, within ten (10) days, due to plaintiff's lack of access to legal materials, he was unable to research or submit authorities to the court, resulting in a September 17, 2013 order excluding more than sixty (60) witnesses on his Amft.

29. Mr. Daker's motion for new trial was heard October 7 and 8, 2013. Thereafter, on October 22, 2013, the state submitted a proposed order denying the Amft. Due to plaintiff's lack of access to legal materials, plaintiff was unable to rebut the authorities cited by the state in its proposed order, resulting in the trial court signing it on October 30, 2013.

30. Plaintiff has filed a direct appeal from his conviction on which he is proceeding pro se, but is unable to research case law for the brief.

31. On February 24, 2014, the Georgia Supreme Court decided Daker v. Humphrey, 294 Ga. 504, ___ S.E.2d ___ (No. S13A1368 Feb. 24, 2014), wherein it held that plaintiff's claims state a valid court-access claim.

32. On March 10, 2014, a hearing was held in Daker v. Humphrey, Butts County Superior Court case no. 2014-V-107 before Judge Thomas H. Wilson. At the hearing in open court, defendants consented to an order transferring plaintiff to a facility where he was to be given adequate access to a law library, and agreed to submit a proposed consent order within ten (10) days.

33. Instead, they reneged. On March 19, 2014, they filed an opposition to the petition for mandamus and a motion to dismiss. Plaintiff filed a traverse and a response to the motion to dismiss.

34. On or about April 4, 2014, Judge Wilson telephoned defendant Chatman and orally ordered him to transfer plaintiff.

(14)

35. IN REALIZATION THEREFORE, ON APRIL 7, 2014, THE GDC DEFENDANTS AND CHATMAN, STILL IN AGREEMENT WITH DEFENDANTS HEAD, EVANS, AND STALEY, TRANSFERRED PLAINTIFF FROM GDCP/SMU TO GEORGIA STATE PRISON ("GSP") ON THE GSP/SMU

36. SINCE HIS ARRIVAL AT GSP, OPLAINTIFF HAS BEEN SUBJECT TO THE SAME RESTRICTIVE CONDITIONS OF CONFINEMENT AS AT GDCP/ SMU AS DESCRIBED ABOVE, BUT EVEN WORSE CONDITIONS. GSP/SMU HAS A RAMPANT MOUSE INFESTATION PROBLEM WHICH IS BEING ~~EACH~~ IGNORED; OFFICERS ALMOST NEVER RUN CELL CLEAN-OUT, SUCH THAT THE CELLS ARE COMMONLY INFESTED WITH MOUSE FECES; PLAINTIFF HAS ONLY HAD CELL CLEAN-UT ONCE FROM 4/7/14- TO DATE. UNLIKE GDCP/SMU, WHERE SOME CELLS HAVE TVS/RADIO'S IN THE CELLS, NONE OF THE CELLS AT GSP/SMU DO; AND ~~AND~~ SIGNIFICANTLY, PLAINTIFF HAS BEEN DENIED ALL ACCESS TO MEDICAL CARE, TREATMENT, OR EVEN EXAMINATION SINCE HIS TRANSFER ~~TO~~ AT GSP FROM 4/7/14- TO DATE, WHICH FACTS ARE SET FORTH BELOW IN MORE DETAIL.

37. PLAINTIFF HAS STILL BEEN DENIED ADEQUATE ACCESS TO A LAW LIBRARY AND TO LEGAL RESEARCH MATERIALS ~~THE~~ AT GSP.

38. SINCE ~~AN~~ PLAINTIFF'S TRANSFER TO GSP ON 4/7/14, HE HAS STILL NEVER HAD A SEGREGATION/SMU HEARING TO DATE. ON APRIL 20, 2014, HE WROTE TO DEFENDANT PAUL REQUESTING A SEGREGATION HEARING AND REQUESTING TO BE MOVED TO GENERAL POPULATION. ON 4/23/14, DEFENDANT PAUL REFUSED TO MOVE PLAINTIFF TO GP., AND HAD STILL NOT EVEN PROVIDED PLAINTIFF A SEGREGATION HEARING.

39. EVEN WITHOUT A SEGREGATION HEARING, ON APRIL 28, 2014, PLAINTIFF SENT A CLASSIFICATION APPEAL TO DEFENDANT TOOLE, WHO IGNORED IT AND NEVER ANSWERED IT.

40. AS OF THIS DATE, PLAINTIFF HAS STILL NEVER HAD A SEGREGATION HEARING.

E. DELIBERATE INDIFFERENCE TO TRANSMISSION OF INFECTIOUS DISEASES.

41. ACCORDING TO GDC SOP IIBU1-0011, "FACILITY/CENTER BARBER/COSMETOLOGY SHOPS." § VI.B.5. BARBER SHOPS MAY NOT USE CLIPPERS WITH BROKEN GUARDS. AND PURSUANT TO ATTACHMENT 1, CLIPPERS MUST BE CLEANED AND PROPERLY SANITIZED AFTER EACH USE BEFORE USE ON ANY OTHER PATRON.

42. CONTRARY TO GDC SOP, ALL DEFENDANTS MAINTAIN A DE FACTO CUSTOM OF DISREGARDING SOP, AND OF REFUSING TO PROPERLY SANITIZE CLIPPERS, FINS, EXPOSING PRISONERS TO RISK OF INFECTION OF HIV AND HEPATITIS OR OTHER DISEASES WHICH ARE ALREADY COMMON IN THE PRISON POPULATION.

43. AT BOTH G.D.C.P. AND G.S.P., DEFENDANTS MAINTAIN THIS CUSTOM AND FORCEBLY SHAVE PRISONERS WITH DAMAGED AND UNSANITIZED CLIPPERS UNDER THREAT OF USE OF FORCE AND ITS ACTUAL USE, WHILE AT G.D.C.P. PLAINTIFF WAS REPEATEDLY FORCIBLY SHAVEN WITH UNSANITIZED CLIPPERS AFTER THEY HAD BEEN USED ON HIV- AND HEPATITIS-INFECTED PRISONERS, UNDER THREAT OF BEING BEATEN, PEPPER-SPRAYED, AND SUBJECT TO DISCIPLINARY ACTION.

44. WHILE AT G.D.C.P, PLAINTIFF FILED MULTIPLE GRIEVANCES ON THIS CUSTOM, ALL OF WHICH WERE DENIED BY DEFENDANTS BISHOP, RUZIER, SMITH, FOUNTAIN, FIELDS AND/OR LEWIS.

45. THIS SAME CUSTOM EXISTS AT G.S.P. ON APRIL 10, 2014, A THE CERT TEAM TO TAKE PLAINTIFF TO THE CERT OFFICE, WHERE THREE CERT OFFICERS, JOHN DOES, FORCIBLY SHAVED PLAINTIFF WITH UNSANITIZED CLIPPERS. WHEN PLAINTIFF COMPLAINED AND ASKED THEM TO CLEAN THE CLIPPERS, THEY REFUSED AND SHAVED HIM ANYWAY WITH THEM.

46. ON APRIL 18, 2014, PLAINTIFF FILED AN EMERGENCY GRIEVANCE ON THIS ISSUE, BUT DEFENDANT SMITH REFUSED TO PROCESS THE GRIEVANCE, AND ON MAY 6, 2014, DEFENDANT JACKSON RETURNED THE GRIEVANCE TO PLAINTIFF UNPROCESSED,

(16)

F. DENIAL OF MEDICAL CARE AT G.S.P., AND DELIBERATE INDIFFERENCE.

47. PLAINTIFF HAS NUMEROUS MEDICAL CONDITIONS FOR WHICH HE WAS PREVIOUSLY TREATED AT GDCP, INCLUDING BUT NOT LIMITED TO: CHEST PAINS, BACK PAIN, KNEE PAIN, ~~xxxxxxxxxx~~, MIGRAINE HEADACHES, DIZZY SPELLS, ~~AND~~ CARPAL TUNNEL SYNDROME ("C.T.S"), AND INDIGESTION/ACID REFLEX DISEASE.

48. UPON PLAINTIFF'S ARRIVAL ~~FROM~~ AT G.S.P, HE WAS SUPPOSED TO BE SEEN BY MEDICAL ~~WITH~~ THE SAME DAY FOR AN INITIAL MEDICAL INTAKE SCREENING, THAT NEVER HAPPENED.

49. SINCE THEN, TO DATE, PLAINTIFF HAS NOW SUBMITTED ELEVEN (11) MEDICAL REQUEST FORMS REQUESTING TO BE SEEN AT MEDICAL. ALL ELEVEN HAVE BEEN IGNORED, AND TO DATE, PLAINTIFF HAS STILL NOT BEEN TREATED OR EXAMINED AT G.S.P.

50. AT GDCP, PLAINTIFF HAD BEEN PREVIOUSLY PRESCRIBED MEDICATION FOR INDIGESTION, BACK PAIN, HEADACHE, MIGRAINE HEADACHE, KNEE PAIN, AT G.S.P, HE HAS BEEN DENIED ALL SUCH MEDICATION, BECAUSE HE HAS NEVER SEEN ANYONE AT MEDICAL TO ISSUE OR PRESCRIBE HIM ANY.

51. SIMILARLY, AT GDCP, PLAINTIFF HAD BEEN PREVIOUSLY PRESCRIBED A KNEE BRACE FOR KNEE PAIN, AND A WRIST BRACE FOR C.T.S AT GDCP, PLAINTIFF WAS NOT REQUIRED TO HAVE A "MEDICAL PROFILE" FOR HIS KNEE BRACE, WRIST BRACE, OR TO WEAR SOFT SHOES FOR HIS KNEE PAIN, OR BACK PAIN. HOWEVER, AT G.S.P, "MEDICAL PROFILES" ARE REQUIRED TO WEAR SOFT SHOES OR MEDICAL DEVICES SUCH AS KNEE BRACE OR WRIST BRACE, ETC...

52. PLAINTIFF HOWEVER HAS NEVER HAD ANY PROFILES ISSUED AT G.S.P, BECAUSE HE IS BEING DENIED MEDICAL CARE AND HAS NEVER BEEN ABLE TO BE SEEN BY ANY MEDICAL PERSONAL WHO CAN ISSUE SUCH PROFILES.

53. Because he has never been able to be/have seen by medical, many officers have refused to allow plaintiff to wear a wrist brace, or knee brace, or soft shoes. This has caused, and causes, plaintiff back pain, intense knee pain, and has caused him to fall numerous times due to lack of knee brace to support his knee. Further, being unable to wear a wrist brace exacerbated his CTS.

54. On April 24, 2014, plaintiff was sent to Augusta State Medical Prison (ASMP) in an appointment to see an orthopedist previously scheduled from GSP. The orthopedist prescribed plaintiff two wrist splints for each wrist for his CTS. However, upon his return to GSP, he was still not seen by any doctor or other medical personnel to issue him a profile allowing him to wear his splints at G.S.P. As a result, some officers have refused to allow him to wear his wrist splints, which exacerbates, rather than helps his CTS.

55. When plaintiff returned from A.S.M.P, on 4/24/14 he spoke with a nurse, and informed her that he had even submitted seven(7) medical requests and two dental requests and had not been seen yet. The nurse said she would put in a sick call request for him to be seen -- which she put in the request. However, on May 1, 2014, the medical request that the nurse submitted on plaintiff's behalf was itself rejected and returned to plaintiff by an unknown medical administrator who wrote "Please specify what your medical complaint is" -- even after he had already done so seven(7) times theretofore. On or about 4/10/14, 4/15/14, 4/16/14, 4/17/14, 4/12/14, 4/13/14, 4/13/14 (again),

56. Further, since then, plaintiff has submitted four(4) more medical request forms -- on 4/26/14, 4/30/14, 5/1/14, and 5/4/14 -- specifying his complaints and has still not been seen.

(18)

57. PLAINTIFF HAS ALSO WRITTEN THREE(3) LETTERS -- ON 4/30/14, 5/4/14, AND 5/5/14 -- TO THE G.S.P. MEDICAL ADMINISTRATOR, AND HAS STILL NOT BEEN SEEN OR RECEIVED A RESPONSE TO HIS LETTERS.

58. PLAINTIFF ALSO WROTE THREE(3) LETTERS -- ON 4/30/14, 5/4/14, AND 5/5/14, TO DEFENDANT PAUL COMPLAINING ABOUT THE DENIAL OF MEDICAL CARE, AND HAS STILL NOT BEEN SEEN OR RECEIVED A RESPONSE.

59. PLAINTIFF WROTE TO DEFENDANT TOOLE ON 5/5/14 COMPLAINING ABOUT THE DENIAL OF MEDICAL CARE, AND HAS STILL NOT BEEN SEEN OR RECEIVED A RESPONSE.

60. ON 5/6/14, PLAINTIFF SAW DEFENDANT COUNSELOR JACKSON. MR. JACKSON REJECTED THREE(3) GRIEVANCES THAT PLAINTIFF FILED ON 4/18/14. PLAINTIFF ATTEMPTED TO SUBMIT AN EMERGENCY MEDICAL GRIEVANCE ON THIS ISSUE, BUT JACKSON REFUSED TO ACCEPT IT SAYING PLAINTIFF ALREADY HAD TWO(2) PENDING GRIEVANCES FROM G.D.C.P, AND HE WOULD NOT ACCEPT ANY MORE. (HENCE, HE REJECTED THE THREE PLAINTIFF FILED ON 4/18/14. PLAINTIFF SAID HE WAS REQUESTING THIS ONE TO BE PROCESSED AS AN EMERGENCY MEDICAL GRIEVANCE WHICH DOES NOT COUNT TOWARD THE TWO-GRIEVANCE LIMIT, BUT JACKSON STILL REFUSED TO ACCEPT. JACKSON DID SAY HE WOULD TALK TO MS. KING IN MEDICAL.

61. ON 5/7/14, PLAINTIFF AGAIN SAW COUNSELOR JACKSON AND COMPLAINED THAT HE HAD STILL NOT BEEN SEEN. JACKSON SAID, "WELL, I TOLD MS. KING, THAT'S ALL I CAN DO." PLAINTIFF THEN ASKED TO RE-SUBMIT HIS EMERGENCY MEDICAL GRIEVANCE, BUT JACKSON STILL REFUSED.

62. THE THREE(3) GRIEVANCES PLAINTIFF SUBMITTED ON 4/18/14 AND ONE HE ATTEMPTED TO SUBMIT ON 5/6/14 AND 5/7/14 WERE ALL COMPLETED ON FORMS HE BROUGHT WITH HIM TO G.S.P FROM G.D.C.P. PLAINTIFF HAS NEVER BEEN ISSUED ANY GRIEVANCES AT G.S.P. HE HAS ASKED COUNSELOR JACKSON FOR THE FORMS FOUR(4) TIMES -- 4/8/14, 4/18/14, 5/6/14, AND 5/7/14 -- WHO REFUSES TO PROVIDE THEM.

6. DELIBERATE INDIFFERENCE TO SERIOUS DENTAL NEEDS.

63. PLAINTIFF HAS SEVERAL SENSITIVE AND PAINFUL TEETH FOR WHICH HE HAS BEEN TREATED BOTH PRIOR TO AND SINCE HIS INCARCERATION WITH PAIN MEDICINE AS WELL AS SENSITIVE TOOTH SOME TOOTHPASTE SUCH AS SENSODYNE.

64. PLAINTIFF ALSO HAS EXPERIENCED DECAY IN HIS TEETH AND GUMS, AS WELL AS CAVITIES, SAID SENSITIVITY, DECAY, AND CAVITIES HAVE CAUSED, AND ARE CAUSING PLAINTIFF TOOTHACHES, PAINS, AND GUM PAINS.

65. SINCE TRANSFERRING TO G.S.P. ON 4/7/14, PLAINTIFF HAS SUBMITTED TWO DENTAL REQUESTS REQUESTING TO SEE A DENTIST TO TREAT HIS TEETH. THE FIRST REQUEST WAS SUBMITTED ON OR ABOUT 4/10/14 AND WAS IGNORED. THE SECOND WAS SUBMITTED ON 4/15/14, AND WAS RETURNED ON 4/23/14 BY DEFENDANT P. MURPHY, WHO LITERALLY RUBBERSTAMPED IT WITH A STAMP THAT SAID, "YOU WILL BE SCHEDULED WHEN THERE IS AN AVAILABLE APPOINTMENT," WITH NO INDICATION WHEN THAT MAY BE. SINCE THEN, OVER 18 DAYS HAVE ELAPSED, AND PLAINTIFF HAS STILL NOT BEEN SEEN BY ANY DENTIST OR OTHER DENTAL CARE PROVIDER.

66. FURTHER, PLAINTIFF HAS ALSO BEEN UNABLE TO OBTAIN A TOOTHBRUSH SINCE HIS TRANSFER ON 4/7/14. ALTHOUGH THE GDC IS SUPPOSED TO ISSUE TOOTHBRUSHES TO NEW INMATES ON INTAKE AND MONTHLY, PLAINTIFF NEVER RECEIVED ONE ON INTAKE, NOR SINCE THEN. THE FAILURE TO ISSUE A TOOTHBRUSH HAS EXACERBATED PLAINTIFF'S ALREADY PAINFUL DENTAL CONDITION.

67. PLAINTIFF ALSO WROTE TO DEFENDANT REQUESTING A TOOTHBRUSH AND HIS REQUEST WAS IGNORED.

68. PLAINTIFF HAS BEEN SUFFERING SERIOUS TOOTHACHES AND GUM PAINS FOR MORE THAN 30 DAYS WITHOUT BEING ABLE TO SEE ANY DENTIST OR OTHER DENTAL CARE PROVIDER.

(20)

H. DENIAL OF JUMU'AH ISLAMIC SERVICE

69. PLAINTIFF IS MUSLIM, AN ADHERENT TO THE RELIGION OF ISLAM.

70. PART OF THE PRACTICE OF ISLAM IS THAT ALL MUSLIM MEN ARE REQUIRED TO ATTEND JUMU'AH CONGREGATIONAL PRAYER SERVICES EVERY FRIDAY AFTERNOON.

71. ALL DEFENDANTS AT GDC, GDCP, AND G.S.P. HAVE DENIED PLAINTIFF JUMU'AH ISLAMIC SERVICE EVERY WEEK SINCE HE ENTERED GDC CUSTODY FROM 10/3/12 TO DATE, AND ARE CONTINUING TO DENY HIM SUCH SERVICE.


I. DENIAL OF TA'LIM ISLAMIC SERVICE

72. PART OF THE PRACTICE OF ISLAM IS THAT ALL MUSLIMS ARE REQUIRED TO SEEK KNOWLEDGE, BOTH KNOWLEDGE OF THE RELIGION, AND WORDLY KNOWLEDGE.

73. PART OF THE PRACTICE OF ISLAM IS THAT ALL MUSLIMS ARE REQUIRED BOTH TO LEARN THE RELIGION AND TO TEACH IT.

74. TA'LIM IS AN ESSENTIAL ISLAMIC CONGREGATIONAL SERVICE FOR MUSLIMS TO SEEK KNOWLEDGE OF THE RELIGION, TO LEARN IT, AND TO TEACH IT.

75. ALL DEFENDANTS GDC, GDCP, AND G.S.P. HAVE DENIED PLAINTIFF TA'LIM ISLAMIC SERVICE EVERY WEEK SINCE HE ENTERED GDC CUSTODY FROM 10/3/12 TO DATE, AND ARE CONTINUING TO DENY HIM SUCH SERVICE.

76. SAID DENIAL OF TA'LIM ALSO VIOLATES PERMANENT INJUNCTION ISSUED IN BAKER V. WETHERINGTON, NO. 1:08-CV-3287-RWS, 2005 U.S. DIST. LEXIS 44485 (N.D. GA. AUG. 1, 2005); ID., 2007 U.S. DIST. LEXIS 3667 (N.D. GA. NO JAN. 18, 2007); ABDUL-QUDDUS V. WETHERINGTON, NO. 1:07-CV-0108-RWS (N.D. GA. 1/16/07).

J. DENIAL OF MAIL

**77.** IN THE G.D.C., DEFENDANTS MAINTAIN A CUSTOM OF REJECTING PRISONER INCOMING MAIL AT EITHER BY SIMPLY RETURNING IT TO SENDER WITHOUT PROVIDING HIM AN OPPORTUNITY TO APPEAL OR PROTEST THE DECISION.

78. ADDITIONALLY, GDC DEFENDANTS MAINTAIN A CUSTOM OF REJECTING MAIL AND WITHOUT NOTIFYING THE SENDER, WITHOUT ALSO PROVIDING THE SENDER AN OPPORTUNITY TO APPEAL OR PROTEST THE DECISION.

79. THIS CUSTOM EXISTS AT BOTH G.D.C.P. AND G.S.P.

80. AT G.S.P., GSP DEFENDANTS ALSO MAINTAIN A CUSTOM OF REJECTING INCOMING PRISONER MAIL SIMPLY BY THROWING IT AWAY WITHOUT PROVIDING NOTICE OR OPPORTUNITY TO APPEAL TO EITHER THE PRISONER OR THE SENDER.

81. AT GSP, GSP DEFENDANTS ALSO MAINTAIN A CUSTOM OF REMOVING THE INCOMING MAIL FROM ITS ENVELOPE AND THROWING THE ENVELOPE AWAY. THIS CUSTOM CREATES TWO PROBLEMS: FIRST, THE PRISONER IS DENIED THE INFORMATION ON THE ENVELOPE SUCH AS SENDER'S NAME, SENDER'S ADDRESS, TRACKING NUMBER, POSTMARK DATE, POST OFFICE FROM WHICH THE ITEM WAS POSTMARKED, AND DATE IT WAS STAMPED RECEIVED AT THE PRISON, ALL OF WHICH A PRISONER-RECIPIENT HAS AN INTEREST IN KNOWING.

82. SECOND, THIS CUSTOM OFTEN RESULTS IN INCOMING MAIL BEING DELIVERED TO THE WRONG PRISONER. PLAINTIFF HAS ON TWO OCCASIONS SO FAR BEEN GIVEN OTHER PRISONER'S MAIL. HE AT LEAST HAS THE COURTESY TO RETURN IT TO THE OFFICER; OTHER PRISONERS ARE NOT ALWAYS SO COURTEOUS. PLAINTIFF HAS BEEN EXPECTING MAIL AT GSP, WHICH HE NEVER RECEIVED, WHICH HE SUSPECTS WAS DELIVERED TO ANOTHER PRISONER.

## II. DENIAL OF REDRESS FOR GRIEVANCES

83. THE GDC HAS A PRISONER GRIEVANCE PROCEDURE, SOP IIB05-0001, "STATEWIDE GRIEVANCE PROCEDURE," ACCORDING TO THAT PROCEDURE: (1) A PRISONER MAY HAVE NO MORE THAN TWO(2) GRIEVANCES PENDING AT ONE TIME AT THE INSTITUTIONAL LEVEL; (2) EACH GRIEVANCE IS LIMITED TO ONE ISSUE (WITHOUT DEFINING WHAT CONSTITUTES AN ISSUE; (3) A GRIEVANCE MUST BE FILED WITHIN TEN(10) DAYS OF WHEN THE PRISONER LEARNS ABOUT AN ISSUE; (4) GRIEVANCES FILED AFTER TEN(10) DAYS ARE REJECTED AS A MATTER OF CUSTOM EVEN WHEN A PRISONER SHOWS GOOD CAUSE FOR ITS UNTIMELINESS; AND (5) AT THE INSTITUTIONAL LEVEL, PRISON OFFICIALS HAVE 40 DAYS TO RESPOND TO A GRIEVANCE, AND CAN REQUEST A TEN(10)-DAY EXTENSION, WHICH THEY COMMONLY DO; AND (6) PRISON OFFICIALS REGULARLY VIOLATE BOTH THE 40-DAY DEADLINE, AND TEN(10)-DAY EXTENSION DEADLINE.

84. AS A RESULT OF THE ABOVE PROVISIONS, THE MOMENT A PRISONER FILES TWO(2) GRIEVANCES, HE IS EFFECTIVELY DENIED ALL ACCESS TO THE PROCEDURE FOR THE NEXT 40-50 (OR MORE) DAYS UNTIL THOSE GRIEVANCES ARE ANSWERED. ANY OTHER GRIEVANCES ARE REJECTED.

85. ALSO, AS A RESULT OF THE ABOVE PROVISIONS, THAT A PRISONER IS COMPELLED TO WITHDRAW A PENDING GRIEVANCE TO FILE A NEW GRIEVANCE, BUT THIS FORCES A PRISONER TO SACRIFICE ONE CONSTITUTIONAL RIGHT IN ORDER TO ASSERT ANOTHER AND GIVES THE PRISONER A HOBSON'S CHOICE.

86. PLAINTIFF HAS BEEN DENIED ALL ACCESS TO THE GRIEVANCE PROCEDURE SINCE HIS TRANSFER TO G.S.P. ON 4/7/14 TO DATE.

87. Pursuant to the SOP, prisoners are supposed to request grievance forms from his counselor. Plaintiff has repeatedly requested grievance forms from his counselor, Muriel Jackson, on 4/8/14, 4/18/14, and 5/6/14, and 5/9/14. On each occasion, Mr. Jackson refused to provide any, saying plaintiff has to get some from the dorm officer.

88. However, plaintiff has also asked nearly every officer on nearly every shift on nearly every day for a grievance. They have all said the same thing: officers don't have grievances, prisoners are supposed to get some from the counselor.

89. On April 18, 2014, plaintiff did submit two grievances and one emergency grievance to counselor Jackson using forms he (plaintiff) brought with him from G.D.C.P. to G.S.P.

90. On May 6, 2014, counselor Jackson returned all three(3) grievances to plaintiff unprocessed, saying defendant Smith rejected them because plaintiff already has two(2) grievances pending from G.D.C.P. Plaintiff asked for appeal forms. Counselor Jackson wouldn't provide any, saying plaintiff could not appeal because they've been rejected. You can't appeal until it's processed and denied."

91. Also, on May 6, 2014, plaintiff attempted to submit an emergency medical grievance to Jackson on his denial of medical care. Counselor Jackson refused to accept because he said plaintiff already had(2) two(2) grievances pending.

92. On May 9, 2014, plaintiff again attempted to submit the emergency medical grievance to counselor Jackson, who again refused to accept it for the same reason.

(24)

L. ACCESS TO COURTS — RESTRICTIONS ON INDIGENT MAIL

93. PURSUANT TO GDC SOP IIBO4-0001, "INMATE MAIL AND RECEIPT OF FUNDS," § VI.K.3, INDIGENT PRISONERS ~~MAY~~ ARE ALLOWED UP TO EIGHT (8) STAMPS PER WEEK: FIVE (5) FOR LEGAL MAIL, THREE (3) FOR NON-LEGAL MAIL.

94. DURING PLAINTIFF'S PREVIOUS INCARCERATION, HE WAS INCARCERATED AT GDCP, AL BURRUSS CORRECTIONAL TRAINING CENTER, PHILLIPS STATE PRISON (SP), RIVERS S.P., HANCOCK S.P., BALDWIN S.P., DODGE S.P., CENTRAL S.P., MACON S.P., AND ARRENDALE S.P., DURING HIS CURRENT INCARCERATION, HE HAS BEEN INCARCERATED AT GDCP AND GSP.

95. AT EACH OF THE ABOVE FACILITIES--EXCEPT G.S.P.— THE FIVE (5) LEGAL MAIL STAMPS CANNOT BE USED FOR NON-LEGAL MAIL, BUT THE THREE (3) NON-LEGAL STAMPS CAN BE USED FOR LEGAL MAIL. THAT MAKES SENSE: FIRST, IF THE THREE (3) NON-LEGAL STAMPS CAN BE USED TO WRITE ANYBODY, ANYBODY INCLUDES BOTH NON-LEGAL AND LEGAL ADDRESSEES. UNDER THIS APPLICATION, PRISONERS CAN USE THREE (3) STAMPS FOR NON-LEGAL AND FIVE (5) FOR LEGAL; OR TWO (2) FOR NON-LEGAL AND SIX (6) FOR LEGAL; OR ONE (1) FOR NON-LEGAL AND SEVEN (7) FOR LEGAL; OR ZERO (0) FOR NON-LEGAL AND ALL EIGHT (8) FOR LEGAL. THUS, IF A PRISONER HAS LEGAL DOCUMENTS THAT REQUIRE 6-8 STAMPS, HE MAY USE 1-3 OF HIS ALLOTTED NON-LEGAL STAMPS PLUS ALL FIVE LEGAL STAMPS TO MAIL THEM. LIKEWISE, IF HE HAS LEGAL DOCUMENTS THAT REQUIRE FOUR (4) FOR FILING AND FOUR (4) MORE FOR SERVICE UPON OPPOSING COUNSEL (EIGHT (8) TOTAL), HE MAY DO SO.

96. UNTIL 4/7/14, PLAINTIFF WAS CONFINED AT GDCP WHERE THE ABOVE APPLICATION IS FOLLOWED, WHICH WAS NOT A PROBLEM. HOWEVER, ON 4/7/14, HE TRANSFERRED TO GSP WHERE THIS APPLICATION IS NOT FOLLOWED. AT GSP, DEFENDANTS TOOLE, KILGORE, BROWN, AND HENRY, MAINTAIN A CUSTOM WHERE THE PRISONERS MAY NOT USE THE THREE (3) NON-LEGAL STAMPS TO MAIL LEGAL DOCUMENTS. THIS CUSTOM IS ARBITRARY AND IRRATIONAL FOR FOUR (4) REASONS.

(25)

97. First, mail will be rejected if it is addressed to any legal mail addressee, but not to a non-legal addressee. For example, plaintiff is allowed to use the three (3) non-legal stamps to write to "Therese S. Barnes," but not to "Therese S. Barnes, Clerk, Supreme Court of Georgia."

98. Second, this custom arbitrarily allows prisoners to use the three (3) non-legal stamps to forward legal documents to family members or friends to forward to the courts, but it does not allow the prisoner to mail the documents directly to the courts. For example, a prisoner can use a non-legal stamp to mail a notice of appeal to his mother to mail to a court, but he may not mail it to the court directly himself. Further, the option of mailing legal documents to friends/family for forwarding is not an adequate alternative both because: (1) it takes longer by requiring a document to be mailed twice, which can result in its untimeliness, and (2) it denies the prisoner the benefit of the "prisoner mailbox" rule.

99. Third, this G.S.P. custom arbitrarily limits a prisoner to only five (5) stamps for legal mail per week instead of up to eight (8) per week at other prisons. This is arbitrary because some documents are too heavy to mail on five (5) stamps resulting in the prisoner being unable to mail them, but they can be mailed on 6-8 stamps, if he sacrifices 1-3 non-legal stamps to do so. Plaintiff was previously allowed to do so at GDCP, but is not allowed to do so at G.S.P.

100. Fourth, if a prisoner is allowed to use the three (3) non-legal stamps for legal mail, he may sometimes have to, but is permitted to, use four (4) stamps to file legal documents with a court and use four (4) for service on opposing counsel, eight (8) total. However, under G.S.P. custom, if he is not allowed to use the three (3) non-legal for legal documents, he is unable to both file and serve legal documents for any documents requiring more than

TWO(2) STAMPS, BECAUSE HE IS EVEN LIMITED TO FIVE(5) STAMPS TOTAL. ON AVERAGE, ONE CAN MAIL UP TO 15 SHEETS OF PAPER ON TWO(2) STAMPS. THUS, THIS CUSTOM DENIES A PRISONER THE ABILITY TO BOTH FILE AND SERVE A COPY OF ANY LEGAL DOCUMENTS EXCEEDING 15 PAGES IN ANY COURT THAT REQUIRES SERVICE ON OPPOSING COUNSEL.

101. LASTLY, THE MONTHLY SPECIAL MAILING IS NOT AN ADEQUATE ALTERNATIVE TO BEING ABLE TO USE THE EIGHT(8) WEEKLY STAMPS ALL FOR LEGAL MAIL BECAUSE THE SPECIAL MAILING IS ONLY ONCE A MONTH INSTEAD OF WEEKLY, AND ONCE A PRISONER USES IT, HE MAY NOT USE IT AGAIN FOR ANOTHER MONTH.

102. ON APRIL 23, 2014, PLAINTIFF SPOKE WITH DEPUTY WARDEN KILGORE ABOUT THESE ISSUES, BUT SHE REFUSED TO CHANGE THE CUSTOM AT G.S.P.

103. THE REFUSAL TO ALLOW PLAINTIFF TO USE THE THREE(3) NON-LEGAL STAMPS FOR LEGAL MAIL HAS CAUSED, OR WILL IMMINENTLY CAUSE, HIM ACTUAL INJURY BY PREVENTING HIM FROM FILING LEGAL DOCUMENTS IN THE FOLLOWING CASES:

(i) ACTUAL INJURY #1 : APPEAL FROM DAKER v. HOWE, NO. CASE NO. ASSIGNED.

104. IN DAKER v. HOWE, DOUGLAS SUPERIOR COURT, PLAINTIFF SOUGHT A WRIT OF MANDAMUS TO COMPEL SENIOR JUDGE DONALD HOWE TO RULE ON A MOTION REGARDING A CHALLENGE TO PLAINTIFF'S 1896 CRIMINAL CONVICTION IN CASE NO. 95-9-3764-22, WITHIN 90 DAYS AS REQUIRED BY OCGA § 15-6-21(b). SEE BROWN V. JOHNSON, 251 Ga. 436, 706 SE2d 655 (1983). THE TRIAL COURT DENIED FILING ON MARCH 13, 2014, AND PLAINTIFF SOUGHT TO FILE AN APPLICATION FOR DISCRETIONARY APPEAL AS REQUIRED BY OCGA §§ 42-12-8 AND 5-6-35.

105. ON OR ABOUT APRIL 12, 2014, PLAINTIFF SUBMITTED HIS APPLICATION FOR DISCRETIONARY APPEAL THROUGH THE G.S.P. INDIGENT MAIL SYSTEM TO USE THE FIVE(5) LEGAL MAIL STAMPS FOR THE WEEK OF 4/14/18/14, TO MAIL HIS APPLICATION TO THE GEORGIA SUPREME COURT. PLAINTIFF ALSO SOUGHT TO USE THE THREE(3) NON-LEGAL STAMPS TO MAIL DOCUMENTS TO A US DISTRICT COURT, THE ELEVENTH CIRCUIT COURT

OF APPEALS, AND UNITED STATES SUPREME COURT AT ONE STAMP EACH, THE PRISON MAILROOM REFUSED. INSTEAD, THEY USED THREE(3) LEGAL STAMPS TO MAIL THE ENVELOPES TO THE DISTRICT COURT, ELEVENTH CIRCUIT, AND U.S. SUPREME COURT, BUT ON APRIL 18, 2014, THEY REJECTED THE APPLICATION TO THE GEORGIA SUPREME COURT, EVEN THOUGH PLAINTIFF HAD STILL FIVE(5) UNUSED LEGAL STAMPS FOR THE WEEK OF 4/14/14-4/18/14, WHICH WOULD HAVE MAILED IT.

106. ON APRIL 21, 2014, PLAINTIFF RE-SUBMITTED THE APPLICATION DIRECTLY TO DEFENDANT KILGORE, ALONG WITH A LETTER EXPLAINING THE ABOVE FACTS.

107. ON OR ABOUT APRIL 23, 2014, PLAINTIFF SPOKE WITH DEFENDANT KILGORE. SHE REFUSED TO ALLOW HIM TO USE THE THREE(3) NON-LEGAL STAMPS TO MAIL ANY LEGAL DOCUMENTS, AND REFUSED TO ALLOW HIM TO USE HIS REMAINING FIVE(5) UNUSED STAMPS FOR THE WEEK OF 4/14/14-4/18/14 TO MAIL IT. SHE SAID HE COULD USE HIS MONTHLY SPECIAL MAILING TO MAIL, BUT PLAINTIFF HAD ALREADY USED HIS SPECIAL MAILING FOR APRIL. SHE SAID HE WILL HAVE TO WAIT UNTIL MAY, BUT PLAINTIFF EXPLAINED THAT THAT WOULD BE TOO LATE BECAUSE HE HAD A COURT DEADLINE. SHE STILL REFUSED.

108. ON APRIL 23, 2014, THE MAILROOM RETURNED THE REJECTED APPLICATION BACK TO PLAINTIFF.

109. ON APRIL 24, 2014, HE RESUBMITTED IT FOR MAILING, AND LATER THAT DAY, THE MAILROOM AGAIN REFUSED TO MAIL IT AND RETURNED IT TO PLAINTIFF UNMAILED. THUS, AFTER SUBMITTING IT THREE TIMES -- ON APRIL 12, 21, AND 24, 2014 -- THE MAILROOM STILL REFUSED TO MAIL IT.

(2) IMMINENT INJURY #1: APPEAL FROM COBB HABEAS CASE NO. 12-1-8030.

110. ON MARCH 27, 2014, THE COBB SUPERIOR COURT DISMISSED MR. BAKER'S HABEAS CORPUS PETITION IN BAKER V. WARREN, NO. 12-1-8030, PURSUANT TO OCGA §§ 42-12-8, 5-6-35, AND MR. BAKER HAS 30 DAYS TO FILE AN APPLICATION FOR DISCRETIONARY. HOWEVER, ON APRIL 9, 2014, THE GEORGIA SUPREME COURT GRANTED HIM AN EXTENSION

OF TIME THROUGH MAY 28, 2014, TO FILE HIS APPLICATION. SEE BAKER v. WARREN, NO. 514T8011 (EXT. GRANTED 4/9/14). SEE WWW. GASUPREME.US.

111. PLAINTIFF HAS SINCE BEEN PREPARING HIS APPLICATION FOR DISCRETIONARY APPEAL FROM HIS HABEAS CASE. SAID APPLICATION WILL BE 70 PAGES LONG AND ACCOMPANIED BY APPROXIMATELY 70-40 PAGES OF EXHIBITS, PURSUANT TO OCGA § 5-6-35(c) AND GA.SUP.CT.R. 39. THIS APPLICATION WILL BE TOO HEAVY TO MAIL ON ONLY FIVE(5) STAMPS, BUT IT WILL MAIL ON 6-8 STAMPS. THUS, UNLESS PLAINTIFF IS ALLOWED TO USE HIS THREE(3) NON-LEGAL STAMPS FOR EITHER LEGAL/NON-LEGAL MAIL, HE WILL BE UNABLE TO MAIL SAID APPLICATION TO THE GEORGIA SUPREME COURT.

112. THE MONTHLY SPECIAL MAILING IS AN ADEQUATE ALTERNATIVE BECAUSE PLAINTIFF ALREADY HAD TO USE HIS SPECIAL MAILING FOR MAY 2014 TO MAIL HIS APPLICATIONS FOR COA'S AND MOTIONS TO PROCEED IFP TO THE ELEVENTH CIRCUIT IN APPEALS NOS. 13-15932, 13-15936, 13-15938, 13-15939, 13-15941. IF PLAINTIFF IS FORCED TO WAIT UNTIL JUNE 2014 TO MAIL HIS APPLICATION, IT WILL BE UNTIMELY BECAUSE THE GEORGIA SUPREME COURT ONLY GAVE HIM UNTIL MAY 28, 2014 TO FILE IT.

(3) "IMMINENT INJURY #3: APPEALS FROM COBB CRIMINAL CASE NO. 10-9-1350.

113. PLAINTIFF HAS FILED 14 NOTICES OF APPEAL FROM HIS CRIMINAL CONVICTION AND SENTENCE, DENIAL OF HIS MOTION FOR NEW TRIAL, AND 12 OTHER POST-CONVICTION ORDERS, IN COBB SUPERIOR COURT CASE NO. 10-9-1350. EACH BRIEF IN EACH APPEAL WILL BE 50 PAGES LONG (OR UNDER). NONE OF THE BRIEFS WILL MAIL ON ONLY 5 STAMPS, BUT THEY WILL MAIL ON 6-8 STAMPS. THUS, UNLESS PLAINTIFF IS ALLOWED TO USE THE THREE(3) ALLOTTED NON-LEGAL STAMPS FOR LEGAL MAIL AS WELL, HE WILL BE UNABLE TO FILE HIS BRIEFS ON APPEALS FROM HIS CRIMINAL CONVICTION ONCE EACH APPEAL IS DOCKETED IN THE GEORGIA SUPREME COURT.

# V. STATEMENT OF CLAIMS

114. PLAINTIFF CLAIMS THAT DEFENDANTS' HEAD, EVANS, AND STALEY'S REQUEST THAT THE GDC PLACE PLAINTIFF ON SOLITARY CONFINEMENT SO AS TO DENY HIM ACCESS TO LEGAL MATERIALS WITH WHICH TO APPEAL HIS CONVICTION, AND GDC DEFENDANTS' COMPLIANCE THEREWITH, VIOLATES HIS CONSTITUTIONAL RIGHT OF ACCESS TO THE COURTS.

115. PLAINTIFF CLAIMS THAT GDC DEFENDANTS' PLACEMENT OF PLAINTIFF ON SOLITARY CONFINEMENT IN RETALIATION FOR HIS PREVIOUS LITIGATION AGAINST THE GDC DURING HIS PREVIOUS INCARCERATION, VIOLATES THE FIRST AND FOURTEENTH AMENDMENTS.

116. PLAINTIFF CLAIMS THAT GDC DEFENDANTS' PLACEMENT OF HIM ON SOLITARY CONFINEMENT/SEGREGATION/SMU FROM 10/3/12 TO DATE VIOLATES SUBSTANTIVE DUE PROCESS, AND THE PROCEDURES FOLLOWED IN DOING SO VIOLATE PROCEDURAL DUE PROCESS.

117. PLAINTIFF CLAIMS THAT GDC DEFENDANTS' PLACING HIM ON SOLITARY CONFINEMENT/SEGREGATION/SMU VIOLATES THE EIGHTH AMENDMENT PROSCRIPTION OF CRUEL AND UNUSUAL PUNISHMENT.

118. PLAINTIFF CLAIMS THAT GDC/GDCP/GSP DEFENDANTS CUSTOM OF DELIBERATE INDIFFERENCE TO TRANSMISSION OF INFECTIOUS DISEASES THROUGH UNSANITIZED CLIPPERS VIOLATES THE EIGHTH AMENDMENT.

119. PLAINTIFF CLAIMS THAT GDC/GDCP/GSP DEFENDANTS' CUSTOM OF EXCESSIVE USE OF FORCE TO ENFORCE COMPLIANCE WITH ITS CUSTOM OF DELIBERATE INDIFFERENCE TO INFECTIOUS DISEASE ITSELF ALSO VIOLATES THE EIGHTH AMENDMENT.

120. PLAINTIFF CLAIMS THAT GDC/GSP DEFENDANTS DELIBERATE INDIFFERENCE TO HIS SERIOUS MEDICAL NEEDS, INCLUDING DENIAL OF MEDICAL CARE, MEDICATION, AND MEDICAL PRACTICES, VIOLATES THE EIGHTH AMENDMENT.

121. PLAINTIFF CLAIMS THAT DEFENDANTS DELIBERATE INDIFFERENCE TO HIS SERIOUS DENTAL NEEDS, VIOLATES THE EIGHTH AMENDMENT.

122. PLAINTIFF CLAIMS THAT DEFENDANTS GDC/GDCP/GSP DENIAL OF JUM'UAH ISLAMIC SERVICE TO HIM VIOLATES THE FIRST AMENDMENT AND RLUIPA.

(30)

123. PLAINTIFF CLAIMS THAT GDC/GDCP/GSP DEFENDANTS DENIAL OF TA'LIM ISLAMIC SERVICE TO HIM VIOLATES THE FIRST AMENDMENT AND RLUIPA.

124. PLAINTIFF CLAIMS THAT GDC/GDCP/GSP DEFENDANTS' CUSTOM OF REJECTING PRISONER MAIL WITHOUT PROCEDURAL DUE PROCESS PROTECTIONS VIOLATES THE DUE PROCESS RIGHTS OF BOTH PRISONERS AND SENDERS.

125. PLAINTIFF CLAIMS THAT GSP DEFENDANTS' CUSTOM OF DISCARDING THE ENVELOPES OF PRISONER INCOMING MAIL AND THE INFORMATION PROVIDED THEREON VIOLATES THE FIRST AMENDMENT.

126. PLAINTIFF CLAIMS THAT GDC'S SOP ON GRIEVANCES' RESTRICTIONS ON GRIEVANCES VIOLATES THE FIRST AMENDMENT RIGHT TO PETITION GOVERNMENT FOR REDRESS OF GRIEVANCES, AND THE RIGHT OF ACCESS TO THE COURTS.

127. PLAINTIFF CLAIMS THAT GSP DEFENDANTS' CUSTOM OF PREVENTING PRISONERS FROM USING STAMPS ALLOTTED FOR NON-LEGAL MAIL TO BE USED FOR LEGAL MAIL VIOLATES THEIR RIGHT OF ACCESS TO THE COURTS.

## VI. IMMINENT DANGER OF SERIOUS PHYSICAL INJURY

128. Plaintiff claims that defendants' custom of forcing prisoners, including him, to shave with unsanitized clippers places him in imminent danger of serious physical injury of infection with HIV, Hepatitis, or other diseases. James v. Dormire, 2008 WL 625027, *2-3 (W.D.Mo. Mar. 4, 2008).

129. Plaintiff claims that defendants' custom of using force to beat, pepper spray, and attack prisoners who refuse to comply with their custom of deliberate indifference to transmission of infectious diseases also places him in imminent danger of serious physical injury.

130. Plaintiff claims that defendants' denying him medical care for his numerous medical conditions since his 4/7/14 transfer to GSP places him in imminent danger of serious physical injury. Brown v. Johnson, 387 F.3d 1344, 1350 (11th Cir. 2004).

131. Plaintiff claims that defendants' denying him dental care for his dental condition since his 4/7/14 transfer to GSP places him in imminent danger of serious physical injury through worsening and continuation of said symptoms. McAlphin v. Toney, 281 F.3d 709, 711 (8th Cir. 2002).

### VII. RELIEF SOUGHT.

132. PLAINTIFF SEEKS THE FOLLOWING RELIEF:

(a) DECLARATORY JUDGMENT THAT DEFENDANTS' ACTS/OMISSIONS VIOLATE HIS RIGHTS UNDER (1) THE CONSTITUTION; AND (2) THE RLUIPA;

(b) INJUNCTIVE RELIEF ENJOINING DEFENDANTS FROM CONTINUING SAID VIOLATIONS;

(c) AN NOMINAL, COMPENSATORY, AND PUNITIVE DAMAGES;

(d) COSTS OF PROSECUTING THIS ACTION; AND

(e) OTHER RELIEF THAT IS NECESSARY OR APPROPRIATE.

PURSUANT TO 28 USC § 1746 I DECLARE UNDER PENALTY OF PERJURY THAT THE ABOVE AND FOREGOING FACTS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

THIS __11__ DAY OF __MAY__, __2014__.

WASEEM DAKER
PLAINTIFF, PRO SE

#901373
GSP.
300 1ST AVE S
REIDSVILLE, GA 30453

(33)