**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

WASEEM DAKER,

        Plaintiff,

    v.

PATRICK HEAD, et al.,[1]

        Defendants.

CIVIL ACTION NO.: 6:14-cv-47

**ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

      Plaintiff, who is presently incarcerated at Valdosta State Prison in Valdosta, Georgia,

filed a Complaint, as supplemented, based on 42 U.S.C. § 1983 and the Religious Land Use and

Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 *et seq.* ("RLUIPA").  Docs. 1, 9.  This

matter is before the Court for a frivolity screening pursuant to 28 U.S.C. § 1915A.

      Plaintiff asserts a number of claims, spanning various years of incarceration in Georgia

state prisons.  For ease of reference, it is helpful to group Plaintiff's claims into three categories.

First, Plaintiff asserts claims against various individuals associated with his criminal prosecution

in Cobb County, Georgia ("Cobb County Claims").  Second, Plaintiff asserts claims against

various individuals affiliated with the Georgia Diagnostic & Classification Prison, where

Plaintiff was housed at one point during his period of incarceration ("GDCP Claims").  Third,

Plaintiff asserts claims against the Georgia Department of Corrections ("GDC"), individuals

---

[1]      The Court **DIRECTS** the Clerk of Court to amend the docket and record of this case to reflect the proper naming or identification of certain Defendants: (1) Doctor Dean Broome should be substituted in place of Dr. John/Jane Doe; (2) Stephen Nicolou should be substituted for Stephen Nicolov; (3) Benjamin Warren, Aswon Cauley, and Freddie Davis should be substituted for Three John Does; (4) Betty Bailey-Dean should be added as a named Defendant; (5) Ms. King and Debbie King are the same person; (6) Ms. Silvers should be substituted for Ms. Sicvers; (7) Michael Nopen should be substituted for Michael Nupen; and (8) all Doe Defendants should be removed from the docket and caption of this case.

affiliated with the GDC, and individuals associated with Georgia State Prison, another facility

where Plaintiff was housed ("GSP Claims").  With these categories in mind and for the reasons

that follow, I **RECOMMEND** the Court:

1.  **SEVER** the Cobb County Claims from this case, **TRANSFER** all of Plaintiff's

    Cobb County Claims to the District Court for the Northern District of Georgia for

    disposition, and **TERMINATE** the Defendants named in Plaintiff's Cobb County

    Claims as named Defendants in this case;[2] and

2.  **SEVER** the GDCP Claims from this case, **TRANSFER** all of Plaintiff's GDCP

    Claims to the District Court for the Middle District of Georgia for disposition, and

    **TERMINATE** the Defendants named in Plaintiff's GDCP Claims as named

    Defendants in this case;[3]

Regarding the GSP Claims, I find that some of the claims should be dismissed.

Specifically, I **RECOMMEND** the Court:

1.  **DISMISS** all of Plaintiff's GSP Claims against Defendants Georgia Department

    of Corrections, Fountain, Major Smith, Rozier, James Smith, Fowler, Broome,

    Jackson, Mr. John Doe (Medical Director), and Dr. John/Jane Doe (dentist) and

    **TERMINATE** these Defendants upon the docket and record of this case;[4]

---

[2]     The Defendants named in the Cobb County Claims are Defendants Head, Evans, and Staley.
These Defendants should no longer be named Defendants in this action.

[3]     Plaintiff asserts GDCP Claims against the Georgia Department of Corrections ("GDC") and the
following individuals: Humphrey, Chatman, Bishop, McMillan, Nopen, Nash, Medlock, Barber, Tillman,
Jones, Lewis, Fields, Fountain, Rozier, and James Smith.  If the Court adopts my recommendation, no
claims will remain pending against these Defendants in this District, and these Defendants should no
longer be named as Defendants in this action.  Plaintiff also asserts GDCP Claims against GDC
Defendants Owens, Ward, and Jacobs; however, for these three Defendants, Plaintiff also asserts GSP
Claims that survive frivolity review.  As to Defendants Owens, Ward, and Jacobs, Plaintiff's GDCP
Claims against these three Defendants should be severed and transferred, the GSP Claims should proceed,
and these three Defendants should remain named Defendants in this action.

[4]     To be clear, only Plaintiff's GSP Claims against these Defendants are dismissed.  Any claims
against these Defendants for conduct that occurred at GDCP or elsewhere are not dismissed.

2.      **DISMISS** Plaintiff's grievance procedure claims against Milton Smith;

3.      **DISMISS** all of Plaintiff's substantive due process claims;

4.      **DISMISS** all of Plaintiff's claims under the RLUIPA;

5.      **DISMISS** Plaintiff's retaliation claims against Defendants Jacobs, Toole, Shuemake, Todman, and Davis;

6.      **DISMISS** all of Plaintiff's deprivation of property claims; and

7.      **DENY** Plaintiff's preliminary injunctive relief Motions, as supplemented, docs. 8, 10, 11, 72, 73.

However, some of Plaintiff's GSP Claims survive frivolity review and will proceed in this Court.  Therefore, I **DIRECT** the United States Marshals Service to serve a copy of Plaintiff's Complaint, doc. 1, Supplemental Complaint, doc. 9, and a copy of this Order on the Defendants named in these claims.  Specifically, I conclude the following GSP Claims against the following Defendants will proceed:

1.      Deliberate indifference to serious medical need claims asserted against Defendants King, Paul, Toole, Salgado, Lightsey, Sharon Brown, Strickland, Dobbs, Crowder, Caravello, McNunn, Nicolou, Silvers, Cowart, Brady, Wooten, Thurmond, Milton Smith, Owens, Ward, Jacobs, Bailey-Dean, Murphy, Shuemake, Todman, and Davis;

2.      Deliberate indifference to health and safety and excessive use of force claims asserted against Defendants Warren, Cauley, and Davis;

3.      Access to the courts (postage) claims asserted against Defendants Toole, Kilgore, Brown, and Henry; and

4.      Procedural due process claims asserted against Defendants Deloach, Owens,

Toole, Bailey-Dean, and Jacobs.[5]

Finally, I have determined that certain of Plaintiff's claims and allegations require

clarification in order to proceed.  Accordingly, I **ORDER** Plaintiff to clarify his claims, within

21 days of this Order, as follows:

1.      Plaintiff must identify the Defendants he claims are liable for the following

claims: (a) denial of access to the courts (mailing issues); (b) violations of

religious rights under the First Amendment; and (c) conditions of confinement

claims at GSP.

2.      Plaintiff must identify the specific Defendants responsible for each policy or

practice in place **at GSP** which he contends led to the violations of his rights.

3.      Plaintiff must file a single "Supplement" containing the information described,

which must **not exceed 5 pages**.  To be clear, the Court is not asking Plaintiff to

provide an Amended Complaint, only a supplement to his previously filed

pleadings, and Plaintiff may not attempt to interject new and unrelated claims or

additional Defendants into this lawsuit.

4.      Conclusory "all Defendants" statements and similarly vague allegations are not

sufficient.  Plaintiff must identify each Defendant properly by name.

5.      Failure to follow these instructions may result in dismissal of Plaintiff's claims.

---

[5]      The Court notes that a considerable amount of time has elapsed since Plaintiff filed his Complaint and Supplemental Complaint and this Court's frivolity review of these pleadings.  The Court understands some named Defendants may not hold the same positions they did at the time of filing or may no longer be employed in any capacity in which Plaintiff named these Defendants.  Thus, the Court asks the United States Marshals Service to use all reasonable methods available to effectuate service against the individuals upon whom the Court is directing service.  Even though Plaintiff is proceeding *in forma pauperis* and the Court is directing service of his Complaint upon certain individuals, Plaintiff is not absolved of all responsibilities regarding service of his Complaint.  The Court directs Plaintiff to assist the United States Marshals Service with the service of his Complaint by providing any updated information he may have relating to the whereabouts of any named Defendants who are being served and who are no longer in the positions or facilities they were in when Plaintiff filed his Complaint in May 2014.

# BACKGROUND[6]

Plaintiff filed this cause of action, as supplemented, in 2014 while he was housed at Georgia State Prison in Reidsville, Georgia. Docs. 1, 9. After several procedural twists and turns, including an appeal to the Eleventh Circuit Court of Appeals and the subsequent vacatur of this Court's judgment of dismissal and remand, Plaintiff's Complaint, as supplemented, is ready for frivolity review.[7]

In his Complaint, Plaintiff names over 30 individuals, including former Cobb County prosecutors and a judge. Doc. 1 at 1, 6–8. In his supplement, Plaintiff identified many of the John and Jane Doe Defendants named in his original Complaint, doc. 1 at 1, and added almost 30 new Defendants to his cause of action. Doc. 9 at 1–3. Plaintiff incorporated the factual allegations contained in his original Complaint, but he also set forth allegations relating to events occurring before and after the events of his original Complaint and numbered the paragraphs in his supplement beginning with the numbers after those he used for the allegations contained in his original Complaint. Doc. 1 at 33; Doc. 9 at 1. Thus, the Court construes Plaintiff's "Amended Complaint" as being a supplement to his original Complaint, as the second filing builds on his original Complaint. See Faulk v. City of Orlando, 731 F.2d 787, 790–91 (11th Cir.

---

[6]     A thorough discussion of the procedural background in this case can be found in the Court's March 28, 2019 Order. Doc. 94 at 4–5.

[7]     On appeal, the Eleventh Circuit "express[ed] no opinion on whether" Plaintiff had accumulated strikes beyond those this Court had identified. Doc. 68 at 6, n.2. At the time Plaintiff filed his Complaint in this case, he unquestionably had accumulated two strikes, one of which the Eleventh Circuit agreed is a strike: (1) Daker v. Warren, Case No. 13-11630 (11th Cir. Mar. 4, 2014) (three-judge panel dismissing appeal as frivolous); and (2) Daker v. Mokwa, 2:14-cv-395 (C.D. Cal. Feb. 4, 2014) (dismissing complaint as frivolous, malicious, or failing to state a claim). Plaintiff also had two other district court cases that had been dismissed based on Plaintiff's failure to follow court orders: (1) Daker v. Robinson, 1:12-cv-00118 (N.D. Ga. Sept. 12, 2013); and (2) Daker v. Dawes, 1:12-cv-00119 (N.D. Ga. Sept. 12, 2013). However, assigning a strike to these dismissals is not clearly warranted in this case, especially in light of Daker v. Commissioner, Georgia Department of Corrections, 820 F.3d 1278 (11th Cir. 2016), and other cases arising out of the Eleventh Circuit. Thus, at this time, the Court determines Plaintiff did not have three strikes when he executed his Complaint on May 11, 2014. In addition, the Court accepts Plaintiff's allegations in his Complaint and supplement as true, as it must when conducting the requisite frivolity review. Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017).

1984) (construing pro se plaintiff's three pleadings together as one complaint in determining whether plaintiff stated claim).

## I.      Cobb County Claims

Plaintiff contends that, after he was convicted in the Cobb County Superior Court, and upon his conviction, certain Defendants asked the Georgia Department of Corrections to place him in solitary confinement and to deny him law library access in an effort to hinder his ability to challenge his conviction and sentence.  Doc. 1 at 10.  Plaintiff asserts these claims against Defendant Head (the former Cobb County District Attorney), Defendant Evans (a Cobb County Assistant District Attorney), and Defendant Staley (the presiding judge in his Cobb County trial). These claims are collectively referred to as the "Cobb County Claims."

## II.     GDCP Claims

Plaintiff asserts claims against various individuals affiliated with the Georgia Diagnostic & Classification Prison ("GDCP").  Specifically, Plaintiff names as Defendants: Carl Humphrey (former Warden); Bruce Chatman (Warden); June Bishop (Deputy Warden of the Special Management Unit ("SMU")); James McMillan (Unit Manager); Michael Nopen (Chief of Security); Torjka Nash (a counselor); Lesley Medlock (Chief Counselor); and Officer Sarah Barber.  Plaintiff's claims against the GDCP Defendants generally concern his cell assignments from 2012 to 2014 (and the conditions of those locations) and GDCP's shaving policies ("GDCP Claims") prior to his transfer to Georgia State Prison.

Plaintiff alleges he was transferred into the custody of GDCP in October 2012 and was placed in the SMU without benefit of a hearing within 96 hours of his transfer.[8]  Doc. 1 at 11–12.

---

[8]      Plaintiff asserts the GDC and various individuals associated with GDC placed Plaintiff in solitary confinement in response to a request from individuals connected to his Cobb County prosecution. Plaintiff asserts that his placement was done in retaliation for the litigation he pursued during his previous period of incarceration from 1996 through 2005.  Doc. 1 at 11.  In connection with this allegation, Plaintiff names as Defendants the GDC itself and the following individuals associated with the GDC: Brian Owens (former Commissioner of the GDC); Timothy Ward (former Assistant Commissioner and current Commissioner); Randy Tillman (GDC Facilities Director); Rick Jacobs (GDC Facilities Director);

According to Plaintiff, the relevant Standard Operating Procedure ("SOP") explains that the SMU is a high-maximum lockdown unit for inmates who are at the high-maximum security level or who commit serious disciplinary infractions, yet he was a close security inmate with no disciplinary infractions.  Id.  Plaintiff claims his assignment to this unit placed an atypical and significant hardship on him in relation to the ordinary incidents of prison life.  As examples, Plaintiff maintains he was denied access to the law library, legal research materials, religious services, contact visits, and television and telephone privileges, while prisoners in general population had access to these services and materials.  Id. at 12–13.  Plaintiff maintains that, due to the lack of access to legal materials at GDCP, he was unable to file a brief regarding his conviction or rebut the State's cited authorities.  Id. at 13.  Specifically, Plaintiff asserts he was unable to research or submit legal authorities to the trial court, which resulted in the exclusion of 60 witnesses during the hearing on his motion for new trial and the denial of his motion.  Id. at 14.

Plaintiff asserts he asked Defendants Humphrey and Bishop on October 4, 2012 why he was placed in the SMU, and Defendant Humphrey stated Plaintiff's criminal case was of a high-profile nature, that he was "familiar with" Plaintiff's prior incarceration period (1996–2005) and litigation history during that time, that "we" will make sure Plaintiff "can't do that," and that Plaintiff would be in the SMU for at least a year and for as many as five years.  Id. at 12.  Plaintiff maintains his placement in the SMU due to his high-profile case was a pretext for retaliation.  Id. at 13.  Plaintiff contends he filed a classification appeal with Defendant Humphrey on October 18, 2012, which Humphrey denied.  Plaintiff also contends he wrote

Robert Jones (General Counsel for the GDC); Dr. Sharon Lewis (Medical Director for the GDC); Shevondah Fields (Grievance Manager); Lisa Fountain (Grievance Manager); Toris Rozier (Grievance Investigator); James Smith (Grievance Investigator); and Carl Humphrey (GDC Facilities Operations Manager).  Id. at 8–9.  The Court construes Plaintiff's allegations against these Defendants as relating to his placement at GDCP.  Plaintiff does not make any discernible or specific allegations against these Defendants related to his later confinement at GSP, except as otherwise noted.  Accordingly, the Court treats these allegations as GDCP Claims.

Defendant Owens regarding the alleged constitutional violations Plaintiff was being subjected to, but Defendant Owens ignored his letter.  Id.

Plaintiff asserts he arrived at GDCP on October 3, 2012 and was placed in the E-Wing, which is the disciplinary isolation wing of the SMU, even though he was classified for placement in the D-Wing.  Doc. 9 at 11, 12.  Plaintiff states he was moved to the D-Wing on October 16, 2012, but he was placed in a cell without a television, even though having a television is one of the privileges of D-Wing.  Id. at 12.  For a nearly two-month period, Plaintiff asserts he complained to Defendant McMillan about not having a television, and he filed two grievances.  Plaintiff contends Defendant McMillan told him to stop filing grievances and directed Defendant Barber to write a false disciplinary report against Plaintiff for insubordination and making threats.  Id.  Defendant McMillan placed Plaintiff back on the E-Wing on December 17, 2012 based on this disciplinary report, even though Plaintiff had not had a hearing or been found guilty of the charged infractions.  Defendants Nopen and Nash approved this classification decision.  Id.  On this same date, Plaintiff asserts Defendant McMillan directed Defendant Barber to write a second false disciplinary report against Plaintiff for insubordination.  Id. at 13.  Plaintiff appealed his placement in the E-Wing, but Defendant Humphrey denied this appeal, citing the first disciplinary report as the reason supporting Plaintiff's placement in the E-Wing.  Plaintiff maintains he informed Defendants Humphrey and Bishop that he should not be on E-Wing because he was not found guilty of any charged disciplinary infractions, but these two Defendants ignored him.  Id.  Plaintiff states he remained on E-Wing until April 23, 2013, at which time he was placed on F-Wing.  Plaintiff remained on F-Wing until August 15, 2013 and was moved back to D-Wing.  According to Plaintiff, his assignment to E-Wing "added eight (8) months to his time on GDCP/SMU."  Id.

Plaintiff also states his brother sent him $50.00 on October 16, 2012, but the GDC Defendants froze his account without notice or hearing.  Id. at 27.  In addition, Plaintiff asserts

"Defendants" alleged he owed them nearly $2,000.00 for debts Plaintiff accrued prior to 2005.
Id.

Plaintiff contends the GDCP Defendants, in agreement with the Cobb County Defendants, transferred him to Georgia State Prison on April 7, 2014. Doc. 1 at 15. In addition, Plaintiff alleges GDCP Defendants maintain a de facto policy and custom to shave inmates with damaged and unsanitized clippers under the threat and actual use of force and the threat of being subject to disciplinary action. Plaintiff asserts he "was repeatedly forcibly shaven" with unsanitized clippers that were used on other inmates who were infected with hepatitis and HIV while he was housed at GDCP. Id. at 16. Plaintiff contends he filed numerous grievances about this custom, and GDCP Defendant Bishop and GDC Defendants James Smith, Fountain, Fields, Rozier, and Lewis denied these grievances. Id.

**III.    GSP Claims**

Plaintiff alleges several claims related to his period of incarceration at Georgia State Prison (i.e., following his transfer from GDCP on April 7, 2014). Plaintiff asserts these claims against the Georgia Department of Corrections, various individuals affiliated with the Department, and individuals affiliated with Georgia State Prison ("GSP" or "Georgia State Prison"). Plaintiff's GSP Claims concern: (1) the conditions of Plaintiff's confinement at GSP; (2) Plaintiff's cell assignment at GSP; (3) GSP's shaving policies; (4) Defendants' deliberate indifference to Plaintiff's medical needs at GSP; (5) grievances Plaintiff sought to pursue at GSP; (6) Plaintiff's access to religious services at GSP; and (7) Plaintiff's access to the courts while at GSP. Each set of claims is addressed separately.

Plaintiff asserts his GSP Claims against various individuals affiliated with Georgia State Prison. Specifically, Plaintiff names as Defendants: Robert Toole (Warden); Wendall Fowler (Deputy Warden of Security); John Paul (Deputy Warden of Care and Treatment); Ms. Kilgore (Deputy Warden of Administration); Mr. Deloach (Unit Manager); Milton Smith (Chief

Counselor); Muriel Jackson (counselor); Ms. Debbie King (Medical Supervisor); Dean Broome (doctor); Mr. John Doe (Medical Director); Dr. John/Jane Doe (dentist); P. Murphy (dental hygienist); Officer Henry (mailroom staff); Ms. Brown (mailroom staff); Mr. Caravello (physician's assistant); Stephen Nicolou (physician's assistant); William McNunn (nurse practitioner); Sharon Brown (nurse); Ms. Lightsey (nurse); Ms. Crowder (nurse); Ms. Strickland (nurse); Ms. Dobbs (nurse); Ms. Silvers (nurse); Ms. Cowart (nurse); Ms. Brady (nurse); Tiffany Wooten (nurse); Mr. Thurmond (nurse); Major Smith (Chief of Security); Sgt. Salgado; Sgt. Ronnie Shuemake; Taral Todman (CERT Officer); Benjamin Warren (CERT Officer); Aswon Cauley (CERT Officer); and Freddie Davis (CERT Officer).

### A.  Conditions of Confinement Allegations

Plaintiff contends the conditions of his confinement during the time he was housed at GSP were deplorable.  Doc. 1 at 11–12, 15.  According to Plaintiff, he has been subjected to the same restrictive—but worse—conditions that he was subjected to while housed at GDCP.  Plaintiff states GSP has a rodent infestation, which is being ignored, "officers" rarely "run cell clean-out," which means cells are commonly infested with rodent feces, and he has been denied access to medical care and treatment, television, and to the law library and legal materials.  Id. at 15.

### B.  Due Process Allegations

Plaintiff contends he did not have a hearing regarding his placement in segregation/SMU.  He wrote Defendant Paul on April 20, 2014 to request a hearing and to be moved to general population, but Defendant Paul refused to move Plaintiff and did not conduct a hearing.  Id.  Plaintiff also contends Defendant Toole ignored Plaintiff's classification appeal.  Id.

Plaintiff avers he was placed on Tier I, or administrative segregation, upon his arrival at GSP.  Doc. 9 at 15.  However, Defendant Deloach informed Plaintiff he would be assigned to

Tier II disciplinary segregation beginning on July 14, 2014.[9]  Id.  When Plaintiff protested because Tier II is intended for long-term disciplinary segregation and he had no disciplinary reports or sanctions, Defendant Deloach told Plaintiff he could be placed on Tier II because he was transferred from GDCP.  Id. at 15–16.  Plaintiff alleges he wrote letters to Defendants Owens, Toole, Deloach, and Bailey-Dean to request that he not be placed in Tier II.  Plaintiff states he also submitted a classification appeal to Defendant Toole, who denied the appeal.  Id. at 16.

Plaintiff asserts he later spoke with Defendant Fountain about his placement in Tier II while the tactical squad was in Plaintiff's cell.  Plaintiff told Defendant Fountain he was in the SMU at GDCP due to the high-profile nature of his case; in response, Defendant Fountain said she would speak to Defendant Toole.  Id.  Once the tactical squad left his cell, Plaintiff maintains Defendants Toole and Jacobs spoke with him, and Defendant Jacobs said he remembered Plaintiff from his previous period of incarceration (from 1998 to 1999) and that he remembered Plaintiff having a civil trial against GDC officials in October 2007.  Id. at 17.  When Defendant Jacobs informed Plaintiff he would be placed in Phase 3, Tier II because he did not have any disciplinary reports, Plaintiff says he objected because he should not be placed on Tier II at all.  In response, Plaintiff states Defendant Jacobs told him he was placed on Tier II because of his placement in the SMU at GDCP and would be placed in general population if Plaintiff would reduce his legal materials.  Id.  Plaintiff asserts Defendant Jacobs instructed Defendant Toole to ensure Plaintiff had no additional property on Tier II.  Defendant Toole gave Defendant Shuemake this same instruction, and Defendant Shuemake, in turn, gave Defendants Todman and Davis and Officer Cory Osborne this instruction.  Plaintiff contends Defendants Todman and Davis and Officer Osborne took his remaining property—not including his legal work—such as

---

[9]      There are slight discrepancies and some conflation between Plaintiff's original Complaint and his Supplemental Complaint.  However, it does not appear these discrepancies affect Plaintiff's actual allegations.

pens, pencils, and personal hygiene items.  Id.  Plaintiff asserts he wrote letters to Defendants

Toole and Deloach for the return of items he was permitted to have in Tier II, such as his pens,

pencils, personal hygiene items, a cup and bowl, legal books, soft shoes, and braces, and these

two Defendants ignored his letters.  Id. at 19.

Plaintiff maintains Defendant Bailey-Dean placed him on Tier II without procedural due

process protections.  Id. at 18.  While inmates are given appeal forms, Plaintiff states it "is too

late" because the decision has already been made.  Counselors Fred Wilson and Tracy Page gave

Plaintiff an appeal form, which stated Plaintiff had been transferred on April 1, 2014 to

participate in the Tier II program.  However, Plaintiff contends he was transferred on April 7,

2014 due to Judge Thomas Wilson's (the judge who presided over one of Daker's state habeas

corpus petitions) order that Plaintiff be transferred to a facility with law library access, not so

that he could participate in the Tier II program.  Id.; Doc. 1 at 14.  Plaintiff contends he filed his

appeal but did not receive a response.

### C.      Forced Shaving Allegations

Plaintiff asserts there is an SOP in place which requires the barbershops in prisons to not

use broken guards on the clippers, but Georgia State Prison staff has a de facto policy in place to

ignore that SOP.  Plaintiff claims Defendants Warren, Cauley, and Davis forcibly shaved him

using unsanitized clippers on April 10, 2014, and these three Defendants ignored Plaintiff's

request to clean the clippers.  Doc. 1 at 16.

### D.      Deliberate Indifference Allegations

Plaintiff generally alleges he had numerous medical conditions for which he was

previously treated at GDCP, such as chest pains, back pain, knee pain, migraines, dizzy spells,

carpal tunnel syndrome, and indigestion or acid reflux, but he had not been seen by medical for

these conditions since his arrival at GSP in April 2014 until May 19, 2014, the date he filed his

Complaint.  Id. at 17–19.  Plaintiff states he did not have an initial medical intake examination

12

upon his arrival at GSP or at any time prior to the filing of his Complaint.  Id. at 17.  Plaintiff

maintains he submitted numerous sick call requests, all of which have been ignored.

Additionally, Plaintiff asserts he was prescribed medication for indigestion, back and knee pain,

and migraines but has not received this medication at GSP because he has not seen anyone in

medical.  Id.  Moreover, Plaintiff states he had been prescribed at GDCP—without a medical

profile—a brace for his knee and a brace for his wrist but is required to have a medical profile

for these braces and soft shoes at GSP, which he cannot obtain because he has seen no one from

medical; thus, he alleges "many officers" at GSP will not allow him to wear his braces and soft

shoes, causing him to have pain and to have fallen several times.  Id. at 18.

On April 24, 2014, Plaintiff was sent to Augusta State Medical Prison for an orthopedic

appointment that was scheduled while he was at GDCP, and he was prescribed a wrist splint for

each wrist for his carpal tunnel syndrome, yet he has not been issued a profile for these splints.

Id.  Plaintiff asserts "some officers" at GSP refuse to allow him to wear these splints,

exacerbating his carpal tunnel syndrome.  Id.  Plaintiff maintains he spoke with a nurse after he

returned to GSP and told her he had submitted seven medical and two dental requests and had

not seen anyone.  The nurse submitted another sick call request on Plaintiff's behalf, yet the

medical administrator returned it on May 1, 2014 and requested that Plaintiff specify what his

medical complaint was.  Id.  Plaintiff contends he submitted four additional medical requests and

specified his medical needs, but he still has not been seen.  Id.  Plaintiff also contends he wrote

Defendant King (GSP's medical supervisor), Defendant Paul, and Defendant Toole three letters

each regarding the lack of medical care and treatment and still has not been seen by medical

staff.  Id. at 19.

Plaintiff also asserts that some of his teeth are sensitive and painful, and he has not seen a

dental care provider, though Defendant Murphy informed Plaintiff he would see a provider when

an appointment is available.  Id. at 20.  Plaintiff contends he had been treated on previous

occasions with pain medications and a sensitive formula toothpaste.  In addition, he asserts the delay in his dental treatment has caused cavities, toothaches, and increased sensitivity.  Id. Plaintiff also asserts he was not given a toothbrush upon his arrival at GSP, despite having asked an unidentified "Defendant" for one.  Id.

Plaintiff claims he was not being seen for his serious medical needs and went on a hunger strike in an effort to be seen in medical on May 19, 2014.  Doc. 9 at 4–6.  Plaintiff states he wrote letters to Defendants Toole, Paul, and King announcing his hunger strike as a way to be seen in medical, yet none of these Defendants responded or took any action in response to his letters.  Id. at 5.  Plaintiff contends he is to be assessed by a medical care provider twice a week and weighed daily while on a hunger strike.  Id. at 4.  Over a three-day period, Plaintiff alleges he submitted three sick call requests to Defendants Salgado and Silvers, but he still was not seen in medical.  Id. at 5.  On May 21, 2014, Lieutenant Carter took Plaintiff to medical, at which time Plaintiff told Defendants Lightsey and Sharon Brown he was on a hunger strike because his numerous sick call requests were being ignored.  In response, Defendant Sharon Brown said she had not received any of these requests, to which Plaintiff replied he had given the majority of his requests to Defendants Strickland and Dobbs.  Id.  Plaintiff contends he gave Defendants Sharon Brown and Lightsey more requests, who still refused to allow Plaintiff to see anyone or schedule him for an appointment.  The next day, Plaintiff asserts Defendants Sharon Brown and Lightsey refused to allow Plaintiff to see a medical care provider or to weigh him.  Plaintiff also asserts he passed out that same evening due to his hunger strike, yet Defendant Crowder would not treat him.  Id. at 6.

Plaintiff asserts he was seen in medical on May 23, 2014 and ended his hunger strike, but Defendant Caravello refused to treat Plaintiff's back condition, despite having acknowledged the delays in treatment at GSP.  Id.  Plaintiff maintains Defendant Caravello said he would schedule Plaintiff for lab work on May 27 and a follow-up appointment for May 29, 2014, but Defendant

Caravello did neither.  In fact, Plaintiff contends he has not seen Defendant Caravello since May 23, 2014.  Id.  Plaintiff states he saw Defendant McNunn, a nurse practitioner, on May 27, 2014 as a follow-up on his consult from Augusta State Medical Prison, and Plaintiff told Defendant McNunn about his other medical issues and that he had submitted medical requests, all of which were ignored.  Id. at 7.  Defendant McNunn refused to examine or treat Plaintiff for his other conditions and would only see Plaintiff about his consult appointment.  Defendant McNunn advised Plaintiff to file a grievance, to which Plaintiff responded he had, but his grievances were not being processed.  Plaintiff contends Defendant McNunn was going to put in a consult for Plaintiff to have carpal tunnel surgery and would prescribe pain medication for Plaintiff until he could be seen by medical, but Plaintiff contends Defendant McNunn lied and did neither.  Id. Thereafter, Plaintiff contends he submitted 11 additional sick call requests to Defendants Strickland, Dobbs, Thurmond, Lightsey, Sharon Brown, and King to be seen in medical and wrote letters to Defendants King, Lightsey, and Sharon Brown, all of which were ignored.  Id.

On June 4, 2014, Plaintiff spoke with Defendant Milton Smith and Defendant Nicolou about how his sick call requests were being ignored.  Defendant Milton Smith said he would investigate the matter but did not.  Id. at 8.  While Defendant Nicolou did issue Plaintiff medical profiles for soft shoes and his wrist and knee braces on this same date, Plaintiff complained to Defendant Nicolou two weeks later that he was not being seen in medical, and Defendant Nicolou refused to act.  Since that time, Plaintiff contends he submitted nine medical requests to Defendants Dobbs, Cowart, Brady, Wooten, and Thurmond, and these Defendants have given Plaintiff conflicting reasons as to why he has not been seen in medical (e.g., because Defendants Lightsey and Sharon Brown were not scheduling these requests and because Defendant Major Smith would not provide enough officers to escort prisoners in lockdown to medical).  Id. Plaintiff asserts he was placed in Tier II on July 16, 2014, at which time his braces and soft shoes were confiscated, leading to increased pain.  Plaintiff also contends he has been denied towels,

socks, and washcloths, resulting in skin infections and open sores, as a result of a statewide policy Defendants Owens, Ward, Jacobs, and Bailey-Dean adopted to discontinue medical profiles in Tier II.  Id. at 9; Doc. 9 at 18, 19–20.

### E.   Grievance Allegations

On April 18, 2014, Plaintiff filed an emergency grievance regarding the use of unsanitized clippers, but Defendant Milton Smith would not process this grievance, and Defendant Jackson returned it as unprocessed to Plaintiff on May 6, 2014.  Doc. 1 at 16. Moreover, Plaintiff contends he saw Defendant Jackson, who had rejected three grievances Plaintiff filed, on May 6, 2014, and tried to file an emergency grievance regarding the lack of medical care and treatment.  Defendant Jackson would not accept the grievance, Plaintiff asserts, because he already had two pending grievances from GDCP.  Id. at 19.  When Plaintiff saw Defendant Jackson three days later, he told Plaintiff he conveyed Plaintiff's concerns regarding the lack of care and treatment to Ms. King, but Defendant Jackson once again would not allow Plaintiff to file an emergency grievance.  Plaintiff alleges he was not given any blank grievance forms at GSP, even though he asked Defendant Jackson for them.  Id.

Plaintiff also states he has been denied access to the grievance procedure since his transfer to GSP.  Specifically, Plaintiff contends, if he files two grievances under the applicable SOP, he is "effectively denied all access to the [grievance] procedure" for at least 40 days until the grievances are answered, and all other grievances are rejected.  Id. at 23.  Thus, Plaintiff contends the SOP forces inmates to withdraw a pending grievance in order to file another grievance, which in turn forces the inmate to choose between pursuing his rights under one grievance or another grievance.  Id.  Plaintiff also alleges he asked his counselor, Defendant Jackson, on several occasions for grievance forms, but Defendant Jackson told him each time he had to get the forms from a dorm officer.  Id. at 24.  However, when Plaintiff has requested grievance forms from officers, they tell him they do not have these forms and that inmates are to

16

get these forms from their counselors.  Plaintiff asserts Defendant Jackson returned three

grievances to him unprocessed on May 6, 2014, and that Defendant Milton Smith rejected these

grievances because Plaintiff already had two pending grievances.  Id.  When he asked for appeal

forms, Defendant Jackson would not provide them to Plaintiff and told Plaintiff he could not

appeal rejected grievances, only those that have been processed and denied.

### F.      Religion Allegations

Plaintiff avers "all Defendants" have denied him access to the Jumu'ah prayer services

and Ta'lim congregational services since his incarceration period beginning on October 3, 2012

through the date of his Complaint.  Id. at 21.  According to Plaintiff, the denial of access to the

Ta'lim service violates the injunctions the Northern District of Georgia court issued in Daker v.

Wetherington, No. 1:01-cv-3257 and Abdul-Quddus v. Wetherington, No. 1:07-cv-0108.  Id.

### G.      Access to Courts Allegations

Plaintiff maintains the GDC has a custom of rejecting incoming prisoner mail, either by

returning the mail to the sender without giving him an opportunity to appeal or otherwise protest

the return or by disposing of the mail without notifying the sender.  Id. at 22.  Plaintiff states this

custom is followed at both GDCP and GSP.  At GSP, Plaintiff contends those Defendants also

have a custom of removing incoming mail from the envelope and throwing away the envelope,

which denies prisoners the ability to know information about the mail (such as sender, tracking

number, etc.), and he also complains of mail being given to the wrong prisoner.  Id.

Additionally, Plaintiff contends Defendants at GSP maintain a custom of limiting

"exceptional mailing" to $5.00, which is not enforced consistently and which will not allow for

the mailing of one 10" x 13" envelope containing documents given the rise in mailing costs.

Doc. 9 at 24.  Plaintiff avers "[a]ll Defendants" have a policy and custom in place to not provide

him and all other inmates with access to photocopies in the absence of a court order.  Id. at 21.

Plaintiff maintains this custom and policy has caused actual injury to his pursuit of post-conviction relief.  Id. at 21–23.

Finally, Plaintiff contends the GDC has an SOP in place which allows inmates to have up to eight stamps per week—five for legal mail and three for non-legal mail.  In each of his previous places of incarceration, Plaintiff submits he was permitted to use those eight stamps essentially as he needed, whereas at GSP, this SOP is not followed.  Id. at 25.  Instead, Plaintiff avers Defendants Toole, Kilgore, Brown, and Henry have a custom that the three non-legal stamps cannot be used to mail legal items.  Id.  Plaintiff contends this custom forces inmates to make difficult choices, such as risking having legal documents rejected as untimely because inmates are forced to wait until they have enough legal mail postage to send these documents.  Id. at 26.  Plaintiff avers he spoke with Defendant Kilgore on April 23, 2014 about the issues relating to the mailing custom, but she refused to change this custom.  Id. at 27.  Plaintiff claims this custom has caused or will cause actual injury to several of his cases.  Id.

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983.  Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress.  Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous, malicious, or fails to state a claim upon which relief may be granted.  28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii).  Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity.  Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or

which seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

When reviewing a complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances).  Further, a claim is frivolous under § 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'"  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010).  Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.  Twombly, 550 U.S. at 555.  Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed.  Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v.

19

<u>Harris</u>, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent

standard than pleadings drafted by attorneys . . . ." (quoting <u>Hughes v. Lott</u>, 350 F.3d 1157, 1160

(11th Cir. 2003))).  However, Plaintiff's unrepresented status will not excuse mistakes regarding

procedural rules.  <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993) ("We have never suggested

that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by

those who proceed without counsel.").

## DISCUSSION

### I.      Cobb County Claims and GDCP Claims

Plaintiff's Cobb County Claims and GDCP Claims are unrelated to the claims arising

from Plaintiff's incarceration at GSP.  The Court, thus, should find that these claims are due to

be **SEVERED** and **TRANSFERRED**, not only because they are presently misjoined, but

because the Southern District is not the proper venue to entertain these claims.  Fed. R. Civ. P.

21; <u>Daker v. Dozier</u>, No. 5:17-CV-0025, 2017 WL 3037420, at *6–7 (M.D. Ga. July 18, 2017).

To be clear, Plaintiff's Cobb County Claims should be severed and transferred to the Northern

District of Georgia, and his GDCP claims should be severed and transferred to the Middle

District of Georgia, as the events giving rise to those claims arose in these respective Districts.

Accordingly, I **RECOMMEND** Defendants Head, Evans, Staley, Humphrey, Chatman, Tillman,

Jones, Lewis, Fields, Bishop, McMillan, Nopen, Nash, Medlock, and Barber be **TERMINATED**

as named Defendants in this action.  The Court offers no opinion of the relative merits of these

claims.

### II.     Defendants Against whom no GSP Claim is Asserted

Plaintiff names the Georgia Department of Corrections ("GDC") and various individuals

as Defendants but makes no factual allegations pertaining to these named Defendants and his

incarceration at GSP.  As to some of these Defendants, the allegations only concern actions at

institutions other that GSP, and, for others, Plaintiff fails to allege any facts supporting any claim

whatsoever.  As explained, to the extent Plaintiff attempted to assert any GSP Claim against any of these Defendants, such a claim should be dismissed.

A.      **GSP Claims Against the GDC**

While local governments qualify as "persons" under § 1983, state agencies, penal institutions, and private corporations which contract with states to operate penal institutions are generally not considered legal entities subject to suit.  Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit . . . .") (citations omitted); Lawal v. Fowler, 196 F. App'x 765, 768 (11th Cir. 2006) (analyzing Georgia law and concluding the same); Williams v. Chatham Cty. Sheriff's Complex, Case No. 4:07-cv-68, 2007 WL 2345243 (S.D. Ga. August 14, 2007) ("The county jail, however, has no independent legal identity and therefore is not an entity that is subject to suit under Section 1983.") (citations omitted); Shelby v. Atlanta, 578 F. Supp. 1368, 1370 (N.D. Ga. 1984) (dismissing the Atlanta Police Department as an improper § 1983 defendant).  Therefore, Plaintiff's § 1983 claims against GDC are due to be dismissed.

In addition, Plaintiff's claims against the GDC are subject to dismissal under the Eleventh Amendment to the United States Constitution.  Stevens v. Gay, 846 F.2d 113, 115 (11th Cir. 1989) ("The Eleventh Amendment bars this action against the Georgia Department of Corrections and Board of Corrections." (citing Alabama v. Pugh, 483 U.S. 781, 782 (1978))); see also Leonard v. Dep't of Corr., 782 F. App'x 892, 894 (11th Cir. 2007) (noting the Eleventh Amendment bars suit against the Georgia Department of Corrections).

In this case, Plaintiff cannot sustain any putative claims against the GDC, as this is not an entity subject to suit under § 1983.  In addition, any claims against the GDC are barred by the Eleventh Amendment.  Thus, the Court should **DISMISS** Plaintiff's claims against the GDC.

**B.      GSP Claims Against Defendants Fountain, Major Smith, Rozier, James Smith, Fowler, Broome, Mr. John Doe, and Dr. John/Jane Doe**

In order to state a claim for relief under § 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law." Id.

For several individuals identified as named Defendants in Plaintiff's Complaint, Plaintiff fails to include any material factual allegations, makes only passing references, or asserts only facts unrelated to his GSP Claims. For example, Plaintiff only mentions having spoken to Defendant Fountain on one occasion about his placement in Tier II, and Defendant Fountain said she would speak to Defendant Toole. Doc. 9 at 16. He alleges nothing more as to Defendant Fountain. Plaintiff asserts he was told Major Smith was not providing enough officers to escort prisoners on lockdown to medical, but he does not allege that this practice affected him or that Major Smith knew of any constitutional violations and ignored them. Id. at 8. Similarly, Plaintiff does not make any material factual allegation connected to his GSP Claims against Defendants Rozier, James Smith, Fowler, Broome, Mr. John Doe, and Dr. John/Jane Doe. Plaintiff's assertions that "all Defendants" or "GSP Defendants" violated his rights in any way simply are not enough to sustain a viable claim against these Defendants based on any claims arising at GSP. Thus, the Court should **DISMISS** Plaintiff's GSP Claims against Defendants Fountain, Major Smith, Rozier, James Smith, Fowler, and Broome based on Plaintiff's failure to meet the most basic pleading requirement. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Iqbal, 556 U.S. at 678; Hale, 50 F.3d at 1582.

### III.    GSP Claims–Deliberate Indifference

#### A.    Serious Medical Needs

The standard for cruel and unusual punishment in the medical care context, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

Thus, in order to prove a deliberate indifference to medical care claim, similar to any other deliberate indifference claim, a prisoner must: (1) "satisfy the objective component by showing that [he] had a serious medical need"; (2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and (3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). As to the first component, a medical need is serious if it "'has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187). Under the second, subjective component, the Eleventh Circuit Court of Appeals has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Thus, the subjective component requires an inmate to prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016). "Conduct that is more

than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011).

Here, Plaintiff contends he put in numerous sick call requests while he was housed at GSP, and Defendants Salgado, Silvers, Lightsey, Sharon Brown, Crowder, Caravello, McNunn, Nicolou, Milton Smith, Strickland, Dobbs, King, Thurmond, Cowart, Brady, and Wooten ignored these requests. Specifically, Plaintiff contends he suffers from chest pains, back and knee pain, migraines, dizzy spells, carpal tunnel syndrome, and indigestion and was not able to obtain treatment for any of these conditions. Doc. 1 at 17–19. Plaintiff also asserts Defendants Toole, Paul, and King ignored three letters he wrote regarding his hunger strike due to not being seen in medical, and these three Defendants ignored him.

In addition, Plaintiff alleges Defendants Owens, Ward, Jacobs, and Bailey-Dean with the GDC adopted the statewide policy to discontinue medical profiles in Tier II, which led to the exacerbation of certain conditions. Id. at 9; Doc. 9 at 18–20. Moreover, Plaintiff contends Defendants Shuemake, Todman, and Davis confiscated his braces. Doc. 9 at 19. Plaintiff ostensibly maintains Defendant Murphy knew of the dental problems he was experiencing and ignored those problems. Thus, Plaintiff sets forth plausible allegations that he suffers from serious medical needs and those needs were deliberately ignored. Plaintiff deliberate indifference to serious medical needs against Defendants King, Paul, Toole, Salgado, Lightsey, Sharon Brown, Strickland, Dobbs, Crowder, Caravello, McNunn, Nicolou, Silvers, Cowart, Brady, Wooten, Thurmond, Milton Smith, Owens, Ward, Jacobs, Bailey-Dean, Murphy, Shuemake, Todman, and Davis will proceed.

## B. Health and Safety

Plaintiff's contentions that certain Defendants were deliberately indifferent to a risk to Plaintiff's health and safety implicate the Eighth Amendment's proscription against cruel and

unusual punishment.  That proscription imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates.  Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099–1100 (11th Cir. 2014).

To show an Eighth Amendment violation, a plaintiff must "allege facts sufficient to show '(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'"  Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (quoting Hale, 50 F.3d at 1582).  The Court assesses the first element—a substantial risk of serious harm—under an objective standard.  Caldwell, 748 F.3d at 1099.  The objective component requires a plaintiff to show that the condition he complains of is sufficiently serious to violate the Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 8 (1992); Chandler v. Crosby, 379 F.3d 1278, 1289–90 (11th Cir. 2004).

The second element—defendant's deliberate indifference to a substantial risk of serious harm—has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).[10]  The "subjective knowledge of a risk of serious harm" component requires a defendant to have "actual knowledge that an inmate faced a substantial risk of serious harm[.]"  Caldwell, 748 F.3d at 1099.  Thus, "[t]o be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'"  Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010)

---

[10]     Eleventh Circuit case law on whether a claim of deliberate indifference requires "more than *gross* negligence" or "more than *mere* negligence" is contradictory.  Compare Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007), with Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011).  In Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016), the Eleventh Circuit found "more than mere negligence" to be the appropriate standard.  841 F.3d at 1223 n.2.  As the Eleventh Circuit explicitly addressed this issue in Melton, this Court will apply the "more than mere negligence" standard.

(quoting <u>Purcell ex rel. Estate of Morgan v. Toombs County</u>, 400 F.3d 1313, 1319–20 (11th Cir. 2005)).  "[S]imple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights."  <u>Id.</u> (quoting <u>Williams v. Bennett</u>, 689 F.2d 1370, 1380 (11th Cir. 1982)).

Plaintiff alleges that Defendants Warren, Cauley, and Davis forcibly shaved him on April 10, 2014 with unsanitary clippers—which could expose Plaintiff to several diseases—and ignored Plaintiff's request to be shaved with sanitized clippers.  Plaintiff's allegations arguably set forth a deliberate indifference claim against Defendants Warren, Cauley, and Davis.[11]  In addition, Plaintiff's contention that the general conditions at GSP were deplorable arguably set forth a colorable claim for relief under the Eighth Amendment.  However, Plaintiff must identify those Defendants he claims are responsible for the general conditions at GSP.  The Court **DIRECTS** Plaintiff to do so within 21 days of this Order.  Failure to comply may result in dismissal of this claim.

## IV.    GSP Claims–Access to Courts

Plaintiff states certain Defendants' actions have denied him access to the court.  "Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment."  <u>Chappell v. Rich</u>, 340 F.3d 1279, 1282 (11th Cir. 2003) (citing <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 n.12 (2002)).  However, to bring an access to courts claim, an inmate must establish that he suffered an actual injury.  In interpreting the actual injury requirement, the Eleventh Circuit stated:

> The actual injury which the inmate must demonstrate is an injury to the right asserted, i.e. the right of access.  Thus, the . . . official's actions which allegedly

---

[11]    The Court notes Plaintiff's assertion that all Defendants named in the GSP Claims have a de facto policy in place to ignore the applicable SOP requiring the barbershops not use unsanitized or broken clippers.  Doc. 1 at 16.  However, even at this preliminary stage, Plaintiff does not set forth facts sufficient to allow service against "all Defendants."  Instead, Plaintiff must make specific identifications of Defendants he claims are responsible for this de facto policy.

> infringed on an inmate's right of access to the courts must have frustrated or
> impeded the inmate's efforts to pursue a nonfrivolous legal claim.  See Lewis [v.
> Casey,] 518 U.S. [343, 352–54 (1996)].  Further, the legal claim must be an
> appeal from a conviction for which the inmate was incarcerated, a habeas petition
> or a civil rights action.  See id. at 352–57.

Bass v. Singletary, 143 F.3d 1442, 1445 (11th Cir. 1998).  "[A]n inmate cannot establish relevant

actual injury simply by establishing that his prison's law library or legal assistance program is

subpar in some theoretical sense."  Lewis, 518 U.S. at 351.  Instead, the inmate must show that a

nonfrivolous, arguable claim he wished to bring has been lost or rejected due to the deficiency or

that the deficiency is currently preventing his presentation of such a claim.  Sanchez v. Stephens,

689 F. App'x 797, 799 (5th Cir. 2017) (citing Harbury, 536 U.S. at 415; Lewis, 518 U.S. at 353

& n.3, 356).  "The underlying claim must be described well enough to apply the frivolity test and

to show that its "'arguable' nature . . . is more than hope."  Id. (quoting Harbury, 536 U.S. at

416).  "[I]n order to assert a claim arising from the denial of meaningful access to the courts, an

inmate must first establish an actual injury[, which he may do] by demonstrating that [his] efforts

to pursue a nonfrivolous claim were frustrated or impeded by a deficiency in the prison library or

in a legal assistance program or by an official's action."  Id. (citation omitted).  But only the

prosecution of a direct appeal of a conviction, a habeas corpus petition, or a civil rights suit are

protected by the constitutional right to access the courts.  See Bass, 143 F.3d at 1445; Elmore v.

Cooper, 476 F. App'x 700, 702 (11th Cir. 2012).  Each factual basis of Plaintiff's access to

courts claims are addressed below.

### A.    Postage/Mail

In Bounds v. Smith, 430 U.S. 817, 824–25 (1977), the United States Supreme Court held

that it "is indisputable that indigent inmates must be provided at state expense with paper and

pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail

them."  The Tenth Circuit Court of Appeals has interpreted Bounds not to require states "to pay

the postage on every item of legal mail each and every prisoner wishes to send."  Twyman v.

Crisp, 584 F.2d 352, 359 (10th Cir. 1978).  The Twyman court determined that the rights of prisoners must be balanced with budgetary constraints.  It did not establish the minimum requirements a state must meet to provide indigent prisoners with adequate access to courts but focused instead on whether the individual plaintiff before it had been denied access.  584 F.2d at 359.  The constitutional right to access to the courts entitles indigent prisoners to some free stamps as noted in Bounds but not unlimited free postage as is urged by the plaintiff.  Hoppins v. Wallace, 751 F.2d 1161, 1162 (11th Cir. 1985); Elmore, 476 F. App'x at 702.

At this stage, Plaintiff arguably sets forth sufficient allegations to state a plausible access to the courts claim against Defendants Toole, Kilgore, Brown, and Henry based on the custom or policy that limits Plaintiff's ability to use available postage to send legal items.  Plaintiff maintains this custom caused or will cause actual injury to several of his non-frivolous cases.  Doc. 1 at 26–27.  Further, Plaintiff maintains the policies at Georgia State Prison regarding the rejection or incoming mail and exceptional mailings caused or will cause actual injury to his pursuit of several non-frivolous cases.  Id. at 18.

### B.    Photocopies

Plaintiff may be able to sustain a plausible access to the courts claim based on the denial of access to photocopies, which has led to actual injury in non-frivolous actions, against certain Defendants.  Daker v. Owens, Civil Action No. 5:12-cv-459, 2013 WL 3289103, at *2 & n.7 (M.D. Ga. June 28, 2013) (noting there are some circumstances where prison officials may be required to provide photocopying services to preserve an inmate's access to the courts and citing Daker v. Ferrero, No. 1:03-cv-02481 (N.D. Ga. Nov. 24, 2004), ECF No. 39 (granting plaintiff's motion to compel copies and ordering defendants to provide plaintiff with copies of all court-submitted materials for filing and service and plaintiff's retention for his records and ordering that plaintiff's account be debited or frozen at the rate of 10 cents a page)).  However, the Court will not permit service of Plaintiff's Complaint on "all Defendants," doc. 9 at 21, based on his

assertions that all Defendants have a policy and custom in place to deny him access to photocopying services in the absence of a court order.  Instead, the Court **DIRECTS** Plaintiff to notify the Court within 21 days of this Order the specific Defendants he contends are responsible for this custom and policy at GSP.  Failure to comply may result in dismissal of this claim.

## V.     GSP Claims–Due Process (Placement in Tier II)

### A.     Substantive Due Process

"A violation of substantive due process occurs when an individual's fundamental rights are infringed, regardless of the fairness of the procedure."  Waldman v. Conway, 871 F.3d 1283, 1292 (11th Cir. 2017) (citing McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994)).  Even where a fundamental liberty interest does not exist, "substantive due process nonetheless protects against the arbitrary and oppressive exercise of government power."  Waldman, 871 F.3d at 1292.  Unlike procedural due process, substantive due process "provides heightened protection against government interference with certain fundamental rights[.]"  Washington v. Glucksberg, 521 U.S. 702, 718–19 (1997) (internal citations omitted).  If a plaintiff has a fundamental right, then the government may not infringe on that right unless it proves that the limitation is "narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  However, substantive due process claims do not encompass other "fundamental" rights which are already explicitly protected by another Amendment.  Albright v. Oliver, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (citation and internal quotation marks omitted)).

Here, Plaintiff essentially claims he has a fundamental right to be free from placement in administrative segregation or Tier II.  This right is not already enumerated within the Supreme Court's "substantive-due-process line of cases."  Kerry v. Din, 135 S. Ct. 2128, 2135 (2015).

Furthermore, the Supreme Court's decisions "have consistently refused to recognize more than the most basic liberty interests in prisoners." Hewitt v. Helms, 459 U.S. 460, 467 (1983), *receded from on other grounds by* Sandin v. Conner, 515 U.S. 472 (1995). These interests do not include freedom from more adverse conditions of confinement. Meachum v. Fano, 427 U.S. 215, 224–25 (1976). Thus, there is no "objectively, deeply rooted" history and practice in this Nation to be free from segregation or even a segregation with more adverse conditions, and thus, no fundamental liberty right. See Glucksberg, 521 U.S. at 720–21 (internal quotations and citations omitted). Accordingly, Plaintiff fails to state a proper substantive due process claim. Thus, the Court should **DISMISS** Plaintiff's substantive due process claim.

### B. Procedural Due Process

A § 1983 action alleging a procedural due process violation requires proof of three elements: "deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally-inadequate process." Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). The Eleventh Circuit has identified two situations in which a prisoner—already deprived of liberty in the traditional sense—can be further deprived of liberty such that procedural due process protections are required: (1) when there is a "change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court[]"; and (2) when the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Kirby v. Siegelman, 195 F.3d 1285, 1291 (11th Cir. 1999) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

Plaintiff alleges that the conditions of confinement in Tier II impose an atypical and significant hardship on him in relation to living in general population. Specifically, Plaintiff alleges he was not allowed to have any property while on Tier II, including personal hygiene

30

items, his soft shoes and braces (medically-prescribed devices), a cup and bowl, pens, and

pencils.  Doc. 1 at 17–18.  At this stage of litigation, Plaintiff arguably sets forth a procedural

due process claim against Defendants Deloach, Owens, Toole, Bailey-Dean, and Jacobs.

## VI.     GSP Claims–Religious Exercise

### A.     RLUIPA Claims

The RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a
> person residing in or confined to an institution, as defined in section 1997
> of [Title 42], even if the burden results from a rule of general applicability, unless
> the government demonstrates that imposition of the burden on that person-
>
>> (1) is in furtherance of a compelling government interest; and
>
>> (2) is the least restrictive means of furthering that compelling government
>> interest.

42 U.S.C. § 2000cc-1(a).  A plaintiff bears "the initial burden of proving" a policy or action

"implicates his religious exercise."  Holt v. Hobbs, 135 S. Ct. 853, 862 (2015).  The RLUIPA

protects "any exercise of religion, whether or not compelled by, or central to, a system of

religious belief[.]"  42 U.S.C. § 2000cc-5(7)(A).  A plaintiff also has the burden of establishing

the policy or action "substantially burden[s an] exercise of religion."  Holt, 135 S. Ct. at 862.

Plaintiff has plausibly alleged that his religious rights have been violated.  According to

Plaintiff, the denial of prayer and congregational services creates a substantial burden on his

religious beliefs and violates injunctions the District Court for the Northern District of Georgia

has imposed.  Doc. 1 at 20.  The Court must accept such assertions as true in conducting its

frivolity review.  Additionally, at this stage, the Court is not able to weigh whether the decision

regarding Plaintiff's access to prayer and congregational services is the least restrictive means to

further a compelling government interest.

However, Plaintiff is limited to seeking injunctive relief under the RLUIPA.  The

RLUIPA creates "an express private cause of action" when prison officials place "restrictions on

the religious exercise of institutionalized persons." Sossamon v. Texas, 563 U.S. 277, 282

(2011); Haight v. Thompson, 763 F.3d 554, 558 (6th Cir. 2014) (The RLUIPA "created a private

cause of action that empowers inmates to obtain 'appropriate relief' from those who violate the

statute[.]" (quoting 42 U.S.C. § 2000cc-2(a))).  The RLUIPA protects "any exercise of religion,

whether or not compelled by, or central to, a system of religious belief[.]"  42 U.S.C. § 2000cc-

5(7)(A).  Under the RLUIPA, prisons cannot substantially burden a prisoner's religious exercise,

even if the burden results from a rule of general applicability, unless "the government

demonstrates that the burden 'is in furtherance of a compelling governmental interest' and 'is the

least restrictive means of furthering' that interest." Sossamon, 563 U.S. at 281 (quoting §

2000cc-1(a)); Benning v. Georgia, 391 F.3d 1299, 1306 (11th Cir. 2004).  When a prison policy

or practice substantially burdens an inmate's religious practice, the RLUIPA requires the prison

to demonstrate the policy or practice "serves a compelling interest, such as prison safety, and the

challenged rule is the least restrictive means of serving that interest."  Benning, 391 F.3d at 1312.

The RLUIPA plaintiff bears "the initial burden of proving" a policy or action "implicates his

religious exercise" and that the challenged policy or practice "substantially burdens" that

exercise of religion.  Holt, 135 S. Ct. at 862.

     Individuals "may assert a violation of [the RLUIPA] as a claim or defense in a judicial

proceeding and obtain appropriate relief against a government."  42 U.S.C. § 2000cc-2.  Though

the phrase "appropriate relief" seems broad at first glance, plaintiffs cannot sustain an RLUIPA

action for money damages against official or individual capacity defendants but may only bring

claims for equitable relief.  Sossamon, 563 U.S. at 277; Smith v. Allen, 502 F.3d 1255, 1255

(11th Cir. 2007), abrogated on other grounds by Sossamon, 563 U.S. at 277; James v. Taylor,

No. 5:15-cv-266, 2016 WL 1696211, at *2 (M.D. Ga. Mar. 22, 2016) ("Binding Supreme Court

and Eleventh Circuit case law prevents Plaintiff from obtaining monetary damages under

RLUIPA."); see also Davila v. Marshall, 649 F. App'x 977, 980 (11th Cir. 2016) (The "RLUIPA

does not authorize claims for monetary damages against prison officials in their individual

capacities."); Gardner v. Riska, 444 F. App'x 353, 355–56 (11th Cir. 2011) (The "RLUIPA

creates an express private cause of action for injunctive and declaratory relief against the

government . . . .").

Even though injunctive relief under the RLUIPA would ordinarily be available to

Plaintiff, in this case, it is not.  Plaintiff is currently housed at Valdosta State Prison in Valdosta,

Georgia, and, thus, is no longer housed at Georgia State Prison.  Consequently, Plaintiff's claims

for injunctive relief are now moot.  Daker v. Warren, 660 F. App'x 737, 747 (11th Cir. 2016)

(quoting Smith, 502 F.3d at 1267, for the proposition that "as a general matter, . . . 'a transfer . . .

of a prisoner from prison will moot that prisoner's claims [under the RLUIPA] for injunctive and

declaratory relief.'").

For these reasons, the Court should **DISMISS** Plaintiff's claims under the RLUIPA.

**B.      Free Exercise Claims**

The Free Exercise Clause of the First Amendment "requires government respect for, and

noninterference with, the religious beliefs and practices of our Nation's people."  Cutter v.

Wilkinson, 544 U.S. 709, 719 (2005).  "To establish a violation of his right to free exercise," a

plaintiff "must first establish that a state actor imposed a 'substantial burden' on his practice of

religion."  Wilkinson v. GEO Grp., Inc., No. 14-10215, 2015 WL 1526642, at *2 (11th Cir. Apr.

7, 2015) (citing Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater, 2 F.3d 1514,

1549 (11th Cir. 1993)).  To prove that his religious exercise was substantially burdened, a

plaintiff "must present evidence that he was coerced to perform conduct that his religion forbids

or prevented from performing conduct that his religion requires."  Id.  The defendants can then

support their conduct on the ground that they applied a "neutral law of general applicability[.]"

Emp't Div., Dep't of Human Res. of Or. v. Smith, 494 U.S. 872, 879 (1990).

Prisoners retain their First Amendment rights, including rights under the free exercise of religion clause.  However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Brunskill v. Boyd, 141 F. App'x 771, 774 (11th Cir. 2005) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)).  "In the prison context, the state actor can defend the action if it is 'reasonably related to legitimate penological interests.'" Wilkinson, 2015 WL 1526642, at *2 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).  Put succinctly, "[i]n a prison setting, to demonstrate a free exercise violation, a plaintiff must show that prison officials administered or implemented a policy or regulation, not reasonably related to any legitimate penological interest or security measure, which substantially burdens and significantly interferes with the practice of his religion or restricts his free exercise of a sincerely held religious belief." Hosey-Bey v. Williams, No. 2:12-CV-959, 2015 WL 4988388, at *6 (M.D. Ala. Aug. 19, 2015).

Plaintiff's allegation that Defendants denied him access to prayer and congregational services sets forth a plausible free exercise claim.  Again, at this stage, the Court must accept this claim as true.  The Court does not have the benefit of any legitimate penological interests that Defendants may offer to support this decision.  Therefore, Plaintiff's free exercise claim will survive frivolity review.  However, while Plaintiff arguably sets forth a plausible free exercise claim against certain Defendants, the Court will not permit the service of Plaintiff's Complaint and Supplemental Complaint against "all Defendants." Doc. 1 at 21.  Instead, the Court **DIRECTS** Plaintiff to identify which of the named Defendants he contends denied him access to these religious services while he was housed in GSP in 2014 within 21 days of this Order. Plaintiff's failure to specify these Defendants may result in the dismissal of his free exercise claims.

## VII.    GSP Claims–Excessive Force

The Eighth Amendment's proscription governs the amount of force that prison officials are entitled to use against inmates.  Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999).  An excessive force claim has two requisite parts: an objective and a subjective component.  Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994).  In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious."  Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline."  Whitley v. Albers, 475 U.S. 312, 320–21 (1986).  In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response.  Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

Plaintiff arguably sets forth an excessive force claim against Defendants Warren, Cauley, and Davis based on his assertion these three Defendants forcibly shaved him on April 10, 2014.

## VIII.    GSP Claims–Retaliation

It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement.  O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011).  It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints.  Id. (quoting Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citation and punctuation omitted)).  "To

establish a First Amendment retaliation claim, a prisoner need not allege the violation of an additional separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech." Id. "To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Smith, 532 F.3d at 1276 (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

Here, Defendants Toole and Jacobs spoke to Plaintiff after his transfer to Tier II in 2014, and Defendant Jacobs said he remembered Plaintiff from his previous period of incarceration, which had ended nine years earlier, and from Plaintiff's civil trial against GDC officials in 2007. Doc. 9 at 17. Plaintiff also contends he spoke to Defendant Jacobs about his placement on Tier II. Plaintiff asserts Defendant Jacobs then instructed Defendant Toole that Plaintiff was not to have any additional property while he was on Tier II, and Defendant Toole gave Defendant Shuemake the same instruction. Defendant Shuemake gave Defendants Todman and Davis and Officer Osborne the same instruction, and Defendants Todman and Davis and Officer Osborne took Plaintiff's remaining property, except for his legal work. Id.

Plaintiff fails to set forth a plausible retaliation claim. There is too much of a temporal gap to establish a sufficient causal connection between the exercise of Plaintiff's protected activity during his previous period of incarceration and his trial in 2007 and retaliatory activity that may have occurred in 2014. Jackson v. Porter, No. CV209-120, 2012 WL 776264, at *1 (S.D. Ga. Mar. 7, 2012) (finding gap of more than a year between the protected activity and alleged retaliatory action insufficient to establish a causal connection) (citing Bailey v. Hughes, No. 1:10-cv-689, 2011 WL 4542721, at *19 (M.D. Ala. Sept. 30, 2011) (a three-year gap between the protected activity and adverse action too great to establish causal connection); Sweet

v. Boyd, No. 407-CV-00484, 2010 WL 940360, at *1 (N.D. Fla. Mar. 12, 2010) (seven-month

gap between protected activity and adverse action insufficient to establish causal link between

the two events); and Smith v. Bell, No. 06-60750, 2008 WL 868253, at *2 (S.D. Fla. Mar. 31,

2008) (eighteen-month period between protected activity and adverse action does not meet the

causal connection requirement)).  In addition, Plaintiff's retaliation claim likely cannot stand on

the basis of any allegation that he verbally complained about or objected to his placement in Tier

II, as verbal complaints by inmates, without more, are likely not constitutionally-protected

speech.  Hoever v. Caper, No. 4:14cv273, 2014 WL 6674490, at *2 (N.D. Fla. Nov. 25, 2014)

(discussing limitations of inmate's "constitutionally protected speech" as it relates to complaints

about conditions of confinement).  Accordingly, I **RECOMMEND** the Court **DISMISS**

Plaintiff's retaliation claims against Defendants Jacobs, Toole, Shuemake, Todman, and Davis.[12]

## IX.    GSP Claims–Deprivation of Property

Plaintiff claims that Defendants Shuemake, Todman, and Davis and Officer Osborne (not

a named Defendant) confiscated his property or are otherwise responsible for the loss of his

property.  Plaintiff's claims implicate his right to procedural due process.  As noted above, a §

1983 action alleging a procedural due process clause violation requires proof of three elements:

"(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and

(3) constitutionally inadequate process."  Doe v. Fla. Bar, 630 F.3d 1336, 1342 (11th Cir. 2011)

(quoting Cryder, 24 F.3d at 177).  As to the third element, it is recognized that "[d]ue process is a

flexible concept that varies with the particular situation."  Cryder, 24 F.3d at 177.

Moreover, determining whether due process is satisfied requires consideration of three

distinct factors:

> First, the private interest that will be affected by the official action; second, the
> risk of an erroneous deprivation of such interest through the procedures used, and

---

[12]      Plaintiff states certain Defendants retaliated against him based on litigation Plaintiff pursued
during his previous period of incarceration.  See supra fn. 8.  These allegations stem from Plaintiff's
incarceration at GDCP and should be addressed in the Middle District of Georgia.

the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 178 (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

However, even if a state actor has continued to wrongfully retain a person's personal property, "no procedural due process violation has occurred if a meaningful postdeprivation remedy for the loss is available." Case v. Eslinger, 555 F.3d 1317, 1331 (11th Cir. 2009) (quoting Lindsey v. Storey, 936 F.2d 554, 561 (11th Cir. 1991)). "[T]he state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." Hudson v. Palmer, 468 U.S. 517, 533 (1984).

Georgia law provides a postdeprivation remedy through an action for conversion of personal property, which "is a sufficient postdeprivation remedy when it extends to unauthorized seizures of personal property by state officers." Case, 555 F.3d at 1331. Plaintiff's property confiscation claim arises under O.C.G.A. § 51-10-1. Lindsey, 936 F.2d at 561. This statute provides that "[t]he owner of personalty is entitled to its possession," and "[a]ny deprivation of such possession is a tort for which an action lies." O.C.G.A. § 51-10-1. The Eleventh Circuit has noted "[t]his statutory provision covers the unauthorized seizure of personal property by police officers. Therefore, the state has provided an adequate postdeprivation remedy when a plaintiff claims that the state has retained his property without due process of law." Lindsey, 936 F.2d at 561 (quoting Byrd v. Stewart, 811 F.2d 554, 555 n.1 (11th Cir. 1987)); see also Allen v. Peal, No. CV 312-007, 2012 WL 2872638, at *2–3 (S.D. Ga. June 18, 2012) (dismissing a due process claim for lost or seized personal property because O.C.G.A. § 51-10-1 provides an adequate post-deprivation remedy).

Consequently, Plaintiff's claims regarding the alleged confiscation or deprivation of his property are a matter for determination by the courts of the State of Georgia. Therefore, Plaintiff may not present his claims to this Court under § 1983. Accordingly, I **RECOMMEND** the

Court **DISMISS** Plaintiff's deprivation of property claims against Defendants Shuemake, Todman, and Davis.

**X.     GSP Claims–Grievance Procedures**

**A.     Denial or Rejection of Grievances**

"An allegation that prison officials denied grievances does not 'support a finding of constitutional violations on the part of' those defendants." Gresham v. Lewis, No. 6:15-CV-86, 2016 WL 164317, at *3 (S.D. Ga. Jan. 13, 2016) (citing Bennett v. Sec'y, Fla. Dep't of Corr., No. 4:12CV32, 2012 WL 4760856, at *1 (N.D. Fla. Aug. 27, 2012), *report and recommendation adopted*, 2012 WL 4760797 (N.D. Fla. Oct. 2, 2012) quoting Raske v. Dugger, 819 F. Supp. 1046, 1054 (M.D. Fla. 1993))); see also Ludy v. Nelson, No. 5:14-CV-73, 2014 WL 2003017, at *3 (M.D. Ga. Apr. 18, 2014), *report and recommendation adopted*, 2014 WL 2003096 (M.D. Ga. May 15, 2014) ("However, the mere fact that a prison official denies a grievance is insufficient to impose liability under § 1983." (citing Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009), and Baker v. Rexroad, 159 F. App'x 61, 62 (11th Cir. 2005))).

Here, Plaintiff alleges Defendants Jackson and Milton Smith denied or failed to provide any assistance to him after he filed grievances regarding the conditions of his confinement. The denial of grievances is an insufficient basis for liability under § 1983. Thus, the Court should **DISMISS** Plaintiff's grievance claims against Defendants Jackson and Milton Smith.[13]

**B.     Denial of Access to Grievance Procedure**

Plaintiff maintains he was denied access to the grievance procedure by virtue of the policy that only allows an inmate to have two pending grievances at a time. However, this assertion does not set forth a constitutional violation. Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011) (agreeing with "various circuits" holding an "inmate has no constitutionally-

---

[13]     The only GSP Claim Plaintiff asserted against Defendant Jackson is the grievance claim. If the Court adopts my recommendation to dismiss this claim, all claims against Defendant Jackson in this action will be resolved, and Defendant Jackson will no longer be a named Defendant in the action.

protected liberty interest" in access to a prison's grievance procedure); see Adams v. Rice, 40

F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures

or access to any such procedure voluntarily established by a state."); Flick v. Alba, 932 F.2d 728,

729 (8th Cir. 1991) (holding that federal prison administrative remedy procedures "do not in and

of themselves create a liberty interest in access to that procedure," and that "the prisoner's right

to petition the government for redress is the right of access to the courts, which is not

compromised by the prison's refusal to entertain his grievance"); Mann v. Adams, 855 F.2d 639,

640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Plaintiff fails to state a viable claim that the policy allowing a prisoner to only have two

pending grievances at any time violates his constitutional rights.  Thus, the Court should **DISMISS**

Plaintiff's grievance claims against Defendants Jackson and Milton Smith.

## XI.    Preliminary Injunctive Relief Motions (Docs. 8, 10, 11, 72, 73)

In his motions for preliminary injunctive relief, as supplemented, Plaintiff asks the Court

to enjoin Defendants from forcing prisoners to shave or receive a haircut with unsanitized

clippers or using force or the threat of force to compel prisoners to shave or submit to being

shaved with unsanitized clippers.[14]  Doc. 8 at 1; Doc. 72 at 2.  Plaintiff also asks the Court to

issue an order compelling Defendants to provide him with access to photocopying for his direct

appeal of his conviction.  Doc. 10 at 1.  Plaintiff asserts he is not asking for free or unlimited

copies, only access to the copies he needs to file pleadings in his direct appeal and to maintain

his own records.  Id. at 3; Doc. 73.  Relatedly, Plaintiff further seeks an order compelling

Defendants to provide him with adequate postage to allow him to file documents necessary to

---

[14]     Plaintiff captions his supplements with six case numbers.  Docs. 72, 73.  The Court recognizes the Order declining to sever and transfer Plaintiff's injunctive relief claims.  Doc. 94.  However, unless Plaintiff's requests for injunctive relief concern claims related to his claims in this case (i.e., occurring in 2014 upon his transfer to GSP), the Court does not address those claims here.

appeal his convictions.  Doc. 11 at 1.  Plaintiff offers that Defendants can charge against or freeze his prison trust account for postage.  Id. at 4.

To be entitled to a preliminary injunction, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest.  Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005).  In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites."  Horton v. City of Augustine, 272 F.3d 1318, 1326 (11th Cir. 2001).

If a plaintiff succeeds in making such a showing, then "the court may grant injunctive relief, but the relief must be no broader than necessary to remedy the constitutional violation." Newman v. Alabama, 683 F.2d 1312, 1319 (11th Cir. 1982).  Accordingly, where there is a constitutional violation in the prison context, courts traditionally are reluctant to interfere with prison administration, unless there is a clear abuse of discretion.  See Procunier v. Martinez, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401 (1989).  In such cases, "[d]eference to prison authorities is especially appropriate."  Newman, 683 F.2d at 1320–21 (reversing district court's injunction requiring release of prisoners on probation because it "involved the court in the operation of the State's system of criminal justice to a greater extent than necessary" and a less intrusive equitable remedy was available).

Plaintiff has not shown he has satisfied the prerequisites in order to be entitled to injunctive relief at this time.  Specifically, at this early stage, Plaintiff has not shown the requisite

likelihood of success on the merits of his claims.  This is not to say that Plaintiff will not eventually be able to obtain injunctive relief.  Rather, the Court will not interfere at this time on the facts before it.  Accordingly, the Court should **DENY** Plaintiff's Motions for preliminary injunctive relief.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court:

1.   **SEVER** the Cobb County Claims from this case, **TRANSFER** all of Plaintiff's Cobb County Claims to the District Court for the Northern District of Georgia for disposition, and **TERMINATE** the Defendants named in Plaintiff's Cobb County Claims as named Defendants in this case; and

2.   **SEVER** the GDCP Claims from this case, **TRANSFER** all of Plaintiff's GDCP Claims to the District Court for the Middle District of Georgia for disposition, and **TERMINATE** the Defendants named in Plaintiff's GDCP Claims as named Defendants in this case;

Regarding the GSP Claims, I find some of the claims should be dismissed.  Specifically, I **RECOMMEND** the Court:

1.   **DISMISS** all of Plaintiff's GSP Claims against Defendants Georgia Department of Corrections, Fountain, Major Smith, Rozier, James Smith, Fowler, Broome, Jackson, Mr. John Doe, and Dr. John/Jane Doe and **TERMINATE** these Defendants upon the docket and record of this case;

2.   **DISMISS** Plaintiff's grievance procedure claims against Milton Smith;

3.   **DISMISS** all of Plaintiff's substantive due process claims;

4.   **DISMISS** all of Plaintiff's claims under the RLUIPA;

5.   **DISMISS** Plaintiff's retaliation claims against Defendants Jacobs, Toole, Shuemake, Todman, and Davis;

6.     **DISMISS** all of Plaintiff's deprivation of property claims; and

7.     **DENY** Plaintiff's preliminary injunctive relief Motions, as supplemented, docs. 8, 10, 11, 72, 73.

However, some of Plaintiff's GSP Claims survive frivolity review and will proceed in this Court.  Therefore, I **DIRECT** the United States Marshals Service to serve a copy of Plaintiff's Complaint, doc. 1, Supplemental Complaint, doc. 9, and a copy of this Order on the Defendants named in these claims.  Specifically, I conclude that the following GSP Claims against the following Defendants will proceed:

1.     Deliberate indifference to serious medical need claims asserted against Defendants King, Paul, Toole, Salgado, Lightsey, Brown, Strickland, Dobbs, Crowder, Caravello, McNunn, Nicolou, Silvers, Cowart, Brady, Wooten, Thurmond, Milton Smith, Owens, Ward, Jacobs, Bailey-Dean, Murphy, Shuemake, Todman, and Davis;

2.     Deliberate indifference to health and safety and excessive use of force claims asserted against Defendants Warren, Cauley, and Davis;

3.     Access to the courts (postage) claims asserted against Defendants Toole, Kilgore, Brown, and Henry; and

4.     Procedural due process claims asserted against Defendants Deloach, Owens, Toole, Bailey-Dean, and Jacobs.

Finally, I have determined that certain of Plaintiff's claims and allegations require clarification in order to proceed.  Accordingly, I **ORDER** Plaintiff to clarify his claims, within 21 days, as follows:

1.     Plaintiff must identify the Defendants he claims are liable for the following claims: (a) denial of access to the courts (mailing issues); (b) violations of

religious rights the First Amendment; and (c) conditions of confinement claims at GSP.

2.   Plaintiff must identify the specific Defendants responsible for each policy or practice in place at GSP which he contends led to the violations of his rights.

3.   Plaintiff must file a single "Supplement" containing the information described, which must **not exceed 5 pages**.  To be clear, the Court is not asking Plaintiff to provide an Amended Complaint, only a supplement to his previously filed pleadings, and Plaintiff may not attempt to interject new and unrelated claims or additional Defendants into this lawsuit.

4.   Conclusory "all Defendants" statements and similarly vague allegations are not sufficient.  Plaintiff must identify each Defendant properly by name.

5.   Failure to follow these instructions may result in dismissal of Plaintiff's claims.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of

Court to serve a copy of this Report and Recommendation upon Plaintiff.

### INSTRUCTIONS TO DEFENDANTS

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be

effected by the United States Marshal.  Fed. R. Civ. P. 4(c)(3).  In most cases, the marshal will

first mail a copy of the complaint to defendants by first-class mail and request that defendants

waive formal service of summons.  Fed. R. Civ. P. 4(d); Local R. 4.7.  Individual and corporate

defendants have a duty to avoid unnecessary costs of serving the summons, and any such

defendant who fails to comply with the request for waiver must bear the costs of personal service

unless good cause can be shown for the failure to return the waiver.  Fed. R. Civ. P. 4(d)(2).

Generally, a defendant who timely returns the waiver is not required to answer the complaint

until sixty (60) days after the date that the marshal sent the request for waiver.  Fed. R. Civ. P.

4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take

the deposition of Plaintiff upon oral examination.  Fed. R. Civ. P. 30(a)(2).  Defendants are

further advised that the Court's standard 140-day discovery period will commence upon the

filing of the last answer.  Local R. 26.1.  Defendants shall ensure that all discovery, including

Plaintiff's deposition and any other depositions in the case, is completed within that discovery

period.

In the event Defendants take the deposition of any other person, Defendants are ordered

to comply with the requirements of Federal Rule of Civil Procedure 30.  As Plaintiff will likely

not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and

advise him that he may serve on Defendants, in a sealed envelope, within 10 days of the notice of

deposition, written questions Plaintiff wishes to propound to the witness, if any.  Defendants

shall present such questions to the witness seriatim during the deposition.  Fed. R. Civ. P. 30(c).

## INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if

appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or

other document submitted for consideration by the Court.  Plaintiff shall include with the original

paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct

copy of any document was mailed to Defendants or their counsel.  Fed. R. Civ. P. 5.  "Every

pleading shall contain a caption setting forth the name of the court, the title of the action, [and]

the file number."  Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of **immediately** informing this Court and

defense counsel of any change of address during the pendency of this action.  Local R. 11.1.

Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this

case.

Plaintiff has the responsibility for pursuing this case.  For example, if Plaintiff wishes to

obtain facts and information about the case from Defendants, Plaintiff must initiate discovery.

See generally Fed. R. Civ. P. 26 *et seq*.  The discovery period in this case will expire 140 days

after the filing of the last answer.  Local R. 26.1.  Plaintiff does not need the permission of the

Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within

this time period.  Id.  Discovery materials should **not** be filed routinely with the Clerk of Court;

exceptions include: when the Court directs filing; when a party needs such materials in

connection with a motion or response, and then only to the extent necessary; and when needed

for use at trial.  Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons.  See Fed. R.

Civ. P. 33.  Interrogatories may be served only on a party to the litigation, and, for the purposes

of the instant case, this means that interrogatories should not be directed to persons or organizations who are not <u>named</u> as a defendant.  Interrogatories are not to contain more than 25 questions.  Fed. R. Civ. P. 33(a).  If Plaintiff wishes to propound more than 25 interrogatories to a party, Plaintiff must have permission of the Court.  If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.7.

Plaintiff has the responsibility for maintaining his own records of the case.  If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution.  Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which Defendants may initiate.  Upon no less than five days' notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action.  Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order.  A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is

<u>required</u> to prepare and file his own version of the Proposed Pretrial Order.  A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

<b><u>ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING<br>MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT</u></b>

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service.  "Failure to respond shall indicate that there is no opposition to a motion."  Local R. 7.5.  Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion.  Local R. 7.5, 56.1.  The failure to respond to such a motion shall indicate that there is no opposition to the motion.  Furthermore, each material fact set forth in Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement.  Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case.  That burden cannot be carried by reliance on the conclusory allegations contained within the complaint.  Should Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest Defendants' statement of the facts.  Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against

Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 20th day of December, 2019.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA