IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| WASEEM DAKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   6:14-CV-47-RSB-BWC |
| PATRICK HEAD, *et al*. | ) |
| | ) |
| Defendants. | ) |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants Brian Owens, Timothy Ward, Robert Toole, Shirley Kilgore, Linton DeLoach, Milton Smith, Benjamin Warren, Miguel Salgado, Ronnie Shuemake, Taral Todman, Freddie Davis, and Betty Bailey-Dean, by and through counsel, submit this brief in support of their motion to dismiss. First, Defendants seek the dismissal of all but one of Plaintiff's pending causes of action because Plaintiff failed to exhaust his administrative remedies properly under the GDC grievance SOP.[1] Second, Defendants move for a dismissal of all of Plaintiff's compensatory and punitive damages claims (leaving nominal only) on all causes of action except the two Eighth Amendment deliberate indifference claims (serious medical needs/health and

---

[1] Plaintiff's Fifth Amendment Due Process claim regarding his assignment to administrative segregation upon his transfer to GSP is not subject to the GDC grievance SOP. Instead, Plaintiff was subject to a separate SOP related to the administrative segregation process. Thus, with respect to proper exhaustion of the due process claim, the issue is whether Plaintiff properly appealed his housing assignment under a separate GDC administrative segregation SOP. *See* SOP IIB05-0001, effective date 12/10/2012 (attached to attachment A, Edwards Declaration), Section VI, B2(d) ("Non-grievable issues"): "[i]nvoluntary assignments to administrative segregation. The procedure to appeal such assignment is located in GDC SOP IIB09-0001 (Administrative segregation)". This issue needs to be developed in discovery, and Defendants anticipate moving for summary judgment on that issue at the appropriate time.

1

safety). Third, Defendants move for dismissal of Plaintiff's forced shaving claim because Plaintiff failed to allege any physical injury.

## I. PLAINTIFF'S ALLEGATIONS[2]

Plaintiff brings claims under 42 U.S.C. § 1983 against former Georgia Department of Corrections ("GDC") Commissioner Brian Owens, former Assistant GDC Commissioner and current GDC Commissioner Timothy Ward, Georgia State Prison ("GSP") Warden Robert Toole, GSP Deputy Warden of Administration Shirley Kilgore, GSP Unit Manager Linton DeLoach, former GSP Chief Counselor Milton Smith, CERT Officer Benjamin Warren, Sergeant Miguel Salgado, Sergeant Ronnie Shuemake, CERT Officer Taral Todman, CERT Officer Freddie Davis and Betty Bailey-Dean, asserting (1) Eighth Amendment claims arising from alleged deliberate indifference to medical need, deliberate indifference to health and safety and excessive use of force; (2) First Amendment claims arising from denial of access to courts; and (3) Fifth Amendment procedural due process claims.

Although the facts presented in Plaintiff's complaint are complicated and difficult to understand as presented, the following are the facts as stated in Plaintiff's original complaint, Doc. 1, filed on May 19, 2014, and Plaintiff's supplemental complaint, Doc. 9, filed on August 19, 2014.[3]

---

[2] Defendants do not concede that all of Plaintiff's allegations are accurate, but they acknowledge that all factual averments in the complaint will be construed as true for purposes of Rule 12(b)(6).

[3] Plaintiff's initial complaint, Doc. 1, and supplemental complaint, Doc. 9, assert claims against numerous individuals at GSP and Georgia Diagnostic and Classification Prison (GDCP), as well as against individuals involved in his criminal prosecution in Cobb County, Georgia. On December 20, 2019, the Magistrate Judge's Report and Recommendation dismissed or transferred many of these claims. (Doc. 99). The remaining claims concern Plaintiff's confinement at GSP. However, as the description of the claims herein shows, and as Defendants have argued in their motion to sever, these are unrelated claims and Plaintiff should be directed to pursue them separately as the law requires. *See* Doc. 139.

First, Plaintiff states that the conditions at GSP were unclean and unsafe, including rodent infestations. *See* Doc. 1. Officers largely ignored these unclean and unsafe conditions, and denied Plaintiff access to medical care, and access to television and the law library. *Id*.

Second, Plaintiff was denied a hearing after he was placed in segregation upon his arrival at GSP. *Id*. Plaintiff protested his placement in segregation, to which Defendant DeLoach responded that he could be put into segregation because he had been transferred from the Georgia Diagnostic and Classification Prison. *See* Doc. 9. Plaintiff later contacted Defendants Owen, Toole, DeLoach and Bailey-Dean, requesting that he not be placed in segregation. *Id*. He also filed an appeal with Defendant Toole. *Id*. Later, Defendant Todman, among others, took his property. *Id*.

Third, on April 10, 2014, Plaintiff was allegedly shaved against his will with unsanitized clippers by Defendant Warren, among others. *See* Doc. 1. Defendant Warren ignored Plaintiff's request to clean the clippers. *Id*.

Fourth, Defendants ignored Plaintiff's request for medical treatment. *Id*. Plaintiff suffered from numerous medical conditions when he arrived at GSP, including chest pains, back pain, knee pain, migraines, dizzy spells, carpal tunnel syndrome, dental issues and indigestion. *Id*. Plaintiff did not have any initial medical intake when he arrived at GSP. *Id*. Furthermore, Plaintiff, although prescribed medication and knee and wrist braces, has not received these prescriptions or braces. *Id*. Plaintiff has submitted numerous sick call requests but has still not received treatment. *Id*. Plaintiff further alleges that he was not treated by medical staff during and after the time that he was on a hunger strike in May 2014. *See* Doc. 9.

Fifth, Plaintiff alleges Defendants have continuously rejected prisoner mail or have disposed of envelopes. *See* Doc. 1. Furthermore, Defendants have not allowed Plaintiff access to photocopies, and have limited Plaintiff's access to stamps. *Id*.

Plaintiff seeks (1) declaratory relief; (2) injunctive relief; and (3) nominal, compensatory, and punitive damages. *Id*.

## II. ARGUMENT AND CITATION TO AUTHORITY

### A. Plaintiff Failed To Exhaust His Administrative Remedies

Plaintiff failed to exhaust the available administrative remedies because he filed this action before he ever filed a single grievance while incarcerated at GSP. The Prison Litigation Reform Act (PLRA) provides:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA "seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Id*. at 95. Therefore, an inmate incarcerated in a state prison must first comply with the grievance procedures established by the State Department of Corrections before filing a lawsuit alleging violations of constitutional rights under § 1983. *See id*. at 90-91; *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999).

"The time the [PLRA] set for determining whether exhaustion of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied." *Goebert v. Lee County*, 510 F.3d 1312, 1324 (11th Cir. 2007). "Otherwise, the exhaustion requirement would not serve its purposes of permitting corrections officials an opportunity to redress grievances before a lawsuit is initiated, thereby reducing the amount of inmate litigation that is filed." *Id*.

Exhaustion is mandatory, even if the administrative process cannot supply the only remedy sought by the Plaintiff. *Booth v. Churner*, 532 U.S. 731, 741 and n.6 (2001); *see also Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998). Indeed, exhaustion is required even if it would be futile or if the remedy offered is inadequate. *Booth*, 532 U.S. at 741 n. 6; *Alexander*, 159 F.3d at 1328.

The failure to exhaust administrative remedies is not a jurisdictional requirement. *Woodford*, 548 U.S. at 101. Instead, it is an affirmative defense. *Jones*, 549 U.S. at 216. However, exhaustion is similar to a jurisdictional defense in that it is a matter of abatement. *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). Thus, exhaustion of administrative remedies is properly addressed in a motion to dismiss, rather than a motion for summary judgment. *Id*. at 1374-76. Additionally, when ruling on exhaustion in a motion to dismiss, the trial court may consider facts outside the pleadings and resolve factual disputes regarding exhaustion so long as the factual disputes do not decide the merits. *Id*. at 1376-77.

GDC has a grievance process of which inmates are informed. Declaration of Deidra Edwards, Attachment A at ¶ 4. The process has two steps, the filing of: (1) an original grievance, and (2) a central office appeal. *Id*. at ¶ 6. Step one requires an inmate to complete and submit a grievance form no later than ten calendar days from the date the Offender knew, or should have

known, of the facts giving rise to the grievance. *Id*. at ¶ 8. Step two requires that, after a denial or a rejection of the original grievance, the inmate must appeal that decision with the GDC Central Office. *Id*. at ¶ 10. The grievance process gives prison officials 100 days to resolve the grievance appeal. *Id*. at ¶ 11.

Plaintiff alleges that his constitutional injuries occurred while detained at GSP before filing his original complaint in May 2014. Plaintiff's grievance history shows that at GSP, Plaintiff filed two grievances, numbers 175847 and 175848, on June 23, 2014, both allegedly relating to the present lawsuit. *Id*. at ¶ 15. He later filed five more grievances at GSP in 2014. *Id*. at ¶ 14.[4]

Plaintiff failed to exhaust the available administrative remedies. First, grievance number 175847 relates to Plaintiff's request for a special, higher-calorie diet. *Id*. at ¶ 15. Grievance number 175848 relates to alleged threats of violence made by a non-Defendant CERT officer against Plaintiff. *Id*. at ¶ 15. Neither of these issues are addressed in Plaintiff's complaint, and none of the allegations made in Plaintiff's complaint appear in these grievances. Therefore, Plaintiff has failed to grieve, and has failed to exhaust the available administrative remedies.

Second, even if these grievances did relate to the incidents alleged in Plaintiff's complaint, inmates must initiate and complete the grievance process before filing a lawsuit. Plaintiff filed his original complaint in this lawsuit on May 19, 2014, over one month before he filed the two grievances. Therefore, Plaintiff filed his original complaint prematurely. "'[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging

---

[4] Plaintiff's grievance history shows that at Georgia Diagnostic and Classification Prison, the facility where Plaintiff was detained before his transfer to GSP, Plaintiff filed a total of 37 grievances between October 11, 2012 and March 13, 2014, making for an average of over two grievances per month.

harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.'" *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (quoting *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000)).

Third, the Eleventh Circuit has held that the filing of an amended or supplemental complaint does not cure a Plaintiff's failure to exhaust the available administrative remedies under the PLRA, and instead, exhaustion must be assessed from whether the inmate had exhausted the available administrative remedies at the time the original complaint was filed. *See Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000); *Smith v. Terry*, 491 Fed. Appx. 81, 83 (11th Cir. 2012). Therefore, supplements or amendments to Plaintiff's complaint cannot cure Plaintiff's failure to exhaust before bringing this lawsuit. Even if Plaintiff argues that he filed a supplemental complaint on August 19, 2014, two months after filing the June 23, 2014 grievances, and that this supplemental complaint should control,[5] Plaintiff still failed to complete the full grievance process before filing this supplemental complaint. Plaintiff's grievance records indicate that grievance 175848 was never appealed, and that grievance 175847 was appealed, and that this appeal was denied in December 2014 – long after Plaintiff "amended" his original complaint. Attachment A at ¶¶ 16, 17.

Moreover, grievance 175847 was denied on appeal for a procedural reason – Plaintiff raised more than one issue in the grievance which was a violation of the policy – and the merits were not considered at that final step in the grievance process. Id. at ¶ 16. So there was a failure to exhaust even if the supplement to the complaint is considered by the Court. First, inmates

---

[5] Plaintiff initially characterized this supplemental complaint as an "amended complaint." Doc. 9. In the Magistrate Judge's Report and Recommendation, this Court construed Plaintiff's "amended complaint" as "supplemental to his original Complaint, as the second filing builds on his original Complaint." Doc. 99 at 5.

must complete all available steps in the grievance process and receive a merits based consideration of the grievance at the final step in the process to be considered to have exhausted the grievance process. *See, e.g., Whatley v. Smith*, 898 F.3d 1072, 1083 (11th Cir. 2018). Second, it is clear here that Plaintiff failed to both appeal and wait the required 100 calendar days for a response to the grievance that he did appeal, before filing this supplemental complaint. Thus, even if Plaintiff relied on this supplemental complaint, Plaintiff still filed this complaint prematurely.

By filing his lawsuit before filing any grievances and failing to complete the entire grievance process, Plaintiff did not "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford*, 548 U.S. at 93. Because Plaintiff failed to comply with the GDC grievance policy, Plaintiff has failed to exhaust the available administrative remedies as they relate to any of the alleged incidents in this case (other than the due process claim). For this reason, Plaintiff's claims should dismissed.

### B. The PLRA Bars Plaintiff's Right to Recover Compensatory and Punitive Damages on Any Claims Where Plaintiff Did Not Suffer More Than a *De Minimis* Physical Injury

The Prison Litigation Reform Act of 1995 (PLRA or Act) limits a prisoner's right to monetary relief, as follows:

> (e) Limitation on recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). The Eleventh Circuit has construed this provision to mean that a prisoner is barred from seeking compensatory or punitive damages where he does not allege and show that he suffered a physical injury that is more than *de minimis*. *See Al-Amin v. Smith*, 637 F.3d 1192, 1197-1198 (11th Cir. 2011); *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007).

8

This Court has ordered the following of Plaintiff's GSP claims to proceed: 1) deliberate indifference to serious medical needs; 2) deliberate indifference to health and safety; 3) excessive use of force; 4) denial of access to courts (postage); and 5) procedural due process (related to Tier I/Tier II housing assignments).[6] Doc. 99 at 43. Plaintiff's complaint, Doc. 1, as supplemented, Doc. 9, does not allege any greater than *de minimis* physical injuries with respect to his legal claims other than the deliberate indifference to serious medical needs and deliberate indifference to health and safety claims. As such, Defendants seek an order dismissing Plaintiff's claims for compensatory and punitive damages (leaving nominal damages only) as to all other pending GSP claims. Defendants anticipate addressing the two deliberate indifference claims at the summary judgment stage of this litigation.

With respect to his remaining claims, it is indisputable that Plaintiff has failed to allege any physical injuries--or any physical injuries greater than *de minimis*—in association with the denial of access to the courts (postage) or procedural due process (related to Tier I/Tier II housing assignments). The same holds true for his potential claims for the denial of access to courts (mailing issues), violations of his religious rights under the First Amendment, and the conditions of his confinement at GSP. This leaves his excessive use of force claim for consideration. In that claim, Plaintiff alleges that prison officials forcibly shaved him with unsanitary hair clippers. Doc. 1 at 16. In the Eleventh Circuit, a "dry shave," without more, is simply not the kind of "physical injury" that is cognizable under the PLRA. *See, e.g., Harris v. Garner*, 190 F.3d 1279, 1287 (11th Cir. 1999) ("*Harris I*"), *reh'g en banc granted and opinion*

---

[6] The Court asked Plaintiff to clarify certain other claims by identifying those defendants he deemed liable for: 6) the denial of access to courts (mailing issues); 7) violations of his religious rights under the First Amendment; and 8) the conditions of his confinement at GSP. *Id.* at 43-44. Plaintiff has since done so, Doc. 105, but the Court has not yet ruled whether any or all of these additional GSP claims should proceed.

9

*vacated*, 197 F.3d 1059 (11th Cir. 1999), *opinion reinstated in relevant part by Harris II*, 216 F.3d 970 (11th Cir. 2000); *Shabazz v. Barnauskas*, 790 F.2d 1536, 1538 (11th Cir.1986) (dismissing plaintiff's Eighth Amendment cruel and unusual punishment claim because allegation of forced shave was *de minimis*, even though the shaving caused "bleeding, inflammation, irritation, ingrowing of hairs, infection, purulence and pain"), *cert. denied*, 479 U.S. 1011, 107 S. Ct. 655, 93 L. Ed. 2d 709 (1986).[7]  Here, Plaintiff claimed no physical injuries associated with the forced shave. Thus, Plaintiff failed to allege a greater than *de minimis* injury as to his excessive use of force claim, and is entitled to seek no more than nominal damages for that claim as well.

### C. Plaintiff's forced shaving claim is subject to dismissal for failure to state a claim because Plaintiff fails to allege any physical injury.

The absence of an allegation of *any* physical injury caused by the alleged forced shaving should subject Plaintiff's claim to outright dismissal for failure to state a claim.  In a prison setting, force is deemed legitimate under the Eighth Amendment as long as it is used "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).  The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (citations omitted).  "A *de minimis* use of force, as evidenced by no injury, typically cannot support a claim of excessive use of force." *Carter v. Grady*, 2016 U.S. Dist. LEXIS 182735, at *13 (N.D. Fla. Dec. 1, 2016) (citing *Hudson,* 503 U.S. at 7-8). Here, Plaintiff fails to allege any claim for physical injury. Thus, Plaintiff's

---

[7] Of course, Plaintiff may pursue nominal damages as part of his excessive use of force claim.

forced shaving claim alleges a *de minimis* use of force evidenced by no injury, and this allegation cannot support a claim of excessive use of force.

### III.     CONCLUSION

For the foregoing reasons, Defendants submit that their motion to dismiss should be granted due to Plaintiff's failure to his exhaust his administrative remedies except for his due process claim.  Additionally, Plaintiff's claims for compensatory and punitive damages should be dismissed with respect to all but his two deliberate indifference claims. Finally, Plaintiff's forced shaving claim should be dismissed for failure to state a claim because he failed to allege any physical injury.

Respectfully submitted, this 31st day of March, 2020.

|  |  |
|---|---|
| Christopher M. Carr<br>Attorney General | 112505 |
| Kathleen M. Pacious<br>Deputy Attorney General | 558555 |
| Roger A. Chalmers<br>Senior Assistant Attorney General | 118720 |
| Paul Jay Pontrelli<br>Assistant Attorney General | 583513 |
| /s/ Jordan A. Weber<br>Jordan A. Weber<br>Assistant Attorney General | 148401 |

PLEASE ADDRESS ALL
COMMUNICATIONS TO:
Jordan A. Weber
State Law Department
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Tel: (404) 656-4812
Fax: (404) 651-5304
Email: jweber@law.ga.gov

11

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing has been filed with the Clerk of Court using the CM/ECF system by remote process at a time when the Georgia Department of Law has put into place a telework policy as part of ongoing health and safety measures related to the COVID-19 virus.  The document will be served on the following recipients by causing a copy thereof to be deposited in the United States Mail on Thursday, April 2, 2020, postage prepaid, addressed as follows:

    Waseem Daker
    GDC # 901373
    Valdosta State Prison
    P.O. Box 5368
    Valdosta, Georgia 31603

    This 31st day of March 2020.

                                                    /s/ Jordan A. Weber