FILED
John E. Triplett, Acting Clerk
United States District Court

By Crobinson at 2:29 pm, Feb 22, 2021

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### STATESBORO DIVISION

WASEEM DAKER,

        Plaintiff,

    v.

BRIAN OWENS, et al.,

        Defendants.

CIVIL ACTION NO.: 6:14-cv-47

---

## <u>ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

Presently before the Court are the Motion to Dismiss of Defendants Owens, Ward, Toole, Kilgore, DeLoach, Milton Smith, Warren, Salgado, Shuemake, Todman, Davis, and Bailey-Dean ("Movants"), pursuant to 42 U.S.C. § 1997e(a), (e), and Federal Rule of Civil Procedure 12(b)(6), doc. 148, Plaintiff's Response, doc. 161, Movants' Reply, doc. 182, Plaintiff's Surreply, doc. 204, and Plaintiff's Citation of Supplemental Authority in Support of Surreply, doc. 241.[1]  For the following reasons, I **RECOMMEND** the Court **GRANT** the portion of Movants' Motion seeking dismissal of claims for failure to exhaust under 42 U.S.C. § 1997e(a) and **DISMISS** the following Georgia State Prison ("GSP") claims:[2]

---

[1]      As with many of his other filings, Plaintiff's Response and Surreply both exceed this District's Local Rule regarding page limits.  While the Court considered Plaintiff's briefs in ruling on the Motion to Dismiss, Plaintiff must comply with the Local Rule governing page limits, and the Court will not consider non-compliant briefs in the future unless Plaintiff receives express permission in advance to exceed the 26-page limit.  See Local R. 7.1(a) ("Absent prior permission of the Court, no brief shall exceed twenty-six (26) pages in length, inclusive of the certificate of service required by LR 5.1.").

[2]      The Court incorporates herein the description of the GSP claims, as laid out in this Court's December 20, 2019 Order and Magistrate Judge's Report and Recommendation.  Doc. 99 at 9–18 (adopted in part by doc. 235).  In this Report and Recommendation, I did not consider the viability of any of Plaintiff's Georgia Diagnostic & Classification Prison ("GDCP") claims or the viability of the Cobb County claims raised in Plaintiff's Complaint and Supplemental Complaint, which were severed and transferred to other Districts.  Doc. 235 at 25.

(1)     All of Plaintiff's First Amendment GSP claims raised in his Complaint and Supplemental Complaint (i.e., Plaintiff's claims of denial of access to the courts (photocopies and postage) and claims of violations of rights to religious exercise);

(2)     All of Plaintiff's Eighth Amendment GSP claims raised in his Complaint and Supplemental Complaint (i.e., Plaintiff's claims of deliberate indifference to his serious medical needs (including claims related to dental care), claims involving conditions of confinement, claims of deliberate indifference to his health and safety, and claims of excessive use of force); and

(3)     All of Plaintiff's deprivation of property GSP claims raised in his Complaint and Supplemental Complaint (i.e., Plaintiff's deprivation of property claims against Defendants Toole, Jacobs, Shuemake, Todman, and Davis).

I also **RECOMMEND** the Court **GRANT** the portion of Movants' Motion seeking dismissal of Plaintiff's claims for certain categories of damages pursuant to 42 U.S.C. § 1997e(e) and **DISMISS** Plaintiff's remaining claims for compensatory and punitive damages.  I also **RECOMMEND** the Court **DENY as moot** the portion of Movants' Motion seeking dismissal of Plaintiff's forced shaving claim for failure to state a claim.  Doc. 148.

If this Recommendation regarding Movants' Motion to Dismiss is adopted, then the only remaining claims in this lawsuit will be Plaintiff's GSP procedural due process claims concerning his placement in Tier II/segregation against Defendants DeLoach, Owens, Toole, Bailey-Dean, and Jacobs,[3] see doc. 235 at 26–27, and, for these claims, Plaintiff will be limited to recovering only nominal damages and shall not be able to recover compensatory or punitive

---

[3]     The Court refers the parties to the undersigned's December 20, 2019 Order and Report and Recommendation for a description of the scope of the remaining GSP procedural due process claims against Defendants DeLoach, Owens, Toole, Bailey-Dean, and Jacobs.  Doc. 99 at 10–12, 30–31, 43 (outlining, analyzing, and ordering service of Plaintiff's procedural due process claims concerning his placement in Tier II/segregation against Defendants DeLoach, Owens, Toole, Bailey-Dean, and Jacobs), *adopted in part by* Doc. 235.

damages.  Therefore, I **RECOMMEND** the Court **DISMISS** all other Defendants from this action and **TERMINATE** them from the docket in this case.

I also **RECOMMEND** the Court **DENY** Plaintiff's Supplemental Motions for Preliminary Injunction or Temporary Restraining Order regarding forced shaving, docs. 166, 195.  Finally, through this Order, the Court **DENIES as moot** Defendants' Motion to Sever, doc. 139, and **DENIES** Plaintiff's Motion for Sanctions, doc. 164.

## BACKGROUND

Plaintiff brought this 42 U.S.C. § 1983 suit alleging various claims against Defendants, mainly concerning his confinement at GSP in 2014.  Docs. 1, 9.  After a frivolity screening under 28 U.S.C. § 1915A, the Court severed and transferred and dismissed many of Plaintiff's claims.  Docs. 99, 235.  The Court, however, permitted Plaintiff to proceed on certain claims identified as GSP claims, including Eighth Amendment claims, a First Amendment claim, a deprivation of property claim, and his procedural due process claim based on his placement in Tier II/segregation.[4]  Id.  The Court also provided Plaintiff the opportunity to clarify which Defendants should be named in his Eighth Amendment GSP claims based on conditions of confinement and his First Amendment GSP claims based on denial of access to courts (photocopies) and violation of religious exercise rights.[5]  Doc. 99 at 26, 28–29, 34, 43–44.

Movants now ask this Court to dismiss all of Plaintiff's claims currently pending in this action (except Plaintiff's procedural due process GSP claims regarding his placement in Tier

---

[4]     A full description of the surviving claims can be found in the undersigned's Report and Recommendation, doc. 99, and the Court's Order considering that Report and Recommendation, doc. 235.

[5]     While Plaintiff provided a supplement in an attempt to clarify the Defendants who should be named in these claims, doc. 105, the undersigned finds there is no need to perform a further screening of these claims in light of Plaintiff's failure to exhaust his administrative remedies.

II/segregation) based on Plaintiff's failure to exhaust administrative remedies.  Doc. 148-1 at 1, n.1.  Movants also seek dismissal of Plaintiff's claims for compensatory and punitive damages on all pending claims (except two Eighth Amendment deliberate indifference claims) based on Plaintiff's failure to allege more than a *de minimis* injury. Id. at 8–10.  Finally, Movants seek dismissal of Plaintiff's claims of forced shaving claim due to his failure to state a claim. Id. at 10–11.

Plaintiff styles his Response as a "Partial Response" and requests the Court allow him the opportunity to supplement his Response upon receiving access to all the authorities listed in the Movants' Motion to Dismiss.  Doc. 161 at 1.  Plaintiff's "Partial Response" is comprehensive and supported by extensive citations to legal authority.  Simultaneous with the filing of his Response, Plaintiff filed a motion for access to case authorities, doc. 163, and Plaintiff later filed a second motion for access to case authorities in connection with Movants' Reply brief for their Motion to Dismiss, doc. 202.[6]  The Court has denied Plaintiff's motions for access to case authorities, doc. 251, and the Court now also **DENIES** Plaintiff's request to supplement his Response to Movants' Motion to Dismiss upon access to the requested authorities.  Because Plaintiff's time for filing his Response has passed and his Response on file is comprehensive and

---

[6]     A sizeable portion of the parties' briefs concerns the issue of Plaintiff's access to case law and the law library at Valdosta State Prison during the timeframe he was responding to this Motion.  Doc. 161 at 1–5; Doc.182 at 1–2; Doc. 204 at 7–25.  The issue of Plaintiff's law library access at Valdosta State Prison in 2020 is not properly before this Court.  Moreover, Plaintiff's briefing in his Response and Surreply is supported by numerous citations of authority, including opinions issued as recently as September 2020.  Docs. 161, 204, 241.  Any limitation on Plaintiff's access to cases or the law library has not significantly frustrated his ability to fully respond to Movants' Motion to Dismiss.

fully supported with citations to authority, the Court treats his "Partial" Response to Movants'

Motion to Dismiss as Plaintiff's complete and final Response.[7]

## DISCUSSION

**I.      Motion to Dismiss for Failure to Exhaust Administrative Remedies, Doc. 148**

As explained below, it is undisputed Plaintiff did not exhaust his administrative remedies

before bringing this suit.  Instead, Plaintiff alleges administrative remedies were unavailable for

various reasons, and, alternatively, the Georgia Department of Corrections' two-active-grievance

limitation is unconstitutional.  Plaintiff's arguments are unavailing.  Administrative remedies for

the currently pending claims were available to Plaintiff; he simply elected not to exhaust those

remedies.  Plaintiff's constitutional challenge to the Georgia Department of Corrections' two-

active-grievance rule is also unavailing, as the rule serves a legitimate penological need.

Because Plaintiff failed to exhaust administrative remedies as to all of his pending GSP claims

(excluding his procedural due process claims based on Tier II/segregation placement) before

bringing this suit, I recommend the Court dismiss those claims.

**A.      Standard of Review**

Movants allege Plaintiff failed to comply with the exhaustion requirements of the Prison

Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), as to all but one of his claims.  Section

1997e(a) states: "No action shall be brought with respect to prison conditions under section 1983

of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997e(a).  "[W]hen a state provides a grievance procedure for its prisoners, . . . an

---

[7]      Plaintiff frequently files what he calls "partial" responses and objections.  He has done so eight
times in this case.  Docs. 110, 161, 225, 236, 237, 238, 239, 244.  In each instance, the responses and
objections were comprehensive and fully supported by legal citations.

inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000). "The plain language of the statute makes exhaustion a precondition to filing an action in federal court." Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (citation omitted).

The determination of whether an inmate exhausted his available administrative remedies prior to bringing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374–75 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional," it is like a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.[8]

To evaluate the exhaustion of administrative remedies, first, the court looks to the parties' factual allegations, and if they conflict, the court takes the plaintiff's version as true. Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). If, per the plaintiff's account, the

---

[8]     Plaintiff, in his Response, challenges the Court's ability to consider motions to dismiss for failure to exhaust as matters of abatement and to resolve factual disputes. Doc. 161 at 20–21. This argument lacks merit and is contradicted by well-established controlling authority. While the undersigned finds no need to proceed to step two of Turner in the instant case or to engage in any credibility determinations, the Eleventh Circuit Court of Appeals has made it clear "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1374–76. Here, the relative merits of Plaintiff's claims have not been decided. Furthermore, Plaintiff had ample opportunity to develop the record, submitting over 100 pages of sworn allegations for this Court's consideration on the issue of exhaustion. See Docs. 1, 9, 153, 161, 204.

administrative remedies have been exhausted, then the court proceeds to step two.  At step two, the defendants bear the burden of proving the plaintiff did not exhaust his available administrative remedies.  Id.  At this stage, the court makes factual findings on whether the plaintiff exhausted the available remedies.  Id.  To the extent the factual findings lead to procedural dismissal as opposed to dismissal on the merits, the district court is free to make any findings necessary to resolve the issue.  Bryant, 530 F.3d at 1376–77.  If the remedies are not found to be exhausted, then dismissal is appropriate.  Turner, 541 F.3d at 1083.

**B.**     **Whether Plaintiff Exhausted Available Administrative Remedies**

In their Motion to Dismiss, Movants argue Plaintiff failed to file any grievances at GSP prior to bringing the GSP claims in this case.  Doc. 148-1 at 4.  Movants point out Plaintiff originally brought this lawsuit, asserting his GSP claims, on May 11, 2014, doc. 1 at 33, but Plaintiff did not file his first grievances at GSP until June 23, 2014—more than a month after signing his initial Complaint.[9]  Doc. 148-1 at 6; Doc. 148-5 at 4.  Aside from the two June 23, 2014 grievances, Plaintiff filed no other grievances at GSP between June 23, 2014, and when the Plaintiff signed his Supplemental Complaint on July 31, 2014.  Docs. 148-2, 148-5.  Regarding the two June 23, 2014 grievances, Movants further note that even for those grievances, Plaintiff had not completed the requisite appeal step for either grievance at the time he signed the

---

[9]       While the present case was filed with the Clerk of Court on May 19, 2014, the applicable date for exhaustion purposes under § 1997e(a) is the date Plaintiff signed the Complaint, May 11, 2014.  Doc. 1. Similarly, when considering any new claims raised in the Supplemental Complaint, the applicable date for exhaustion purposes is the date Plaintiff signed the Supplemental Complaint, July 31, 2014, and not the August 19, 2014 filing date.  Doc. 9; see Merilien v. Caldwell, No. 3:18-CV-056, 2020 WL 5763609, at *2 (S.D. Ga. Sept. 28, 2020) ("Concluding a prisoner 'brings' a civil action when he signs the complaint instead of when the clerk files the complaint is consistent with the purpose of § 1997e(a), which is to require exhaustion before a prisoner initiates litigation to avoid premature interruption of the administrative process.").

Supplemental Complaint.[10]  Doc. 148-2 at 5; Docs. 148-5, 148-6, 148-7.  Plaintiff's next

grievance was filed on September 2, 2014, weeks after he filed both the Complaint and

Supplemental Complaint.  Doc. 148-5 at 4.  In short, according to Movants, Plaintiff's grievance

history indicates he had not completed the requisite two-step process for any of the grievances

submitted at GSP prior to the time he brought the claims in this action.

In his Response, Plaintiff does not directly dispute the reported grievance history; instead,

Plaintiff claims he made multiple attempts to file grievances prior to bringing this suit, but the

attempts were improperly impeded or rejected by prison officials, including his counselor,

former Defendant Muriel Jackson.[11]  Doc. 161 at 9.  In other words, Plaintiff argues

administrative remedies were not available to him at GSP during the relevant period.

Specifically, Plaintiff claims he was not provided with proper grievance forms, and he alleges

prison officials lost and destroyed grievances.  Id. at 13–16.  Additionally, Plaintiff argues

administrative remedies were unavailable as a practical matter, because of the Georgia

Department of Corrections' two-active-grievance rule.  Doc. 204 at 29.  Finally, he challenges

---

[10]     One of Plaintiff's two June 23, 2014 grievances addressed Plaintiff's medical concerns and a
request for a special, increased-calorie diet at a sick-call visit on June 18, 2014 (Grievance Number
175847, doc. 148-6), and the other addressed alleged threats by a CERT officer named Cauley (Grievance
Number 175848, doc. 148-7).  The second grievance, Number 175848, does not relate to any of the
currently pending GSP claims.  The first, Number 175847, references some medical issues discussed in
Plaintiff's Supplemental Complaint, as well as other unrelated issues.  Regardless of the content of
Grievance Number 175847, Plaintiff signed his Supplemental Complaint while that grievance was still
pending and long before the appeal process was complete.  Doc. 148-6.

[11]     In support of this argument, Plaintiff identifies 19 grievances with their assigned grievance
numbers.  Doc. 161 at 9.  Plaintiff contends these grievances were denied or ignored.  Id.  However, a
review of Plaintiff's grievance history, doc. 148-5, reveals all 19 of the grievances he identified by
grievance number were actually filed at GDCP prior to his transfer to GSP on April 7, 2014.  See Doc. 1
at 15.  As all of Plaintiff's GDCP claims have been severed from this action and transferred to another
District, doc. 235 at 25, these GDCP grievances do not show Plaintiff properly grieved the GSP claims
remaining in this case, nor do they persuade the Court the grievance procedure was unavailable to
Plaintiff at GSP during the relevant time period.

the constitutionality of the two-active-grievance rule and the availability of the grievance

procedures in general.  Docs. 161, 204.  Plaintiff focuses his arguments on his attempts to file

grievances on April 18, May 6, May 9, and May 13, 2014.  The circumstances of these attempts

are addressed herein.[12]

To reiterate, there is no dispute over whether Plaintiff actually exhausted his

administrative remedies for the GSP claims (with the exception of his remaining procedural due

process claims based on Tier II/segregation placement) prior to bringing this action.  Plaintiff

essentially concedes he did not do so, and the record plainly shows administrative remedies as to

these claims were not exhausted.  Rather, Plaintiff argues he was not required to exhaust his

administrative remedies because they were not available to him.

"To exhaust administrative remedies in accordance with the PLRA, prisoners must

properly take each step within the administrative process."  Bryant, 530 F.3d at 1378 (citation

and quotation marks omitted).  "Proper exhaustion demands compliance with an agency's

---

[12]     Plaintiff also states once, in passing, GSP prison officials refused to accept his grievances on
April 11, April 25, and May 2, 2014.  Doc. 161 at 16.  Plaintiff's allegations concerning these three dates
are conclusory with no details whatsoever.  This is in stark contrast to Plaintiff's detailed allegations
regarding all other attempts to file grievances.  Movants submitted the sworn declaration of counselor
Jackson, in which he expressly denies failing to process grievances (including any grievances Plaintiff
alleges he attempted to submit on April 11, April 25, and May 2, 2014) for any reason other than the two-
active-grievance limitation.  Doc. 182-2 at 4.  Plaintiff's one passing, unsupported reference to April 11,
April 25, and May 2, 2014, does not change the analysis, even under Turner step one.  This reference
merely states Plaintiff attempted to file grievances on these dates, but prison officials failed to accept
them.  Without some explanation, this allegation does nothing to support Plaintiff's argument that
administrative remedies were unavailable.  To the extent this allegation would change the analysis and the
Court needed to proceed to Turner step two, I would explicitly find as a factual matter Plaintiff either did
not attempt to file grievances on April 11, April 25, and May 2, 2014, or, if he did, the grievances were
rejected only because of the two-active-grievance limitation.  Under either scenario, these three instances
would have no bearing on the Court's analysis.  If not submitted at all, Plaintiff's allegation is immaterial;
if submitted but rejected under the two-active-grievance limitation, then these instances are simply
cumulative of other rejections for the same reasons around the same time.  Therefore, the Court will not
address these allegations concerning Plaintiff's attempts to submit grievances on April 11, April 25, and
May 2, 2014, further in its analysis, and will, instead, focus on Plaintiff's other supported and detailed
allegations.

deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90–91 (2006).  "[A] court may not excuse a failure to exhaust." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016).  In this case, the Georgia Department of Corrections' Statewide Grievance Procedure has two steps, the Original Grievance and the Central Office Appeal.  Doc. 148-3 at 8.  As outlined above, it is undisputed Plaintiff failed to complete the two-step exhaustion process laid out in the grievance policy prior to bringing his claims.  The issue in this case, however, turns on the availability of the administrative remedies.

The United States Supreme Court has made it clear "[a] prisoner need not exhaust remedies if they are not 'available.'"  Ross v. Blake, 136 S. Ct. at 1855.  In Ross v. Blake, the Supreme Court explained administrative remedies are unavailable for the purposes of PLRA in three circumstances:

> (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes . . . incapable of use . . . [and] no ordinary prisoner can discern or navigate it"; and (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

Geter v. Baldwin State Prison, 974 F.3d 1348, 1355 (11th Cir. 2020) (citing Ross, 136 S. Ct. at 1859–60).  The Ross Court further stated, "Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.  The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'"  136 S. Ct. at 1862.

This Court, in applying Ross and Turner, must determine whether Plaintiff has sufficiently demonstrated unavailability.  "[A] proper Turner analysis of exhaustion after Ross requires the plaintiff to allege a grievance procedure is unavailable to him in response to the

defendant's affirmative defense of failure to exhaust." Geter, 974 F.3d at 1356.  "While the burden is on the defendant to show an available administrative remedy, once that burden has been met, the burden of going forward shifts to the plaintiff, who, pursuant to Turner, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him." Id.  In terms of a defendant's initial showing, Turner only requires a defendant to show a remedy is "generally available." See Wright v. Ga. Dep't of Corr., 820 F. App'x 841, 845 (11th Cir. 2020) ("Turner mandates that 'defendants bear the burden of proving that the plaintiff has failed to exhaust his *available* administrative remedies,' which includes showing that a remedy is generally available.").  The defendant is not required to show whether the remedy was practically available to the particular plaintiff.  Id.

> ### 1.   *Movants' burden to show administrative remedies were "generally available."*

Applying the Turner analysis, the Court first determines whether Movants meet their burden of showing administrative remedies were generally available.  Wright, 820 F. App'x at 845.  The Court, reviewing the undisputed evidence before it, concludes Movants have met their burden regarding the general availability of the grievance process.  Specifically, Movants have presented evidence in the form of an authenticated copy of the Georgia Department of Corrections' Statewide Grievance Procedure ("SOP") in effect at the time of the events giving rise to Plaintiff's Complaint and Supplemental Complaint, doc. 148-3 (effective 12/10/2012), as well as two Declarations from Deidra Edwards, chief counselor at GSP, outlining the applicable grievance policy and describing Plaintiff's active grievance history, docs. 148-2, 182-1.

The grievance policy at issue states, "No inmate may be denied access to this procedure," doc. 148-3 at 5, and provides the procedures through which inmates in Georgia can file grievances.  The grievance policy limits an inmate to pursuing only two active grievances at any

given time but includes a number of exceptions to this rule.  Id. at 7.  The policy allows an offender who has reached the two-active-grievance limit and seeks to file another grievance the option of dropping one of the outstanding active grievances which is being processed.  Id. Additionally, the policy provides for the filing of an emergency grievance for "[a]n unexpected situation involving a significant threat to the health, safety or welfare of an offender that requires prompt action."  Id. at 3.  Such a grievance, if determined by the Grievance Coordinator to be an emergency, does not count toward the two-active-grievance limit.  Id. at 8.  Also, grievances involving allegations of physical abuse with significant injury and sexual assault and grievances the Grievance Coordinator determines "involv[e] an important issue of prison security or administration, such as a serious threat to life, health, or safety of any person" do not count toward the two-active-grievance limit.  Id.

The grievance policy also outlines certain limitations concerning the format and content of grievances (e.g., prohibiting profanity) that must be complied with prior to a grievance being accepted.  Id. at 6–9, 25.  Additionally, it provides time limitations stating: "The offender must submit the Grievance Form no later than 10 calendar days from the date the offender knew, or should have known, of the facts giving rise to the grievances."  Id. at 9.  However, the policy allows the Grievance Coordinator to waive the time limit for good cause (defining "good cause" as a "legitimate reason involving unusual circumstances that prevented the offender from timely filing a grievance or appeal.")  Id. at 3, 9.

While the policy provides a grievance should be rejected if the offender "already has two active grievances," it also permits an offender to appeal a rejection decision to the Central Office.  Id. at 9–10.  An inmate may file a Central Office Appeal either after receiving the Grievance Coordinator's rejection, after receiving the Warden's decision on the original

grievance, or once the time for the Warden's decision has expired.  Id. at 13.  The Warden has 40 calendar days from the date the offender gave the Grievance Form to the Counselor to deliver the decision to the offender.  Id. at 11.  Once appealed, the Commissioner or his/her designee then has 100 calendar days after receipt of the Grievance Appeal to deliver a decision to the offender. Id. at 14.

Movants have the initial burden to demonstrate administrative remedies were "generally available" to Plaintiff during the relevant time period at GSP.  Wright, 820 F. App'x at 845.  The Court concludes Movants, through their submission of the applicable grievance policy and the March 24, 2020 Declaration of Deidra Edwards, have met their initial burden of showing administrative remedies were generally available.[13]

### 2. Plaintiff's burden to prove administrative remedies were subjectively and objectively "unavailable" to him.

Once Movants meet their burden, as they have here, Plaintiff must demonstrate the grievance procedure was "subjectively" and "objectively" unavailable to him.  Geter, 974 F.3d at 1356.  At this point in the Turner analysis, the Court will accept as true Plaintiff's version of events regarding the availability of the administrative remedies.[14]  Plaintiff makes various

---

[13]     As noted, Defendants are not required to demonstrate administrative remedies were actually available to Plaintiff in making their initial showing that remedies were "generally available."  However, Movants did submit Plaintiff's grievance history as an attachment to Deidra Edwards' March 24, 2020 Declaration.  Docs. 148-2, 148-5.  The history shows from the date Plaintiff arrived at GSP (April 7, 2014) to the date Plaintiff was transferred to Macon State Prison (April 19, 2018), he submitted approximately 60 grievances that were considered at GSP, many of which were appealed to Central Office, and some of which were partially granted.  Doc. 148-4; Doc. 148-5 at 3–4.  This further supports the conclusion administrative remedies were "generally" available.

[14]     Plaintiff, in his Response and Surreply, claims he needs access to photocopying so he can submit corroborating evidence in the form of copies of grievances he gave to Jackson in April and May 2014. Doc. 161 at 21; Doc. 204 at 25–29.  The Court, for purposes of this Motion, has taken as true Plaintiff's sworn allegations concerning the content and dates of these particular grievances, and, therefore, does not find it necessary at this point for Plaintiff to submit actual copies of these grievances.  Accordingly, there is no need for the Court to order photocopying.

arguments regarding the purported unavailability of administrative remedies, which the Court addresses in turn.

> (a)     *Unavailability based on prison officials' refusal to provide grievance forms.*

Plaintiff first argues administrative remedies were unavailable because he was not provided with necessary grievance forms upon request.  As evidence, Plaintiff points to his sworn Complaint, in which he states, "Plaintiff has repeatedly requested grievance forms from his counselor, Muriel Jackson, on 4/8/14, 4/18/14, 5/6/14, and 5/9/14.  On each occasion Mr. Jackson refused to provide any, saying Plaintiff has to get some from the dorm officer."  Doc. 1 at 24.  Plaintiff also states, "Plaintiff has also asked nearly every officer on nearly every shift on nearly every day for a grievance.  They have all said the same thing: officers don't have grievances.  Prisoners are supposed to get some from the counselor."  Id.

Even if the Court takes all these allegations as true, it cannot conclude Plaintiff met his burden in showing the administrative remedies were unavailable based on denial of forms.  As to the allegations he was denied forms on April 8 and 18, 2014, Plaintiff also states under oath he was able to submit three grievances to Jackson on April 18, 2014, on forms he had from another facility.  Doc. 1 at 24.  Plaintiff, in his Complaint, alleges these three grievances were rejected on May 6, 2014, based on the two-grievance limitation, not due to improper forms.  Id.  Thus, it is clear—based on Plaintiff's own allegations—as of April 18, 2014, Plaintiff was not precluded from filing grievances due to a lack of forms.

Plaintiff states he attempted to file more grievances on May 6 and 9, 2014, again using forms he had from the previous facility, but those grievances were rejected—not because of the forms, but because of the two-grievance limitation.  Doc. 1 at 19, 24.  Further, after signing his Complaint on May 11, 2014, Plaintiff claims he filed two grievances with Jackson on May 13,

2014, again on forms from a prior facility.  Doc. 161 at 15.  The filing of grievances on May 13, 2014, shows Plaintiff was able to continue submitting grievances throughout April and May 2014 on forms he had from the prior institution.  Plaintiff has never alleged any of his grievances in April and May 2014 were denied solely on the basis of the particular form he used.[15]  This evidence, supplied by Plaintiff, demonstrates he had adequate access to grievance forms in the time leading up to the date Plaintiff signed his Complaint, and the lack of facility-specific forms did not render administrative remedies subjectively or objectively unavailable at this time. Plaintiff was not actually deterred from filing grievances due to the absence of facility-specific forms, and a reasonable inmate in such circumstances would not be deterred either.  Further, just a short time later, Plaintiff successfully filed two grievances on June 23, 2014, again indicating that he had access to grievance forms.  Doc. 148-2 at 5; Docs. 148-6, 148-7.  Plaintiff's argument that lack of facility-specific forms rendered administrative remedies unavailable is a red herring. By Plaintiff's own allegations, he was never actually precluded from filing a grievance based on the type of form he used.

Plaintiff also states that on May 6, 2014 Jackson returned the three grievances Plaintiff submitted on April 18, 2014, with notes attached explaining the grievances were being rejected due to the two-active-grievance limit.  Doc. 1 at 24; Doc. 161 at 14–15.  According to Plaintiff, he sought to appeal the rejections, but Jackson refused to give Plaintiff appeal forms and told him he could not appeal "because they've been rejected," further stating, "You can't appeal until

---

[15]    Plaintiff states Jackson agreed to accept grievances on April 18, 2014 and May 13, 2014, even though not on GSP's green grievance forms.  Doc. 161 at 14.  While Plaintiff alleges Jackson complained about the color of the forms Plaintiff used on May 6 and May 9, 2014, Plaintiff also alleges these grievances were rejected based on the two-active-grievance limitation.  Id. at 15.  Even accepting Plaintiff's version of these events as true, Plaintiff has not shown administrative remedies were unavailable on May 6 and May 9, 2014, due to the unavailability of forms; the two-active-grievance limit plainly precluded Plaintiff from submitting additional grievances which did not fit into one of the enumerated exceptions at that time, regardless of the color of the form he used.

it's processed and denied."  Doc. 1 at 24.  Thus, Plaintiff essentially argues administrative

remedies were unavailable on this occasion because he was denied appeal forms.

Under the grievance policy, an inmate may file a Central Office Appeal either after

receiving the Grievance Coordinator's rejection, after receiving the Warden's decision on the

original grievance, or once the time for the Warden's decision has expired.  Doc. 148-3 at 13 ("If

the offender's Original Grievance was rejected, the offender may file a Central Office Appeal.").

Based on this, the purported statement by Jackson regarding Plaintiff's ability to appeal was an

incorrect summary of the procedure.[16]  However, the Eleventh Circuit has determined a plaintiff

still has a duty to attempt full exhaustion, even after a prison official provides him with the

wrong information regarding the correct procedures for exhaustion and even after prison officials

fail to provide appeal forms in a timely manner.  Bryant, 530 F.3d at 1378–79 (finding plaintiff

still had an obligation to seek good cause waiver to pursue out-of-time appeal after grievance

counselor told him wrong date for appealing and delayed providing him with appeal form);

see also Brown v. Drew, 452 F. App'x 906, 907 (11th Cir. 2012) ("Even if an appeal is untimely

because the prisoner counselor incorrectly informed the prisoner of the date the appeal was due,

the prisoner still fails to exhaust his administrative remedies if he does not seek a waiver for

good cause in filing an untimely appeal."); Schlicher v. Fla. Dep't of Corr., 399 F. App'x 538,

539 (11th Cir. 2010) ("When a prisoner alleges that he did not have timely access to the required

grievance forms, he still fails to exhaust his administrative remedies if he does not request

consideration of an untimely grievance.").

---

[16]     Jackson denies all allegations he refused to provide forms to Plaintiff or refused to process
grievance requests.  Doc. 182-1 at 4–5.  The Court need not resolve this factual dispute because even
taking Plaintiff's version of the facts as true, Plaintiff has not shown administrative remedies were
unavailable.

As a result, taking Plaintiff's allegations as true, even if Jackson incorrectly told Plaintiff he could not appeal his rejected grievances and did not immediately provide him with appeal forms, Plaintiff still had an obligation to pursue his appeal as allowed by the grievance procedure.  Under the policy, Plaintiff had seven days after receiving a rejection to file a Central Office Appeal.  Doc. 148-3 at 13.  Even after the expiration of seven days, Plaintiff still had the right to request an out-of-time appeal for good cause.  Id.  Here, Plaintiff waited only five days after receiving rejections on May 6, 2014, before unilaterally concluding the procedures were unavailable and bringing his Complaint on May 11, 2014.  Plaintiff's rush to the courthouse must be viewed in the light of Plaintiff's grievance history, which demonstrates he was consistently able to file and appeal grievances at GDCP and at GSP, docs. 148-5, 182-1.  See Kozuh v. Nichols, 185 F. App'x 874, 878 (11th Cir. 2006) (determining district court properly held plaintiff failed to exhaust administrative remedies, where, despite plaintiff's contentions, evidence showed he was able to file numerous complaints).

Accordingly, even taking Plaintiff's version of events as true under step one of Turner, (and thus, not considering Jackson's testimony he never refused to provide Plaintiff with any grievance forms, doc. 182-2), the Court concludes Plaintiff has failed in his burden to show the grievance procedure was subjectively and objectively unavailable to him based on the alleged denial of grievance forms and appeal forms.

           *(b)*     *Unavailability based on prison officials losing or destroying grievances.*

Plaintiff also argues administrative remedies were unavailable because prison officials lost or destroyed his grievances, and Plaintiff points to two grievances he attempted to file on May 13, 2014, as support.  Doc. 161 at 16.  Plaintiff alleges counselor Jackson accepted the two grievances on May 13, 2014, but contends these grievances were never submitted for processing

and also states he never received a receipt or a response for these two grievances.  Doc. 161 at

15–16.  Without citing to any evidence, other than the fact the May 13, 2014 grievances were

never returned to him, Plaintiff claims these two grievances were lost or destroyed by prison

officials.  Id. at 16.  Plaintiff does not allege any other grievances germane to the issues before

the Court were lost or destroyed.

Regardless of what ultimately happened to these grievances, these grievances have no

bearing on exhaustion or unavailability of remedies for any of the claims alleged in the

Complaint because they were submitted after Plaintiff brought this action on May 11, 2014.  See

Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (explaining the only pertinent facts to

determining whether a prisoner satisfied PLRA's exhaustion requirement are those facts that

existed when the claims were brought).  Further, even under Plaintiff's version of the facts, the

May 13, 2014 grievances do not concern claims raised for the first time in the Supplemental

Complaint.[17]

Even if these May 13, 2014 grievances were relevant and were truly lost or destroyed, the

Grievance Procedure still allows an inmate to file a Central Office Appeal once the time for

receiving a decision on the grievance (40 days) has expired  Doc. 148-3 at 11, 13.  There is no

evidence Plaintiff ever attempted to file appeals for the May 13, 2014 grievances, and he has not

---

[17]     Plaintiff alleges his two May 13, 2014 grievances concerned the April 7, 2014 denial of medical care and the denial of a television in his cell.  Doc. 161 at 15.  The grievance involving the television is not related to any of the claims alleged in Plaintiff's initial Complaint or his Supplemental Complaint. The grievance concerning the April 7, 2014 denial of medical care could have been related to claims in this action, but Plaintiff first brought those medical claims in his May 11, 2014 Complaint, doc. 1 at 17. In other words, Plaintiff could not properly exhaust by grieving claims on May 13 that he raised in his May 11 Complaint.  And Plaintiff's filing of his Supplemental Complaint cannot cure his failure to exhaust a claim he raised in his original Complaint.  See Smith, 491 F. App'x at 83 (holding plaintiff cannot cure exhaustion defect in original complaint by later seeking to amend or supplement his complaint).

alleged the grievance appeal process was unavailable during the relevant timeframe.  In fact, Plaintiff filed appeals for at least two other grievances in June 2014.  Doc. 182-1 at 3, 5, 7.

For these reasons, the Court finds no merit in Plaintiff's contention he was unable to exhaust his available remedies in this case due to prison officials "losing or destroying" grievances.  See Turner, 541 F.3d at 1083–84 (finding plaintiff still needed to pursue any available appeal remedies, even after alleging warden tore up his properly filed grievance).[18]

*(c)     Unavailability due to the two-active-grievance limitation.*

Plaintiff also contends the prison officials' implementation of the two-active-grievance limitation rendered administrative remedies unavailable.  As support, he claims he attempted to file several grievances in April and May 2014 in the weeks prior to bringing the Complaint, but the grievances were rejected or otherwise not accepted or processed due to the two-active-grievance limitation.

Plaintiff states he attempted to submit three grievances to Jackson on April 18, 2014, but the three grievances were rejected due to the two-active-grievance limitation.[19]  Doc. 1 at 24; Doc. 161 at 14–15.  Specifically, Plaintiff states the three grievances were returned on May 6, 2014, to him with a Post-It note stating, "I/M [Inmate] has (2) [grievances pending] already."

---

[18]     The Court also notes the two-active-grievance limitation would have likely prevented the processing of the two May 13, 2014 grievances.  Plaintiff does not dispute he still had two pending, active grievances at the time he submitted the May 13, 2014 grievances, and he does not allege the May 13, 2014 grievances fit into one of the enumerated exceptions to the two-active-grievance limitation.  The Court addresses at length Plaintiff's arguments concerning availability and the two-active-grievance limitation in the following sections.

[19]     Plaintiff alleges the three April 18, 2014 grievances concerned (1) denial of access to his legal materials, (2) forcible shaving with unsanitized clippers, and (3) denial of mail.  Doc 161 at 14.  Plaintiff claims he attempted to submit one of these as an emergency grievance.  As noted above, Plaintiff also states he attempted to submit grievances on April 11, April 25, and May 2, 2014, but the Court has determined either those grievances were never submitted, or, if they were, the grievances were also rejected due to the two-active-grievance limitation.

Doc. 161 at 14–15.  Plaintiff also complains about prison officials' failure to process grievances he attempted to submit on May 6 and May 9, 2014.  Id. at 15.  On these two occasions, Plaintiff attempted to submit grievances as emergency grievances in order to avoid the effect of the two-active-grievance limitation, but prison officials refused to accept the grievances on an emergency basis.  Id. at 15.[20]

As to all instances where grievances were purportedly rejected or otherwise not accepted or processed, Plaintiff does not dispute the grievance policy's two-active-grievance limitation barred him from filing additional grievances which did not fit into one of the enumerated exceptions in the grievance policy.  Plaintiff also does not dispute he had two active grievances during this period of time and up until at least June 9, 2014.[21]  See Doc. 182-1 (May 11, 2020 Suppl. Decl. of Deidra Edwards and attached Grievances Numbered 169966 and 169844).  Rather, Plaintiff contends the implementation of the two-active-grievance limitation rendered

---

[20]     Plaintiff attempted to submit grievances on April 18, May 6, and May 9, 2014, as "emergency" grievances in order to circumvent the two-active-grievance limitation, but prison officials declined to accept those grievances on an emergency basis.  Doc. 1 at 16, 19.  Under the SOP, a prisoner may submit a grievance on an emergency basis and avoid the two-active-grievance limitation if the grievance concerns "[a]n unexpected situation involving a significant threat to the health, safety or welfare of an offender that requires prompt action."  Doc. 148-3 at 3, 14.  Plaintiff fails to show any of the grievances he sought to file as "emergency" grievances should have been processed as such under the SOP.  According to Plaintiff, these grievances were related to his deliberate indifference and forced shaving claims.  Doc. 1 at 16, 19.  The facts giving rise to these grievances simply did not satisfy the definition of "emergency" set forth in the SOP, as they did not concern unexpected circumstances or a significant threat.  Although in a different context, this Court already determined the facts giving rise to Plaintiff's deliberate indifference and forced shaving claims did not constitute an "imminent danger of serious physical injury."  Doc. 12 at 4–5.  Additionally, under the SOP, when a prison official declines to accept a grievance on an emergency basis, the grievance "will be returned to the offender" and the offender "has 7 calendar days from receipt to file it as an Original Grievance."  Doc. 148-3 at 3, 14.  Here, when Plaintiff brought his Complaint, the time to resubmit the "emergency" grievances as original grievances had not expired.  Therefore, any complaints Plaintiff raises regarding his attempts to submit grievances on an emergency basis are unavailing and do not impact the Court's analysis on exhaustion of administrative remedies.

[21]     Plaintiff, in his Response, acknowledges his grievances were rejected in May 2014 as a result of the existence of other pending grievances and states, "Presumably the two (2) pending grievances were # 169844 and 169966 filed at GDCP on 3/5/2014 and 3/13/2014."  Doc. 161 at 14–15 n.3.

administrative remedies unavailable, and thus, he was permitted to bypass § 1997e(a)'s exhaustion requirements.

The Eleventh Circuit has concluded the "two grievance limit" aspect of Georgia's grievance policy does not "render the grievance process unavailable for purposes of the PLRA." Pearson v. Taylor, 665 F. App'x 858, 868 (11th Cir. 2016); see also Phillips v. Deal, No. 5:15-cv-00249, 2016 WL 5539772, at *5 (M.D. Ga., July 25, 2016) ("Contrary to Plaintiff's argument, the [Georgia] Department of Corrections' grievance limit does not render administrative remedies unavailable."), *adopted by* 2016 WL 5660450 (M.D. Ga. Sept. 28, 2016). As noted in Pearson, "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules— rules that are defined not by the PLRA, but by the prison grievance process itself." 665 F. App'x at 868 (citing Jones v. Bock, 549 U.S. 199, 218 (2007)).

Like in Pearson, the two-grievance limitation Plaintiff challenges is defined by the prison grievance process itself. While Plaintiff was limited to two active grievances at any one time, the evidence reflects he was allowed to withdraw a pending grievance and file a new one. Thus, Plaintiff "had an available route to exhaust his claims . . . according to the applicable procedural rules, even if it would have required him to prioritize his grievances." Pearson, 665 F. App'x at 868.

Furthermore, Plaintiff could have waited until his pending grievances were no longer "active" and then sought to file an out-of-time grievance for good cause. According to the Supplemental Declaration of Deidra Edwards, Plaintiff's two "active" grievances were no longer active on June 9 and 11, 2014, doc. 182-1 at 3, so Plaintiff could have started filing grievances again at that time. Additionally, Plaintiff could have sought appeals of any grievances that were

rejected as a result of the two-active-grievance limitation.  If Plaintiff was hindered in getting the proper appeal forms, he could have sought out-of-time appeals when the forms became available. Plaintiff has not demonstrated he did any of these things.  "[T]he exhaustion requirement cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile."  Higginbottom, 223 F.3d at 1261; see also Simpson v. Allen, No. 6:15-cv-118, 2016 WL 5024226, at *7 (S.D. Ga. Sept. 16, 2016) ("Plaintiff could not simply disregard the grievance process and then argue, after the fact, that if he had filed a grievance, it would have been rejected.").

The Court rejects Plaintiff's arguments under the second and third prongs of Ross concerning the two-active-grievance limitation.  Doc. 204 at 29–30.  Plaintiff first argues the two-active-grievance limitation renders administrative remedies unavailable because the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use" (i.e., Ross's second prong).  Doc. 204 at 30.  The Court, in reviewing the applicable grievance policy, finds it is well-written, straightforward, and certainly capable of use by the average inmate.  The inclusion of a two-active-grievance limitation is not confusing.  The policy clearly lays out the limitation and provides the offender the opportunity to withdraw a pending grievance or pursue one of the enumerated exceptions.  Doc. 148-3 at 7–8.  Furthermore, Plaintiff has managed to file and appeal dozens of grievances over the years, in spite of the two-active-grievance limitation, demonstrating the limitation did not render administrative remedies subjective or objectively unavailable.  Plaintiff's argument on this prong of Ross is without merit.

Plaintiff also contends the two-active-grievance limitation renders administrative remedies unavailable because prison officials are thwarting "inmates' access to the grievance procedure by machination" (i.e., Ross's third prong).  Doc. 204 at 30.  Plaintiff claims the two-

active-grievance limitation "is clearly a crafty action intended to accomplish an evil end by forcing a prisoner to surrender his ability to challenge one constitutional violation in order to assert another." Id. at 31.  The Court disagrees.  The grievance policy outlines a number of exceptions to the two-active-grievance limitation, indicating an intent to preserve the right to grieve in instances of physical abuse with significant injury, sexual assault, and other serious or significant threats to the health, safety, and welfare of inmates, while also placing reasonable limitations on the number of grievances an inmate can pursue, in order to conserve prison resources.  Doc. 148-3 at 8; see also Sullivan v. Powell, No. CV 317-17, 2018 WL 3765373, at *1 (S.D. Ga. Aug. 8, 2018) (concluding plaintiff's attempt to file a third grievance while having two pending grievances "was not 'thwarted with misrepresentation' or intimidation.  Indeed, by not allowing Plaintiff to file a third grievance without dropping one of his active grievances, prison officials were merely following GDC grievance procedure.").  Accordingly, Plaintiff's argument under the third Ross prong fails.

Instead of attempting to fully grieve and appeal all the issues raised in his Complaint, Plaintiff brought this action within days of having a handful of his grievances rejected or otherwise not accepted under the two-active-grievance limitation.  The prison officials' application of the two-active-grievance limitation did not render administrative remedies subjectively or objectively unavailable during the relevant timeframe.  Plaintiff was not actually deterred from filing grievances due to the two-active-grievance limitation.  Indeed, he elected to pursue other grievances almost immediately once he was able to under the two-active-grievance limitation.  Rather, for the claims in this case, Plaintiff voluntarily elected to discontinue the grievance process and prematurely file suit.  Moreover, a reasonable inmate in these circumstances would not be deterred by the two-active-grievance limitation from pursuing

grievances in accordance with the policy.  As such, the Court rejects Plaintiff's arguments he was not required to fully exhaust his administrative remedies prior to bringing the claims in this case.

        *(d)*       *Plaintiff's argument challenging the constitutionality of two-grievance limitation.*

Plaintiff also challenges the constitutionality of the two-active-grievance limitation, arguing the limitation forces him to sacrifice some claims in order to pursue others and citing to a principle articulated in Simmons v. United States, 390 U.S. 377 (1967).[22]  Doc. 161 at 17–19; Doc. 204 at 33.  In Simmons, the Supreme Court discussed whether a criminal defendant who testifies in support of a Fourth Amendment suppression issue waives his Fifth Amendment right against self-incrimination during later proceedings.  The Supreme Court determined it "intolerable" for one constitutional right to be surrendered for the sake of another and held, "that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection."  Simmons, 390 U.S. at 394.

In Crampton v. Ohio and its companion case, McGautha v. California, the Supreme Court stated:

> While we have no occasion to question the soundness of the result in Simmons and do not do so, to the extent that its rationale was based on a 'tension' between constitutional rights and the policies behind them, the validity of that reasoning must now be regarded as open to question, and it certainly cannot be given the broad thrust which is attributed to it by [petitioner] in the present case.

---

[22]    This Court previously dismissed Plaintiff's free-standing claim the policy allowing a prisoner to only have two pending grievances at any time violates his constitutional rights.  Doc. 99 at 40; Doc. 235 at 14–15 (noting "the proper way to address denial of access to the grievance procedure is to argue the administrative remedies were unavailable if and when the issue of exhaustion under 42 U.S.C. § 1997e(a) arises").  Plaintiff has correctly raised that issue here, in response to Movants' Motion to Dismiss.

402 U.S. 183, 212–13 (1971), *reh'g granted*, *vacated on other grounds*, 408 U.S. 941 (1972).

The Supreme Court, in Crampton, explained that, "[a]lthough a defendant may have a right, even

of constitutional dimensions, to follow whichever course he chooses, the Constitution does not

by that token always forbid requiring him to choose." Id. at 213.  The Eleventh Circuit has noted

that, "Simmons, although never explicitly overruled by the Supreme Court, has been

considerably narrowed and its reasoning questioned."  In re Federal Grand Jury Proceedings

(FGJ 91-9), Cohen, 975 F.2d 1488, 1492 (11th Cir. 1992); see also United States v. Snipes, 611

F.3d 855, 866 (11th Cir. 2010) ("Simmons has never been extended beyond its context.").  Given

the limited viability of Simmons, and because Plaintiff has offered no binding precedent holding

the principle expressed in that case should be applied in this particular context, Plaintiff's

contention the two-grievance limitation is unconstitutional under the "Simmons principle" has no

merit.  Furthermore, the two-active-grievance limitation does not force an inmate to pick

between two constitutional protections in a criminal prosecution, as in Simmons; rather, the

limitation requires an inmate to elect which constitutional claim he will pursue in civil litigation,

and, even then, will typically only limit the sequence and timing of those claims.

Moreover, a prison regulation passes constitutional muster if it is reasonably related to

legitimate penological interests, and the two-grievance limitation plainly is.  In Lewis v. Casey,

the Supreme Court recognized a prison regulation impinging on inmates' constitutional rights "is

valid if it is reasonably related to legitimate penological interests," and determined that issues of

court access resulting from prison regulations reasonably related to legitimate penological

interests "are not of constitutional significance, even where they result in actual injury."  518

U.S. 343, 361–62 (1996) (upholding restrictions on lockdown prisoners' access to legal

assistance and materials).  Here, limiting the number of grievances is reasonably related to

legitimate penological interests, as processing inmate grievances requires prison officials' limited time and resources.  Plaintiff is a prime example of the interests served by such restrictions.  Plaintiff acknowledges he is highly litigious.  Were it not for the two-grievance limitation, Plaintiff would be able to—and almost certainly would—pursue exponentially more grievances, which would necessarily occupy enormous time and resources from prison officials. Accordingly, there is no merit to Plaintiff's argument the two-active-grievance limitation is unconstitutional.

> (e)    *Additional arguments concerning unavailability of administrative remedies under the grievance procedure.*

As a final attempt to argue unavailability, Plaintiff, in his Surreply, raises several vague and generalized allegations concerning the unavailability of Georgia's grievance procedure under Ross.  Doc. 204 at 47–54.  Plaintiff contends prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates" and relies on his own lengthy experience with the prison grievance system, claiming he never received his requested relief despite filing numerous grievances.  Id. at 48.  Plaintiff also generally alleges the grievance procedure is "incapable of use" and "prison administrators thwart inmates from taking advantage of [it] through machination, misrepresentation, or intimidation."  Id. at 53–54.

Plaintiff, in making these arguments under Ross, relies heavily on a 39-page declaration and "Proffer on Unavailability of Administrative Remedies" he previously submitted to the Court, doc. 153.  Plaintiff executed this declaration on March 16, 2020, prior to the filing of Movants' Motion to Dismiss.  Id.  This declaration sheds no light on whether the administrative remedies at issue in this case were unavailable to Plaintiff during the relevant timeframe.  The declaration contains a litany of unsupported, conclusory complaints about Georgia's prison

grievance procedures, including generalizations like "no attempt is made to actually investigate," "grievance officials do not interview witnesses," and "I have never received any relief." Id. at 4.

Plaintiff, in his declaration, also makes general complaints about the time limits for filing grievances, the two-active-grievance limitation, the one-page-form requirement, and the one-issue-per-grievance limitation. Id. at 7–18. While Plaintiff provides examples of how these rules were applied in certain circumstances, the examples often involve grievances which were raised years after the relevant time frame at issue in Movants' Motion to Dismiss. In fact, much of the declaration concerns Plaintiff's complaints about the implementation of a different version of the grievance policy at Valdosta State Prison in 2018 and later. Such evidence has no bearing on the availability of administrative remedies for claims Plaintiff asserted in his 2014 Complaint and Supplemental Complaint. Plaintiff's declaration does not offer any additional support to Plaintiff's claims administrative remedies were unavailable regarding the pending claims in this case.[23] Plaintiff must present "some evidence beyond [his] own self-serving statements showing that administrative remedies were not available." Womack v. Sikes, No. CV 307-42, 2008 WL 4104148, at *8 (S.D. Ga. Sept. 4, 2008). Here, the statements contained in Plaintiff's declaration fail to convince the Court the grievance procedure was objectively or subjectively unavailable under any of the three prongs of Ross. Plaintiff also invites the Court to go beyond the three Ross prongs and find unavailability based on some other ground. Doc. 204 at 31. However, as Plaintiff fails to articulate any compelling reason to recognize an additional basis for unavailability, the Court rejects this invitation.

---

[23]   In this declaration, Plaintiff alleges Jackson "never once provided [Plaintiff] a grievance form" and also claims Jackson "often refused to accept the [grievance forms from other facilities] . . . because they were on the 'wrong-colored form.'" Doc. 153 at 22. The Court, however, addressed and rejected these particular allegations in a preceding Section.

In conclusion, the undersigned finds Plaintiff failed to meet his burden of demonstrating the grievance procedure was "subjectively" and "objectively" unavailable to him.  Geter, 974 F.3d at 1356.  To the extent any factual allegations of the parties conflicted, the undersigned took Plaintiff's allegations as true, and as a result, found no need to proceed to step two of the Turner analysis.  Because Plaintiff failed to demonstrate unavailability of the grievance procedures and because the evidence reveals he failed to complete the required two steps of Georgia's Statewide Grievance Procedure prior to bringing any of the claims in this action (with the exception of his GSP procedural due process claims based on Tier II/segregation placement), the undersigned determines Plaintiff failed to exhaust his available administrative remedies, as § 1997e(a) requires.

The undersigned has closely reviewed Plaintiff's claimed efforts at exhaustion of administrative remedies and Movants' arguments concerning those efforts.  While the analysis on these points is lengthy, the conclusion is simple: Plaintiff rushed to bring the claims in his Complaint and Supplemental Complaint before exhausting his available administrative remedies. Plaintiff's claims in this action largely arose in April 2014, but Plaintiff brought his claims just a few short weeks later, well before the administrative remedies process could have possibly been completed.  While Plaintiff raises a number of different arguments related to the unavailability of administrative remedies, almost all of those challenges boil down to criticisms of the two-active-grievance limitation.  As explained above, that limitation does not equate to unavailability, either generally or as applied to Plaintiff, and the limitation is not unconstitutional.

Exhaustion of administrative remedies is not a technical or meaningless endeavor; it serves a legitimate goal of affording prison officials an opportunity to address and resolve grievances before defending a lawsuit.  And, while the complexity and duration of subsequent

litigation have no bearing on the Court's exhaustion analysis, the consequences of Plaintiff's failures in this case highlight the importance of the exhaustion requirement in § 1997e(a).  Had Plaintiff fully exhausted his administrative remedies before bringing the claims in this action, some of the sprawling litigation which has transpired over the last seven years could have been avoided.

Accordingly, I **RECOMMEND** the Court **GRANT** this portion of Movants' Motion to Dismiss and **DISMISS** the following GSP claims for Plaintiff's failure to exhaust his administrative remedies prior to bringing the claims:

(1)     All of Plaintiff's First Amendment GSP claims raised in his Complaint and Supplemental Complaint (i.e., Plaintiff's claims of denial of access to the courts (photocopies and postage) and claims of violations of rights to religious exercise).

(2)     All of Plaintiff's Eighth Amendment GSP claims raised in his Complaint and Supplemental Complaint (i.e., Plaintiff's claims of deliberate indifference to his serious medical needs (including claims related to dental care), claims involving conditions of confinement, claims of deliberate indifference to his health and safety, and claims of excessive use of force).

(3)     All of Plaintiff's GSP deprivation of property claims raised in his Complaint and Supplemental Complaint (i.e., Plaintiff's deprivation of property claims alleged against Defendants Toole, Jacobs, Shuemake, Todman, and Davis).

## II.     Motion to Dismiss Plaintiff's Claims for Compensatory and Punitive Damages, Doc. 148

Movants contend Plaintiff is not entitled to recover compensatory and punitive damages for any claims where he did not suffer more than a *de minimis* injury, and Plaintiff has not alleged a greater than *de minimis* injury in connection with any of his claims, with the exception of Plaintiff's deliberate indifference claims.  Doc. 148-1 at 8–10.  As support, Movants cite 42 U.S.C. § 1997e(e), which provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered

while in custody without a prior showing of physical injury or the commission of a sexual act."

42 U.S.C. § 1997e(e).  Under § 1997e(e), "an incarcerated plaintiff cannot recover either

compensatory or punitive damages for constitutional violations unless he can demonstrate a

(more than de minimis) physical injury."  Brooks v. Warden, 800 F.3d 1295, 1307 (11th Cir.

2015).  Movants discuss each of the injuries Plaintiff claims to have suffered as a result of his

surviving claims (aside from the deliberate indifference claims) and assert each of these injuries

is not more than de minimis.  Doc. 148-1 at 9.

In his Response, Plaintiff does not dispute, and essentially concedes, he has not alleged

more than a de minimis injury for any of his surviving claims.  Doc. 161 at 21–38.  Instead,

Plaintiff argues the Eleventh Circuit's interpretation of § 1997e(e) should not apply here because

he is seeking damages resulting from violations of his "intangible" constitutional rights, which

he contends are a "separate categor[y] of damages" from the injuries covered by § 1997e(e).

Doc. 161 at 23.  Plaintiff also argues it is premature to consider damages on a Rule 12(b)(6)

motion and § 1997e(e) is unconstitutional.[24]  Id. at 21–23.

Plaintiff is incorrect that § 1997e(e) does not apply to his claims in this case.  Controlling

Eleventh Circuit precedent makes it clear a plaintiff must show a more than de minimis physical

injury to recover compensatory and punitive damages in a § 1983 suit, regardless of the

characterization of the claim as one for a violation of an intangible right.  The Eleventh Circuit

has explained the limitation on damages outlined in § 1997e(e) applies "equally to all

---

[24]     Plaintiff also asserts § 1997e(e) does not bar claims for nominal damages or declaratory or
injunctive relief.  Doc. 161 at 21–22.  Plaintiff is correct, but this issue is not in dispute and requires no
further consideration.  See Brooks, 800 F.3d at 1307–08 ("[W]e hold that nothing in § 1997e(e) prevents a
prisoner from recovering nominal damages for a constitutional violation without a showing of physical
injury."); Harris v. Garner, 190 F.3d 1279, 1288 (11th Cir. 1999) (holding "section 1997e(e) only
precludes some actions for money damages, and does not materially thwart actions for declaratory and
injunctive relief"), reh'g en banc granted and opinion vacated, 197 F.3d 1059 (11th Cir.1999), opinion
reinstated in relevant part, 216 F.3d 970 (11th Cir. 2000).

constitutional claims," including "those rarely accompanied by physical injury (e.g., First Amendment violations)." Al-Amin v. Smith, 637 F.3d 1192, 1197 (11th Cir. 2011).  Conversely, the Eleventh Circuit has specifically recognized the ability of prisoners to recover nominal damages, which "serve to 'vindicate[] deprivations of certain "absolute" rights that are not shown to have caused actual injury.'" Brooks, 800 F.3d at 1308 (citing Carey v. Piphus, 435 U.S. 247, 266 (1978)).

Thus, nominal damages are the only form of monetary relief that can be recovered for a constitutional injury where there is not more than a *de minimis* physical injury.  In the case of Brooks v. Warden, the prisoner-plaintiff was denied the ability to use the bathroom or clean himself for two days while restrained by waist chains in a hospital bed, resulting in him defecating in his jumpsuit while the defendant laughed at him.  800 F.3d 1295.  The court recognized the plaintiff stated a viable Eighth Amendment constitutional claim; however, it found no physical injury, and thus, only allowed plaintiff to proceed on his claim for nominal damages and not his claims for compensatory and punitive damages.  Id.

Here, similarly, even if Plaintiff is able to show a viable constitutional claim, binding precedent only allows him to recover compensatory and punitive damages upon a showing he suffered more than a *de minimis* physical injury.  As the undersigned, in the preceding section, has recommended dismissal of all but Plaintiff's GSP procedural due process claims based on his Tier II/segregation placement, the only issue for the Court to consider is whether Plaintiff alleges a more than *de minimis* physical injury for his remaining procedural due process claims, and Plaintiff plainly has not.  Therefore, the Court cannot allow him to proceed with any claims for compensatory or punitive damages.

Plaintiff contends it is premature for the Court to consider the damages issue at this stage of the litigation, doc. 161 at 22, but there is nothing to prevent its consideration of the damages issue now.  In fact, in Harris v. Garner, the Eleventh Circuit affirmed the district court's dismissal of punitive and compensatory damage claims under § 1997e(e) in response to defendants' 12(b)(6) motion.  190 F.3d at 1283.  It is apparent the Court can and should consider this issue at this point in the litigation.

Plaintiff also argues § 1997e(e) is unconstitutional as applied.  However, the Eleventh Circuit concluded in Harris v. Garner, "Congress has left open avenues of declaratory and injunctive relief that are ample for constitutional purposes," and held "section 1997e(e) does not violate the Due Process Clause of the Fifth Amendment" or equal protection.  190 F.3d at 1289–90.  While Plaintiff claims the Harris decision regarding the constitutionality of § 1997e(e) did not consider the outcomes of Smith v. Allen, 502 F.3d 1255 (11th Cir. 2007), and Al-Amin v. Smith, doc. 161 at 35–37, this Court finds nothing in Smith or Al-Amin that changes the reasoning in Harris regarding the constitutionality of § 1997e(e).  Indeed, the Al-Amin opinion cited with approval the Harris court's conclusions regarding the constitutionality of § 1997e(e), stating, "The Harris Court ultimately upheld the constitutionality of § 1997e(e)."  Al-Amin, 637 F.3d at 1196.

In Plaintiff's final argument, he contends § 1997e(e) is unconstitutional because its application could eliminate his right to a jury trial under the Seventh Amendment.  Doc. 161 at 37–38; Doc. 204 at 55–57.  As support, Plaintiff relies on Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt, 691 S.E.2d 218 (Ga. 2010), which concerns the right to a jury trial as laid out in the Georgia Constitution.  Here, however, Plaintiff is challenging his Seventh Amendment rights, not his rights under the Georgia Constitution.  The Seventh Amendment of the United States

Constitution specifically provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."  U.S. Const. amend. VII.

Plaintiff is correct that, by limiting his recovery to nominal damages, the application of § 1997e(e) may eliminate his right to a jury trial.  See Carey, 435 U.S. at 266–67 (holding if plaintiffs were entitled to nominal damages for a procedural due process violation, the damages should not exceed one dollar).  However, this does not in any way violate the Constitution.  Rather, the Seventh Amendment is clear the right to a jury trial only applies in cases where the value in controversy shall exceed $20.  See Van Wie v. Pataki, 267 F.3d 109, 115 n.4 (2d Cir. 2001) ("[G]enerally . . . in nominal damages cases, when such damage requests are below twenty dollars, there is no right to a jury trial.").  In short, the Constitution does not require a jury trial for all § 1983 cases; it only requires a jury trial where the amount in controversy "exceeds twenty dollars."  As a result, the Court finds no conflict between its application of § 1997e(e) and Plaintiff's rights under the Seventh Amendment.

For these reasons, I **RECOMMEND** the Court **GRANT** Movants' Motion to Dismiss Plaintiff's claims for compensatory and punitive damages as they relate to his remaining GSP procedural due process claims concerning his placement in Tier II/segregation against Defendants DeLoach, Owens, Toole, Bailey-Dean, and Jacobs.  Doc. 148.

### III.    Motion to Dismiss Plaintiff's Forced Shaving Claim for Failure to State a Claim, Doc. 148

Movants also ask the Court to dismiss Plaintiff's forced shaving claim for failure to state a claim.  Doc. 148-1.  In their brief, they argue Plaintiff's forced shaving claim should be dismissed, as he only alleges a *de minimis* use of force and no physical injury as to this claim.  Id. at 10-11.  In light of my recommendation the Court should dismiss Plaintiff's stand-alone Eighth Amendment claims of excessive force and deliberate indifference to his health and safety

(i.e., Plaintiff's forced-shaving claims) due to Plaintiff's failure to exhaust his administrative

remedies, the Court need not reach Movants' request to dismiss Plaintiff's forced shaving claims

based on failure to state a claim.  I, therefore, **RECOMMEND** the Court **DENY as moot** the

portion of Movants' Motion to Dismiss seeking dismissal of Plaintiff's forced shaving claim due

to failure to state a claim, doc. 148.

## IV.   Plaintiff's Supplemental Motions for Preliminary Injunction or Temporary Restraining Order, Docs. 166, 195

Also before the Court are Plaintiff's Supplemental Motions for Preliminary Injunction or

Temporary Restraining Order, docs. 166, 195, Defendants' Responses thereto, docs. 186, 210,

and Plaintiff's Reply, doc. 197.  In these Motions, Plaintiff moves the Court for a preliminary

injunction or temporary restraining order to prevent Defendants from forcibly shaving him,

pending final disposition of this case.

The decision to grant or deny a preliminary injunction "is within the sound discretion of

the district court."  Palmer v. Braun, 287 F.3d 1325, 1329 (11th Cir. 2002).  To be entitled to a

preliminary injunction or temporary restraining order ("TRO"), a plaintiff must demonstrate:

> (a) there is a substantial likelihood of success on the merits; (b) the TRO or
> preliminary injunction is necessary to prevent irreparable injury; (c) the
> threatened injury outweighs the harm that the TRO or preliminary injunction
> would cause to the non-movant; and (d) the TRO or preliminary injunction
> would not be averse to the public interest.

Parker v. State Bd. of Pardons & Paroles, 275 F.3d 1032, 1034–35 (11th Cir. 2001).  "[A]

preliminary injunction is an extraordinary and drastic remedy not to be granted unless the

movant clearly established the 'burden of persuasion' as to all four elements."  Horton v. City of

St. Augustine, 272 F.3d 1318, 1326 (11th Cir. 2001) (citation and quotation marks omitted).

Further, in a civil action concerning prison conditions, "[p]reliminary injunctive relief must be

narrowly drawn, extend no further than necessary to correct the harm the court finds requires

preliminary relief, and be the least intrusive means necessary to correct that harm."  18 U.S.C.

§ 3626(a)(2).  "The court shall give substantial weight to any adverse impact on public safety or

the operation of a criminal justice system caused by the preliminary relief . . . ."  Id.

        "A district court should not issue an injunction when the injunction in question is not of

the same character, and deals with a matter lying wholly outside the issues in the suit."

Kaimowitz v. Orlando, 122 F.3d 41, 43 (11th Cir. 1997), opinion amended on other grounds on

reh'g, 131 F.3d 950 (11th Cir. 1997); see also Head v. Gammage, CV 316-039, 2018 WL

1920171, at *2 (S.D. Ga. Apr. 24, 2018) (denying plaintiff's request for injunctive relief because

the requested relief seeking computer access was essentially an access to courts claim whereas

plaintiff sued defendants for failure to protect him from a substantial risk of serious harm),

adopted by 2018 WL 2303726 (S.D. Ga. May 21, 2018).

        In light of my recommendation the Court should dismiss Plaintiff's stand-alone Eighth

Amendment forced-shaving claims, it would be inappropriate to recommend the issuance of

injunctive relief regarding forced shaving.  Furthermore, any claims regarding Plaintiff's forced

shaving at facilities other than GSP are simply not before this Court, as the present case only

involves Plaintiff's claims arising from his incarceration at GSP through July 31, 2014 (the date

of his Supplemental  Complaint, doc. 9).  These claims for injunctive relief are also moot in light

of Plaintiff's recent transfer to Smith State Prison.  Doc. 242; McKinnon v. Talladega County,

745 F.2d 1360, 1363 (11th Cir. 1984) ("The general rule is that a prisoner's transfer or release

from a jail moots his individual claim for declaratory and injunctive relief.").

        Additionally, "[t]rial courts are afforded broad discretion in determining whether to stay

or dismiss litigation in order to avoid duplicating a proceeding already pending in another federal

court."  I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1551–52 (11th Cir. 1986).  The

Court is aware Plaintiff had at least one other pending case regarding forced shaving, through which he sought injunctive relief, when he filed his motions for preliminary injunctive relief regarding forced shaving in the present case.  Recast Compl., <u>Daker v. Ward</u>, No. 5:19-cv-126 (M.D. Ga. Sept. 27, 2019), ECF No. 12, pp. 63–64, 68.[25]  The duplicative nature of Plaintiff's claims for injunctive relief regarding forced shaving provides this Court with yet another reason to deny them.  Plaintiff should not be allowed to simultaneously proceed with his request for injunctive relief in multiple courts.

Finally, this Court has previously denied Plaintiff's requests in this case for similar injunctive relief regarding forced shaving.  Docs. 94, 235 (denying Plaintiff's motions regarding forced shaving, docs. 8, 72, 78).  Plaintiff's currently pending Motions, docs. 166, 195, fail for the same reasons—namely, Plaintiff has not shown the requisite likelihood of success on the merits of his claim.

For all these reasons, I **RECOMMEND** the Court **DENY** Plaintiff's Supplemental Motions for Preliminary Injunction or Temporary Restraining Order, docs. 166, 195.

**V.  Motion to Sever, Doc. 139**

Also before the Court is Defendants Owens, Ward, Toole, Fowler, Kilgore, DeLoach, Milton Smith, Jackson, Warren, Salgado, Shuemake, Todman, Davis, and Bailey-Dean's Motion to Sever.[26]  Docs. 139, 139-1.  Plaintiff filed a Response to the Motion, doc. 155, and Defendants

---

[25]     Plaintiff recently filed another case in this district asserting § 1983 claims and outlining his experience with forced shaving.  Compl., <u>Daker v. Ward</u>, No. 6:21-cv-3 (S.D. Ga. Jan. 11, 2021), ECF No. 1, pp. 47–48.  According to the allegations in the complaint in that case, Plaintiff has not been forcibly shaved since April 3, 2020, though on occasion, he has been threatened with such action.  <u>Id.</u>  His current Motions for preliminary injunctive relief in this case regarding this issue were signed on April 8, 2020 and May 12, 2020.  Docs. 166, 195.

[26]     One original movant, Defendant Jackson, has already been dismissed from this action.  Doc. 235 at 25.

filed a Reply, doc. 158.  In their Motion and supporting brief, these Defendants ask the Court to sever Plaintiff's claims against them, alleging the claims are not sufficiently related and should not be joined in one action.  Specifically, these Defendants ask the Court to allow Plaintiff to proceed with just one claim in this lawsuit and to dismiss all others.  Doc. 139-1 at 6.  In light of the undersigned's recommendation all but one category of Plaintiff's claims should be dismissed for failure to exhaust administrative remedies, leaving only Plaintiff's procedural due process claims concerning his placement in Tier II/segregation against Defendants DeLoach, Owens, Toole, Bailey-Dean, and Jacobs, the undersigned finds the requested relief is no longer at issue. For this reason, I **DENY as moot** the Motion to Sever.  Doc. 139.

## VI.    Plaintiff's Motion for Sanctions, Doc. 164

Plaintiff's Motion for Sanctions is also pending before the Court.  Doc. 164.  Defendants filed a Response, doc. 184, and Plaintiff filed a Reply, doc. 203.  Plaintiff primarily seeks sanctions based on his contention that Movants' Motion to Dismiss was filed in bad faith.  In light of the undersigned's recommendation the Court grant Movants' Motion to Dismiss for Plaintiff's failure to exhaust his administrative remedies, and taking into consideration the substance of the documents filed by the Movants, there are no grounds for sanctioning Defendants or their counsel pursuant to Federal Rule of Civil Procedure 11.  Plaintiff's contention the Motion to Dismiss was filed for the improper purpose of causing delay and in an attempt to obtain a stay of discovery so as to give Defendants time to destroy or lose evidence lacks merit.  Doc. 161, 12-13.  Plaintiff's allegations are purely speculative, supported by no real evidence, and do not warrant the imposition of sanctions at this time.  The Court also rejects Plaintiff's contention the Reply brief Movants filed improperly exceeded the scope of a reply or was otherwise done with the intent to deny Plaintiff an opportunity to respond.  Doc. 203.

Plaintiff filed a lengthy Surreply, which the Court has considered.  Accordingly, the Court

**DENIES** Plaintiff's Motion for Sanctions, doc. 164.

### CONCLUSION

For the reasons stated above, I **RECOMMEND** the Court **GRANT** the portion of

Movants' Motion to Dismiss seeking dismissal of claims for failure to exhaust under 42

U.S.C.§1997e(a) and **DISMISS** the following GSP claims:

(1)     All of Plaintiff's First Amendment GSP claims raised in his Complaint
        and Supplemental Complaint (i.e., Plaintiff's claims of denial of access to
        the courts (photocopies and postage) and claims of violations of rights to
        religious exercise).

(2)     All of Plaintiff's Eighth Amendment GSP claims raised in his Complaint
        and Supplemental Complaint (i.e., Plaintiff's claims of deliberate
        indifference to his serious medical needs (including claims related to
        dental care), claims involving conditions of confinement, claims of
        deliberate indifference to his health and safety, and claims of excessive
        use of force).

(3)     All of Plaintiff's deprivation of property GSP claims raised in his
        Complaint and Supplemental Complaint (Plaintiff's deprivation of
        property claims alleged against Defendants Toole, Jacobs, Shuemake,
        Todman, and Davis).

I also **RECOMMEND** the Court **GRANT** the portion of Movants' Motion to Dismiss seeking

dismissal of Plaintiff's claims for certain categories of damages pursuant to 42 U.S.C. § 1997e(e)

and **DISMISS** Plaintiff's remaining claims for compensatory and punitive damages.  I also

**RECOMMEND** the Court **DENY as moot** the portion of Movants' Motion to Dismiss seeking

dismissal of Plaintiff's forced shaving claim for failure to state a claim.  Doc. 148.

If this Recommendation regarding Movants' Motion to Dismiss is adopted, then the only

remaining claims in this lawsuit will be Plaintiff's GSP procedural due process claims

concerning his placement in Tier II/segregation against Defendants DeLoach, Owens, Toole,

Bailey-Dean, and Jacobs, see doc. 235 at 26–27, and, for these claims, Plaintiff will be limited to

recovering only nominal damages and shall not be able to recover compensatory or punitive

damages.  Therefore, I **RECOMMEND** the Court **DISMISS** all other Defendants from this

action and **TERMINATE** them from the docket in this case.[27]

I also **RECOMMEND** the Court **DENY** Plaintiff's Supplemental Motions for

Preliminary Injunction or Temporary Restraining Order regarding forced shaving, docs. 166,

195.  Finally, through this Order, the Court also **DENIES as moot** Defendants' Motion to Sever,

doc. 139, and **DENIES** Plaintiff's Motion for Sanctions, doc. 164.

Any objections to this Report and Recommendation shall be filed within 14 days of

today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate

Judge failed to address a contention raised in the Complaint must be included.  Failure to file

timely, written objections will bar any later challenge or review of the Magistrate Judge's factual

findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't

Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a

party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions

on appeal by failing to file timely, written objections.  Harrigan, 2020 WL 6039905, at *4; 11th

Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United

States District Judge will make a de novo determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not

meeting the specificity requirement set out above will not be considered by a District Judge.  A

---

[27]     The Court again notes this Report and Recommendation does not consider the viability of any of
Plaintiff's GDCP claims or the viability of the Cobb County claims raised in Plaintiff's Complaint and
Supplemental Complaint, which have been severed and transferred.  Doc. 235 at 25.

party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 22nd day of February,

2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA